**BENBROOK LAW GROUP, PC**
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
701 University Avenue, Suite 106
Sacramento, CA 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

**STONE HILTON PLLC**
Judd E. Stone II *
Christopher D. Hilton *
Ari Cuenin *
Michael R. Abrams *
Elizabeth Brown Fore *
Alexander M. Dvorscak *
Cody C. Coll*
600 Congress Ave.
Suite 2350
Austin, TX 78701
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
elizabeth@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com
* *Pro hac vice* forthcoming

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| MEDIA MATTERS FOR AMERICA, ANGELO CARUSONE, and ERIC HANANOKI, <br><br> *Plaintiffs*, <br><br> v. <br><br> X CORP., TWITTER INTERNATIONAL UNLIMITED CO., and TWITTER ASIA PACIFIC PTE. LTD., <br><br> *Defendants*. | **Case No.: 3:25-cv-02397-VC** <br><br> **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Table of Authorities ..................................................................... **Error! Bookmark not defined.**

Introduction ..................................................................................................................... 1

Factual Background ......................................................................................................... 2

Procedural History .......................................................................................................... 4

I.      X Corp. Sues in the Northern District of Texas. ................................................. 4

II.     Twitter International Unlimited Company Sues in Ireland. .................................. 5

III.    Twitter Asia Pacific Pte. Ltd. Sues in Singapore. .............................................. 6

IV.     MMFA Belatedly Sues in this Court. .................................................................. 7

Statement of the Issue to be Decided ............................................................................. 8

Standard of Review ......................................................................................................... 8

Argument ......................................................................................................................... 8

I.      An Antisuit Injunction Should Not Issue. ........................................................... 8

    A.    MMFA's Suit Violates X Corp's and Plaintiffs' Current and Enforceable Forum
       Selection Clause. .......................................................................................... 8

    B.    This Court Lacks Personal Jurisdiction Over TIUC and TAPPL. ............... 10

    C.    Venue Is Improper In This Court as to TIUC and TAPPL. ........................ 12

    D.    This Court Lacks Subject Matter Jurisdiction. .......................................... 13

    E.    Defendants Waived Any Right To Assert The Forum Selection Clause. ..................... 13

    F.    The Forum Selection Clause Does Not Cover the Irish or Singaporean Claims. ....... 15

    G.    The Parties' Nonsignatory Posture Prevents Reliance on the Clause. ....................... 19

    H.    Two of the Plaintiffs in This Action Are Not Parties to the TOS Containing the
       Forum Selection Clause. ........................................................................... 21

    I.    MMFA Cannot Satisfy Any of the *Unterweser* Factors. ........................... 22

    J.    MMFA's Belated Attempt to Enjoin the Cases in Ireland and Singapore Represents a
       Severe Attack on Foundational Comity Principles. .................................... 24

Conclusion ..................................................................................................................... 25

Certificate of Service ....................................................................................................... 1

# TABLE OF AUTHORITIES

**Cases**

*Applied Med. Distrib. Corp. v. Surgical Co. BV*,
 587 F.3d 909 (9th Cir. 2009) ................................................................. 8

*Associated Vendors, Inc. v. Oakland Meat Co., Inc.*,
 26 Cal. Rptr. 806 (1962) ...................................................................... 11

*Ball Up, LLC v. Strategic Partners Corp.*,
 2018 WL 3673044 (Tex. App.—Fort Worth Aug. 2, 2018).................... 19

*Baton v. Ledger SAS*,
 2025 WL 416360 (N.D. Cal. Feb. 6, 2025) ........................................... 14

*Baton v. Ledger SAS*,
 740 F. Supp. 3d 847 (N.D. Cal. 2024) ............................................. 21, 22

*BeautiControl, Inc. v. Burditt*,
 2001 WL 1149360 (N.D. Tex. Sept. 26, 2001) ..................................... 16

*Bent v. Zounds Hearing Franchising, LLC*,
 No. 15 Civ. 6555, 2016 WL 153092 (S.D.N.Y. Jan. 12, 2016)............... 21

*Binns v. Am. Gen. Life & Accident Ins. Co.*,
 2023 WL 5125042 (9th Cir. Aug. 10, 2023) ......................................... 13

*Caldas & Sons, Inc. v. Willingham*,
 17 F.3d 123 (5th Cir. 1994) ................................................................. 26

*Chalos & Co., P.C. v. Marine Managers, Ltd.*,
 2015 WL 5093469 (E.D. La. Aug. 28, 2015) ........................................ 15

*Cornet v. Twitter, Inc.*,
 2023 WL 3029236 (N.D. Cal. Apr. 19, 2023) ......................................... 9

*Cummings v. Cenergy Int'l Servs., LLC*,
 258 F. Supp. 3d 1097 (E.D. Cal. 2017) ................................................ 20

*CZ Servs., Inc. v. Express Scripts Holding Co.*,
 2018 WL 3972030 (N.D. Cal. Aug. 20, 2018) ................................. 15, 16

*E. & J. Gallo Winery v. Andina Licores S.A.*,
 446 F.3d 984 (9th Cir. 2006) ............................................................... 24

*E. & J. Gallo Winery v. Encana Energy Servs., Inc.*,
 388 F. Supp. 2d 1148 (E.D. Cal. 2005) ................................................ 15

*Ellicott Mach. Corp. v. Modern Welding Co., Inc.*,
 502 F.2d 178 (4th Cir. 1974) ............................................................... 25

*Ene v. Graham*,
 546 P.3d 1232 (Nev. 2024)................................................................... 11

*Ensambles Hyson, S.A. de C.V. v. Sanchez*,
   736 F. Supp. 3d 871 (S.D. Cal. 2024)........................................................................ 24, 25

*Estate of Saunders v. C.I.R.*,
   745 F.3d 953 (9th Cir. 2014) ................................................................................................. 12

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021)................................................................................................................ 10

*Greenlight Sys., LLC v. Breckenfelder*,
   2021 WL 2651377 (N.D. Cal. June 28, 2021) .......................................................................... 10

*Hicks v. Utiliquest LLC*,
   736 F. Supp. 3d 849 (E.D. Cal. 2024) .................................................................................. 19

*Howard Lane NE Indus. Owner, LLC v. Civil & Envtl. Consultants, Inc.*,
   2024 WL 5100387 (W.D. Tex. Nov. 21, 2024)................................................................. 21, 22

*Hugel v. Corp. of Lloyd's*,
   999 F.2d 206 (7th Cir. 1993) ................................................................................................. 16

*In re AutoNation, Inc.*,
   228 S.W.3d 663 (Tex. 2007).................................................................................................. 25

*In re Banco Santander Securities-Optimal Litig.*,
   732 F. Supp. 2d 1305 (S.D. Fla. 2010) ................................................................................. 25

*In re Boon Global Ltd.*,
   923 F.3d 643 (9th Cir. 2019) ................................................................................................. 11

*In re Orange, S.A.*,
   818 F.3d 956 (9th Cir. 2016) ................................................................................................. 15

*In re Schwarzkopf*,
   626 F.3d 1032 (9th Cir. 2010) ......................................................................................... 11, 12

*In re Yahoo! Inc.*,
   313 F. App'x 722 (5th Cir. 2009) .......................................................................................... 18

*Interdigital Tech. Corp. v. Pegatron Corp.*,
   No. 15-CV-02584-LHK, 2015 WL 3958257 (N.D. Cal. June 29, 2015) ................................. 8

*JH Portfolio Debt Equities, LLC v. Garnet Capital Advisors, LLC*,
   2018 WL 6112695 (C.D. Cal. March 16, 2018) .................................................................... 22

*Jody James Farms, JV v. Altman Group, Inc.*,
   547 S.W.3d 624 (Tex. 2018)................................................................................................... 20

*LaCross v. Knight Transp., Inc.*,
   95 F. Supp. 3d 1199 (C.D. Cal. 2015) ................................................................................... 15

*Lipshie v. Tracy Inv. Co.*,
   566 P.2d 819 (Nev. 1977)....................................................................................................... 11

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
   714 F.3d 714 (2d Cir. 2013) ................................................................................................... 21

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
  858 F.2d 509 (9th Cir. 1988) ............................................................ 15, 20

*Marinechance Shipping, Ltd. v. Sebastian*,
  143 F.3d 216 (5th Cir. 1998) ................................................................. 15

*Mayhem Crude, Inc. v. Borrelli Walsh Pte. Ltd.*,
  445 F. Supp. 3d 337 (N.D. Cal. 2020) ..................................................... 25

*McMahon v. RMS Electronics, Inc.*,
  618 F. Supp. 189 (S.D.N.Y. 1985) .......................................................... 16

*Meras Eng'g, Inc. v. CH2O, Inc.*,
  2013 WL 146341 (N.D. Cal. Jan. 14, 2013) .............................................. 14

*Michiana Easy Livin' Country, Inc. v. Holten*,
  168 S.W.3d 777 (Tex. 2005) .................................................................. 26

*Microsoft Corp. v. Motorola, Inc.*,
  696 F.3d 872 (9th Cir. 2012) ........................................................ 8, 22, 25

*Morgan v. Sundance, Inc.*,
  596 U.S. 411 (2022) ............................................................................ 14

*Naffe v. Frey*,
  789 F.3d 1030 (9th Cir. 2015) ............................................................... 13

*Norris v. Youngblood*,
  2021 WL 3401338 (E.D. Cal. Aug. 4, 2021) ............................................. 10

*Oxysure Sys., Inc. v. Castaldo*,
  2016 WL 1031172 (E.D. Tex. Mar. 15, 2016) ........................................... 19

*Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*,
  802 F.2d 362 (9th Cir. 1986) ................................................................. 13

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) ............................................................... 10

*Pinto Tech. Ventures, L.P. v. Sheldon*,
  526 S.W.3d 428 (Tex. 2017) .................................................................. 20

*Ruderman v. Rolls Royce Motor Cars, LLC*,
  511 F. Supp. 3d 1055 (C.D. Cal. 2021) .................................................... 19

*S & J Rentals, Inc. v. Hilti, Inc.*,
  294 F. Supp. 3d 978 (E.D. Cal. 2018) ...................................................... 13

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ................................................................. 10

*Se. Power Group, Inc. v. Vision 33, Inc.*,
  855 F. App'x 531 (11th Cir. May 6, 2021) ................................................ 14

*Seattle-First Nat'l Bank v. Manges*,
  900 F.2d 795 (5th Cir. 1980) ................................................................ 14

*Serafin v. Realmark Holdings, LLC*,
    2023 WL 7110708 (N.D. Cal. Oct. 26, 2023) .................................................................. 12

*Sims v. Paramount Gold & Silver Corp.*,
    2010 WL 5364783 (D. Ariz. Dec. 21, 2010) ................................................................... 17

*Terra Int'l, Inc. v. Miss. Chem. Corp.*,
    119 F.3d 688 (8th Cir. 1997) ......................................................................................... 15

*Terracom v. Valley Nat'l Bank*,
    49 F.3d 555 (9th Cir. 1995) ........................................................................................... 12

*Trump v. Twitter, Inc.*,
    2021 WL 8202673 (S.D. Fla. Oct. 26, 2021) .................................................................. 18

*Unterweser Reederei GMBH*,
    428 F.2d 888 (5th Cir.1970) ...................................................................................... 8, 22

*W. Boxed Meats Distributors, Inc. v. Parker*,
    2017 WL 3034517 (W.D. Wash. July 18, 2017) ............................................................ 22

*X Corp. v. Media Matters for Am.*,
    No. 4:23-CV-01175-O, 2024 WL 4001803 (N.D. Tex. Aug. 29, 2024) ....................... 4, 7, 13

*X Corp. v. Media Matters for America*,
    No. 24-10900 (5th Cir., argued Feb. 18, 2025) ................................................................ 5

*Yan Guo v. Kyani, Inc.*,
    311 F. Supp. 3d 1130 (C.D. Cal. 2018) ......................................................................... 15

## Statutes

28 U.S.C. § 1332(a) ........................................................................................................... 13

28 U.S.C. § 1391 ............................................................................................................... 12

28 U.S.C. § 1404(a) ............................................................................................................. 5

28 U.S.C. § 1406(a) ............................................................................................................. 5

## INTRODUCTION

In November 2023, Media Matters for America (MMFA) published a widely disseminated article claiming that one of its reporters, Eric Hananoki, "found" blue-chip advertisers' content being placed next to offensive posts on the X social media platform. MMFA boasted that the article resulted in many advertisers pausing their spending on X. Angelo Carusone, MMFA's president, pinned the blame squarely on Defendant X Corp. After all, they claimed, Hananoki merely used X "the way a normal user would" and then reported on what he saw.[1]

MMFA's article was premised on a series of falsehoods. Hananoki selectively followed twenty-five fringe accounts juxtaposed with five major advertisers, and then scrolled incessantly to generate new advertisements, far more than an ordinary user would, until he found adjacencies that he knew would cause a major firestorm. In fact, for all but one adjacency, Hananoki's manipulated account was the only account out of more than 500 million that saw the adjacency, and for that one adjacency, there was only one other account that saw it. The adjacencies Hananoki viewed represented 0.0000009090909% of the impressions on the platform that day.

X Corp. sued MMFA in the Northern District of Texas, home to several of X's blue-chip advertisers, to vindicate its economic interests and correct MMFA's egregious misrepresentations about X's platform. And because MMFA's injurious conduct resulted in financial losses to two X subsidiaries (rather than to X Corp. itself) in foreign markets, those two subsidiaries, Twitter International Unlimited Company (TIUC) and Twitter Asia Pacific Pte. Ltd. (TAPPL) sued to recover their own, non-overlapping damages in Ireland and Singapore, respectively, where those companies are based. These cases have been pending in foreign jurisdictions for over a year, as has X Corp.'s Texas-based lawsuit. In all three, MMFA has lodged jurisdictional objections to the courts' authority. Those arguments failed in the Texas proceedings but remain pending in Ireland and Singapore. Until two weeks ago, MMFA never claimed that the forum selection clause in X Corp.'s old terms of service ("Former TOS") required any of the three disputes to be brought in

---

[1] This brief refers to the plaintiffs collectively as "MMFA" or the "Plaintiffs."

this Court. But after MMFA's motion to dismiss X Corp.'s claims was denied in the Texas proceedings and the parties engaged in substantial discovery, and after MMFA's jurisdictional and forum non conveniens arguments in the Irish and Singapore proceedings were fully briefed and supported by expert testimony, MMFA appears to have developed concerns about its prospects in the courts of Ireland and Singapore. MMFA then filed these proceedings in the Northern District of California to wrest control of the Irish and Singapore proceedings from those courts. MMFA's new gambit, however, does not justify the issuance of an extraordinary antisuit injunction that would strip those courts of their authority to hear arguments involving harm to businesses at home in those jurisdictions—and, more fundamentally, to decide whether those cases should be heard there.

MMFA's delay is reason enough to deny a preliminary injunction, but there are bigger problems with MMFA's motion: As a threshold matter, this Court lacks both personal and subject matter jurisdiction to enjoin TIUC and TAPPl, and insofar as any terms of service apply to the parties' present dispute, it is the *current* terms (effective November 15, 2024) ("Current TOS"), whose forum-selection clause requires covered disputes to be brought in the Northern District of Texas, not in this Court. MMFA's breach of those terms will underpin a forthcoming transfer motion. Moreover, TIUC and TAPPL are not even parties to X Corp.'s Former TOS containing the forum selection clause Media Matters invokes, and that forum selection clause in any event does not cover defamation or tortious interference claims arising from articles that MMFA published on its own website. And in all events, MMFA has not met any of the factors necessary for an antisuit injunction.

## FACTUAL BACKGROUND

As early as April 2022, MMFA targeted Elon Musk to prevent Musk's acquisition of then-Twitter. MMFA Ex. 19 ¶ 31-32.[2] As the transaction coalesced, MMFA organized an activist-group coalition to undermine Twitter's reputation, revenue, and value. *Id.* ¶ 33. This coalition sought to

---

[2] References to "MMFA Ex." are to the exhibits to Plaintiffs' Motion for a Preliminary Injunction.

force then-Twitter to maintain censorious controls over speech the group disfavored, or else drive advertisers away from Twitter to deprive the company of its most significant revenue stream: major-brand advertising. *Id.* ¶ 33-35. Musk's Twitter purchase closed in October 2022. *Id.* ¶ 33. Twitter became X Corp., which, under Musk's new leadership, committed itself to maximizing both free speech for its users and robust brand-safety protections for its advertisers. *Id.* ¶¶ 1, 39-45. Determined to undermine this project, MMFA published over twenty articles seeking to diminish X's standing with major advertisers. *Id.* ¶ 4.

MMFA's campaign did not initially yield the full economic harm it sought. But on November 16, 2023, MMFA published an article accompanied by a provocative (and false) headline: "As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content." *Id.* ¶ 46. The piece represented that X organically "placed" blue-chip advertisers' content next to hateful content on X's popular social media platform. *Id.* ¶ 47. MMFA publicly described that it "found" the ad pairings on the platform, *id.*, by using Twitter "the way a normal user would," *id.* ¶ 13. X's internal review uncovered that MMFA's staff used a separate account in their "investigation," protected that account from public view, and ensured the account was more than 30 days old to override mandatory content filters and safety settings that X imposes on all new accounts. *Id.* ¶ 51. MMFA then set this account to follow only 30 accounts, all of which were either known for posting fringe content or were major advertisers' accounts, thus telling the X algorithm that they *wanted* to see only fringe content and major-brand content. *Id.* ¶ 52. But, thanks to X's comprehensive brand-safety policies and tools, *id.* ¶ 39-45, even that was insufficient to yield MMFA's desired results. Undeterred, MMFA staff scrolled and refreshed incessantly, resulting in the display of 13 to 15 times more advertisements per hour than the average X user sees. *Id.* ¶ 53. Through this intentional manipulation, MMFA eventually obtained screen shots of controversial content adjacent to major-brand advertising. *Id.* ¶ 54. For all but one adjacency, Hananoki's manipulated account was the only account on the platform that saw the adjacency, and for one adjacency, there was only one other account (out of more than 500 million) that saw the adjacency. *Id.* ¶ 15. The adjacencies Hananoki viewed

3

represented 0.0000009090909% of the impressions on the platform that day. *Id.* ¶ 57. MMFA's knowingly false article targeting X's business relationships created the false impression that advertisements were organically and commonly appearing next to fringe content on the platform and resulted in many advertisers withdrawing from X's platform. *Id.* ¶ 61.

**PROCEDURAL HISTORY**

**I.    X Corp. Sues in the Northern District of Texas.**

On November 20, 2023, X Corp. sued MMFA, Hananoki, and Carusone for business disparagement, tortious interference with contract, and tortious interference with prospective economic advantage. *Id.* ¶¶ 65-88. X Corp. seeks compensation for millions of dollars in lost revenue. Plaintiffs moved to dismiss X Corp.'s Amended Complaint on March 8, 2024. Dvorscak Decl., Ex. 1. The motion contested both personal jurisdiction and venue in the Texas court. *See id.* at 4-13. In doing so, MMFA did not contend that X Corp.'s then-applicable TOS, which provided that "[a]ll disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California," applied to the Texas case, but instead contended that it generally supported their assertion that Texas had no strong interest in this suit. *See id.* at 10 (arguing that exercising personal jurisdiction would not be "reasonable" because "X's . . . terms of service disclaim any interest in resolving disputes in Texas"); *id.* at 13 (noting, in venue argument, that the Northern District of California is "ordinarily X's own preferred choice of forum" as evidenced by the TOS, without contending that they governed the Texas proceedings). X's Current TOS provide that "[a]ll disputes related to these Terms or the Services . . . will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States." *See* Dvorscak Decl., Ex. 2 at 9.

On August 29, 2024, the Texas court denied Plaintiffs' motion to dismiss, rejecting their personal jurisdiction, venue, and Rule 12(b)(6) arguments (and any attendant arguments based on the TOS). *X Corp. v. Media Matters for Am.*, No. 4:23-CV-01175-O, 2024 WL 4001803, at *8 (N.D. Tex. Aug. 29, 2024). Pretrial proceedings have continued apace in the Texas court, including extensive discovery, motions practice, and an interlocutory appeal before the Fifth Circuit. *See X*

*Corp. v. Media Matters for America*, No. 24-10900 (5th Cir., argued Feb. 18, 2025). A year after filing their unsuccessful motion to dismiss, on March 6, 2025, Plaintiffs filed a motion to transfer venue under 28 U.S.C §§ 1404(a) and 1406(a). *See* Dvorscak Decl., Ex. 3 at 1. In it, they argue that the forum selection clause in X Corp.'s Former TOS requires that this litigation be heard in the Northern District of California. *Id.* at 4-14. They also contend that the Court should transfer the case to this Court for "the convenience of parties and witnesses" under § 1404(a). *Id.*

## II.    Twitter International Unlimited Company Sues in Ireland.

TIUC, an Irish unlimited private company with a registered address in Dublin, operates the X platform in the European Union, the United Kingdom, and the European Free Trade Association (EFTA) States. MMFA Ex. 25 ¶ 1. This information is publicly disclosed to all X users in X's TOS, which contains two tracks: one TOS between TIUC and users in those countries, and one TOS between X Corp. and users anywhere else in the world, including the United States. Dvorscak Decl., Ex. 2 at 1, 10. TIUC's TOS in effect at the time it filed suit against Media Matters contained no forum selection clause at all, and its current TOS state that "all disputes related to these Terms or the Services . . . will be brought exclusively before a competent court in Ireland without regard to conflict of law provisions and will be governed by Irish law." Byrne Decl. ¶ 35. In addition to operating the X platform in Europe, TIUC also manages advertising relationships with companies and individuals in the same area. MMFA Ex. 25 ¶¶ 1, 5. Accordingly, advertisers who wish to utilize the X platform to advertise to users located in the European Union, the United Kingdom, and the EFTA States contract with TIUC—not X Corp. *Id.* ¶ 5.

Litigation has been pending for well over a year. Byrne Decl. ¶ 6. On December 5, 2023, TIUC obtained an order from the Irish court system allowing it to issue and serve proceedings on MMFA. *Id.* ¶ 3. A plenary summons was issued to MMFA on December 6, 2023. *Id.* ¶ 4. TIUC served its statement of claim on MMFA on March 12, 2024, in which it described its causes of action arising under Irish law. *Id.* ¶ 6. TIUC's damages include millions of euro in TIUC-advertising losses. MMFA Ex. 21 ¶ 29. On June 17, 2024, MMFA brought a jurisdictional

challenge to the Irish litigation on *forum non conveniens* grounds before the Irish High Court. Byrne Decl. ¶ 10. This challenge will determine whether Ireland is the appropriate forum for TIUC. *Id.* ¶¶ 10-11. The parties have exchanged extensive factual affidavits and expert reports. *Id.* No hearing date to resolve the jurisdictional challenge has been set by the Irish High Court. *Id.* ¶ 28.

Despite MMFA's claimed awareness of the forum selection clause in X Corp.'s old TOS after the articles were published (MMFA Ex. 13 ¶ 3; MMFA Ex. 14 ¶ 6), in its jurisdictional challenge in Ireland, MMFA never raised the forum selection clause as a reason that Irish jurisdiction is improper. Bryne Decl. ¶ 32. Nor does the forum selection apply to the Irish litigation. *Id.* ¶ 35. As explained above, TIUC is not a party to X Corp.'s TOS, and the Former TOS then-applicable to TIUC (as distinct from X Corp.) contains no forum selection clause. *Id.* ¶¶ 34-35.

### III.    Twitter Asia Pacific Pte. Ltd. Sues in Singapore.

MMFA's articles also caused advertisers in the Asia Pacific region to pause spending. Accordingly, on July 23, 2024 TAPPL filed an originating claim in the General Division of the High Court of the Republic of Singapore against MMFA. Yuan Declaration ¶ 2. The Singapore court granted permission to sue on July 26, 2024, *id.* ¶ 3, and MMFA was served on August 27, 2024, *id.* ¶ 4. TAPPL represents the X platform in the Asia Pacific and is "the legal entity through which X Group contracts with advertising clients located in the Asia Pacific region to place those Clients' advertisements on the X Platform." MMFA Ex. 23. TAPPL alleged that MMFA's actions caused damages to it, including "advertising losses in the Asia Pacific region." *Id.* ¶ 43.

MMFA contested jurisdiction, serving its statement of defense on October 2, 2024. Yuan Decl. ¶ 6. On November 6, 2024, the Singapore court set a briefing schedule on the jurisdictional challenge. *Id.* ¶ 7. This challenge has caused substantial costs on both sides. MMFA hired experts and filed expert affidavits in support of its challenge, and TAPPL did the same. *Id.* ¶¶ 9-10. Combined, nine separate affidavits have been served in this litigation. MMFA's actions also had the effect of further delaying resolution of the jurisdictional challenge to a hearing, presently set for April 14, 2025. *Id.* ¶ 21. Yet, MMFA has not raised the issue of the forum selection clause

contained within X's TOS as a basis to argue that jurisdiction or venue in Singapore is improper. *Id.* ¶¶ 13-14. Indeed, there are only two mentions of the TOS at all, only one of which mentions the forum selection clause as part of a background section discussing the Texas litigation. *Id.* ¶ 24. For good reason. As a matter of Singapore law, TAPPL is not bound by the forum selection clause in the X TOS. *Id.* ¶ 26.

## IV.    MMFA Belatedly Sues in this Court.

Nearly ***sixteen months*** after X initiated litigation against Plaintiffs in the Northern District of Texas, fifteen months after TIUC initiated litigation against MMFA in Ireland, and eight months after TAPPL initiated litigation against MMFA in Singapore, Plaintiffs sued X, TIUC, and TAPPL in this Court. ECF No. 1. Plaintiffs allege a claim for breach of contract against X for suing in the Northern District of Texas; a claim for breach of contract against X, TIUC, and TAPPL for suing MMFA in international forums; and a declaratory judgment that the forum selection clause in X's Former TOS applies to TIUC and TAPPL. Plaintiffs' claims rely on the same forum selection clause MMFA knew of and referenced in other motions for nearly a year and a half—but never, until now, argued governed the parties' dispute.

This action comes while significant progress has been made in resolving the claims against MMFA. The jurisdictional challenges against TIUC and TAPPL have resulted in the exchange of extensive factual affidavits and expert reports and are approaching resolution in both Ireland and Singapore, respectively. Likewise, since jurisdiction was established in Texas, *see X Corp.*, 2024 WL 4001803, at *8, the parties have engaged in substantial discovery, motion practice, and even appellate practice before the Fifth Circuit, which has heard oral argument on an interlocutory appeal filed by MMFA. Notably, Plaintiffs sued here while their motion to transfer venue is *still* being briefed in the Northern District of Texas. Plaintiffs now seek a preliminary injunction against the prosecution of the litigation in Ireland, Singapore, or in any other foreign jurisdiction.

## STATEMENT OF THE ISSUE TO BE DECIDED

Whether MMFA is entitled to an antisuit injunction that would halt litigation in Ireland and Singapore and preclude those courts from resolving MMFA's jurisdictional challenges.

## STANDARD OF REVIEW

A court "with jurisdiction over the parties" can "enjoin them from proceeding with an action in the courts of a foreign country," but the power "should be used sparingly." *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012). For antisuit injunctions, courts consider (1) whether "the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined"; (2) the "*Unterweser* factors," reflecting a "list of considerations that may justify a foreign anti-suit injunction" including whether the foreign litigation would frustrate a policy of the forum issuing the injunction; and (3) whether the impact on comity would be tolerable. *Unterweser Reederei GMBH*, 428 F.2d 888, 896 (5th Cir.1970); *Applied Med. Distrib. Corp. v. Surgical Co. BV*, 587 F.3d 909, 913 (9th Cir. 2009) (cleaned up). "The plaintiff bears the burden of proof on each element." *Interdigital Tech. Corp. v. Pegatron Corp.*, No. 15-CV-02584-LHK, 2015 WL 3958257, at *3 (N.D. Cal. June 29, 2015) (citation omitted).

## ARGUMENT

## I.    An Antisuit Injunction Should Not Issue.

### A.    Plaintiffs' Suit Violates the Current and Enforceable Forum Selection Clause in the Terms of Service.

The X TOS in effect on March 10, 2025—the date this lawsuit was filed—mandate that this dispute be brought in the Northern District of Texas. Dvorscak Decl., Ex. 2 at 9. It provides:

> The laws of the State of Texas…will govern these Terms and any dispute that arises between you and us, notwithstanding any other agreement between you and us to the contrary. All disputes related to these Terms or the Services, including without limitation disputes related to or arising from other users' and third parties' use of the Services and any Content made available by other users and third parties on the Services, will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum.

*Id.* This case was brought four months after the Current TOS became effective. Per the agreements

made by Hananoki, Carusone, and MMFA, who each accepted the Current TOS containing the Texas forum selection clause, as to X Corp., this lawsuit had to be brought in the Northern District of Texas. *Id.*; Scolari Decl. ¶6. In other words, Plaintiffs had to bring their breach of contract claim for X Corp.'s purported breach of its TOS against X Corp. in a Texas court. Unlike Plaintiffs' invocation of the forum selection clause against Defendants based on issues far afield of the Former TOS, Plaintiffs' own claims in California directly implicate the Current TOS and Plaintiffs are therefore bound by its forum selection clause. Dvorscak Decl., Ex. 2 at 9. Plaintiffs, not X, breached the forum-selection clause. *Id.*

Nor could Plaintiffs respond that the forum selection clause does not apply to their claims against TIUC or TAPPL because those entities are not parties to the Current TOS. Plaintiffs claim (albeit incorrectly) that TIUC and TAPPL are bound by the Former TOS. But if so, then Plaintiffs are equally bound by the Current TOS as to TIUC and TAPPL. Plaintiffs have to pick a side. Either TIUC/TAPPL are subject to the X Corp. TOS and this case should have been brought in Texas, or they are not and the forum selection clause therein does not apply to them.[3] Put simply, this case should not be here.

The Current TOS also mandate that "The laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us, notwithstanding any other agreement . . . to the contrary." Dvorscak Decl., Ex. 2 at 9. Plaintiffs are therefore wrong that California law applies to the questions raised herein because according to the terms of the Current TOS, Texas law applies. We nevertheless address Plaintiffs' arguments under California law, as the choice of law does not alter the calculus.

---

[3] *Cornet v. Twitter, Inc.*, does not support Plaintiffs. 2023 WL 3029236, at *1 (N.D. Cal. Apr. 19, 2023). There, plaintiffs claimed they were third-party beneficiaries under Twitter's merger agreement. *Id.* at *2. A federal court in California agreed with Twitter that the dispute had to be adjudicated in Delaware under the merger agreement's forum selection clause. *Id.* at *4. The plaintiffs could not seek the benefits of the agreement without being bound themselves by it. *Id.* at *2. "Either plaintiffs are third-party beneficiaries of the merger agreement and should be litigating in Delaware, or their third-party beneficiary claim is foreclosed by the express terms of the agreement and will not fly in California or Delaware." *Id.* The same principle applies here: either plaintiffs are bound by the forum selection to litigate against TIUC and TAPPL in Texas, or the forum selection clause does not apply to TIUC or TAPPL at all.

**B.     This Court Lacks Personal Jurisdiction Over TIUC and TAPPL.**

The Court may only issue an injunction if "it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit." *Norris v. Youngblood*, 2021 WL 3401338, at *1 (E.D. Cal. Aug. 4, 2021). Here, Plaintiffs fail their burden to show the "exercise of personal jurisdiction" is proper as to TIUC and TAPPL. *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir. 2006). To start, the Court lacks general jurisdiction over TIUC and TAPPL. These foreign entities are not "at home" in California such that an exercise of general personal jurisdiction would be warranted. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). The Supreme Court has explained that the "paradigm" forums for the exercise of general jurisdiction over a corporation "are its place of incorporation and principal place of business." *Id.* at 359. Both TIUC and TAPPL are incorporated and have their principal places of business abroad. MMFA Ex. 25 ¶ 1; MMFA Ex. 23 ¶ 1.

And the Court lacks specific jurisdiction over TIUC and TAPPL. Specific jurisdiction is proper if the defendant "purposefully avails itself of the privilege of conducting activities within the forum State." *Ford*, 592 U.S. at 359 (cleaned up). Stated differently, the plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum. *Id.* But MMFA does not allege that TIUC or TAPPL engaged in *any* conduct in or aimed at California, and TIUC's and TAPPL's allegations make clear that they are claiming injuries to their businesses in Ireland and Singapore, respectively. *E.g.*, MMFA Ex. 25 ¶ 24; MMFA Ex. 23 ¶ 43. The Court thus cannot exercise personal jurisdiction over TIUC and TAPPL consistent with due process. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

MMFA does not even try to show that the exercise of personal jurisdiction would be appropriate. Instead, its jurisdictional argument hinges on the notion that TIUC and TAPPL are mere alter egos of X Corp. The evidence that they have proffered is insufficient to make that showing. Nevada law applies as to that assertion because X is a Nevada company. *See Greenlight Sys., LLC v. Breckenfelder*, 2021 WL 2651377, at *17 (N.D. Cal. June 28, 2021) ("[T]he state of incorporation governs the liability of the members and managers of a limited liability company

and thus alter ego liability as well."). Under Nevada law, courts look to factors including "(1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities." *Ene v. Graham*, 546 P.3d 1232, 1236-37 (Nev. 2024) (cleaned up). Separate corporations are distinct under the law and "the mere fact that ownership and management of the [company] are accomplished by the supposed alter ego is insufficient by itself to support veil piercing without further findings." *Id.*; *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 823 (Nev. 1977). "[T]he evidence supporting a finding of an alter ego must also be the cause of the injury and must have sentenced a fraud or promoted an injustice before the corporate veil can be pierced." *Ene*, 546 P.3d at 1237. Plaintiffs have not provided an iota of evidence to support such a finding.

Even if California law were to apply (and it does not), MMFA's argument would still fail. Like Nevada law, alter ego liability is found in California "where there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; and, second, where adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *In re Boon Global Ltd.*, 923 F.3d 643, 653 (9th Cir. 2019) (quoting *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010)). Factors that are considered in determining whether an alter ego relationship exists include "commingling of funds and other assets and failure to segregate funds of the separate entities; the treatment by an individual of the assets of the corporation as his own; the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; and the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets between entities so as to concentrate the assets in one and the liabilities in another." *Schwarzkopf*, 626 F.3d at 1038 (cleaned up) (quoting *Associated Vendors, Inc. v. Oakland Meat Co., Inc.*, 26 Cal. Rptr. 806, 813-15 (1962)).

Instead of providing evidence of any of the relevant considerations under California law, Plaintiffs point to the irrelevant fact that TIUC and TAPPL have made claims based on Plaintiffs' defamatory articles. What matters, however, is that TIUC and TAPPL operate in different regions

in the world, maintain separate advertising contracts with region-specific advertisers, suffered harms unique to their regions. These entities' lawsuits seek to recover the separate and distinct advertising revenue lost in their jurisdictions because of Plaintiffs' defamation. MMFA Ex. 25 ¶ 32; MMFA Ex. 23 ¶ 43. That X Corp., TIUC, and TAPPL all assert defamation-type claims against MMFA does not satisfy the demanding requirements for piercing the corporate veil.

Nor is it sufficient to point to common ownership among or a subsidiary relationship between the entities. MMFA was required to offer evidence of commingling of funds or other disregard of legal formalities. *Schwarzkopf*, 626 F.3d at 1038. They did not do so. Finally, there is no injustice in maintaining these distinctions between the entities. A lawsuit in an entity's respective jurisdiction to regain money that specific entity lost because of a defamatory action is not harassing. Nor does MMFA appear to believe its own argument. After all, MMFA has not sought Rule 11 or similar sanctions from any of the entities in the Texas, Irish, or Singaporean proceedings for putatively harassing behavior or otherwise. That is because they cannot even remotely satisfy the legal standard for such a request. For these reasons, the Court cannot exercise jurisdiction over TIUC and TAPPL. MMFA's alternative request for jurisdictional discovery should be disregarded because it was raised only in a footnote (at n.6), *Estate of Saunders v. C.I.R.*, 745 F.3d 953, 962 n.8 (9th Cir. 2014), and lacks merit in any event, *see Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995).

**C.    Venue Is Improper In This Court as to TIUC and TAPPL.[4]**

Venue is improper in this Court as to TIUC and TAPPL. Venue is appropriate in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391. But the events here concern Plaintiffs' lies about the X platform—not the use of the platform itself. The TOS governing use of the X platform are thus immaterial to this case and cannot support venue. Given that TIUC and TAPPL do not "reside in this District" and the "events giving rise to the claim occurred" elsewhere, venue is improper. *Serafin v. Realmark Holdings,*

---

[4] Defendants will also affirmatively move for dismissal and transfer under Fed. R. Civ. P. 12(b), raising these and other Rule 12(b) grounds.

*LLC*, 2023 WL 7110708, at *6 (N.D. Cal. Oct. 26, 2023).

### D.    This Court Lacks Subject Matter Jurisdiction.

Additionally, this Court lacks subject matter jurisdiction. The Ninth Circuit has plainly stated that the legal certainty test for determining the amount-in-controversy requirement is met when, as here, "the terms of a contract limit the plaintiff's possible recovery." *Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015) (quoting *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986)); *Binns v. Am. Gen. Life & Accident Ins. Co.*, 2023 WL 5125042, at *1 (9th Cir. Aug. 10, 2023). Both the Former TOS and Current TOS state that recovery for a breach is capped at $100. MMFA Ex. 1; Dvorscak Decl., Ex. 2. This Court cannot, therefore, have diversity jurisdiction. 28 U.S.C. § 1332(a).

### E.    Defendants Waived Any Right To Assert The Forum Selection Clause.

Even if the forum selection clause in the former TOS applies here, which it does not, Plaintiffs have waived any right to enforce the clause by significantly litigating against X Corp. in Texas, Ireland, and Singapore without seeking to transfer. Plaintiffs' invocation of that clause in *this* court is inappropriate, wastes judicial resources, and prejudices Defendants. "[A] forum selection clause is waived where the party invoking it has taken actions inconsistent with it, or delayed its enforcement, and enforcement would prejudice other parties." *S & J Rentals, Inc. v. Hilti, Inc.*, 294 F. Supp. 3d 978, 984 (E.D. Cal. 2018). Plaintiffs have acted inconsistently with any right to enforce the clause and have markedly delayed attempting enforcement; to enforce the clause now would severely prejudice X.

Plaintiffs have directly engaged in the discovery process in Texas over the last sixteen months serving 78 requests for production, 126 requests for admission, and 13 interrogatories. The parties have conducted numerous meet-and-confers, Plaintiffs have received hundreds of thousands of documents from X, and they have produced tens of thousands of documents in return. And Plaintiffs substantially engaged in motion practice before the Texas court, filing two motions to dismiss, each seeking to dismiss this litigation "entirely and with prejudice." *X Corp. v. Media Matters for Am.*, No. 4:23-cv-01175-O (N.D. Tex.) (ECF Nos. 31 at 1 and 40 at 1). Yet neither of

those motions invoked the forum selection clause as a ground for dismissal or transfer. Similarly, Plaintiffs have fully briefed forum non conveniens challenges in Ireland and Singapore, and the parties have already submitted extensive expert reports and affidavits on those issues, yet Plaintiffs *never* contended in those proceedings that the forum selection in the Former TOS governs those disputes. This alone is enough to find waiver. Filing a dispositive motion that failed to raise the forum selection clause argument establishes waiver because courts condemn litigants who wait to enforce forum selection clauses until after they know which way a court will rule—the very tactic MMFA employs here. *Se. Power Group, Inc. v. Vision 33, Inc.*, 855 F. App'x 531, 536 (11th Cir. May 6, 2021) (Rule 12(b)(6) motion waived "the right to invoke the forum selection clause because it requested the district court to render a final judgment on the merits.").

Likewise, Plaintiffs have also sought, briefed and argued an interlocutory appeal at the Fifth Circuit. All of this briefing was conducted prior to filing this case and prior to Plaintiff's motion to transfer recently filed in the Texas suit. While a party must demonstrate clear intent to waive a forum selection clause, it does so when it "substantially participate[s] in the litigation to a point consistent with an intent" to enforce the clause. *Baton v. Ledger SAS*, 2025 WL 416360, at *6 (N.D. Cal. Feb. 6, 2025). Plaintiffs' conduct plainly evidences an intent to relinquish any right to enforce the clause and litigate in this district.

The Supreme Court has questioned the prejudice element of waiver. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022), and this Court may properly find waiver based on Plaintiffs' clear demonstration of intent to waive. In any event, X is prejudiced by Plaintiffs' late invocation of the forum selection clause. Courts have found prejudice after unexplained delay in raising venue issues. *See, e.g.*, *Meras Eng'g, Inc. v. CH2O, Inc.*, 2013 WL 146341, at *7 (N.D. Cal. Jan. 14, 2013) (citing an example where the court found prejudice resulted from a near two-year delay); *Se. Power Group*, 855 F. App'x at 536. Here, X Corp. would be forced to expend significant, duplicate effort if this case were transferred, including potentially rebriefing issues determined by the Texas district court, and resolution would be delayed. The Court should not countenance Plaintiffs' gamesmanship and should find that Plaintiffs have waived the right to invoke the forum

selection clause.

**F.    The Forum Selection Clause Does Not Cover the Irish or Singaporean Claims.**

Contrary to MMFA's assertions, this antisuit injunction should not issue because the forum-selection clause in the Former TOS is inapplicable to the disputes in Ireland and Singapore. In determining the applicability of a forum selection clause, the "outcome depends on the breadth of the language used in the forum selection clause." *Yan Guo v. Kyani, Inc*., 311 F. Supp. 3d 1130, 1139 (C.D. Cal. 2018); *see also LaCross v. Knight Transp., Inc*., 95 F. Supp. 3d 1199, 1207 (C.D. Cal. 2015). Courts will not enforce a forum-selection clause unless the "clause applies to the type of claims asserted in the lawsuit." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 692 (8th Cir. 1997) ("Before a district court can even consider a forum selection clause in its transfer analysis, it first must decide whether the clause applies to the type of claims asserted in the lawsuit."). In making that decision, this Court "must look to the language of the parties' contracts to determine which causes of action are governed by the forum selection clauses." *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998). "If the substance of the claims, stripped of their labels, does not fall within the scope of the forum selection clause, the clause cannot apply." *Chalos & Co., P.C. v. Marine Managers, Ltd*., 2015 WL 5093469, at *4 (E.D. La. Aug. 28, 2015) (cleaned up).

It follows that forum-selection clauses do not apply to all litigation between the parties. *See In re Orange, S.A.*, 818 F.3d 956, 962 (9th Cir. 2016). They apply only to claims that require the interpretation of the agreements, or a determination of whether the parties complied with their terms. *Id.* at 962-63 (plaintiff's non-contractual claims were not subject to the forum selection clause in the parties' non-disclosure agreement because the breach of the covenant of good faith and fair dealing, theft of trade secrets, and unfair competition claims were so factually distinct from the NDA that the forum selection clause could not apply); *see also Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) ("Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract."); *E. & J. Gallo Winery v. Encana Energy Servs., Inc.*, 388 F. Supp. 2d 1148, 1162 (E.D. Cal. 2005).

Accordingly, courts are skeptical that defamation claims—which often have no bearing on any party's contractual performance—fall under forum-selection clauses. *See CZ Servs., Inc. v. Express Scripts Holding Co.*, 2018 WL 3972030, at *2-*3 (N.D. Cal. Aug. 20, 2018) (denying transfer based on forum-selection clause because "[t]he defamation claim . . . and intentional and negligent interference with prospective economic relations [claims] will stand or fall without any reference to the agreements" and "the defamation claims will depend on evidence and proof unrelated to the . . . agreements"); *McMahon v. RMS Electronics, Inc.*, 618 F. Supp. 189, 192 (S.D.N.Y. 1985) (finding that two of plaintiff's three defamation claims concerning his termination were arbitrable because they "necessarily turn[ed] on whether he was terminated with or without cause, an issue which involve[d] an interpretation of the contractual relationship between the parties," but the third defamation claim, based on a statement that he was the company drunk, did "not require reference to the underlying contract" and was not arbitrable).

Similarly, courts find forum-selection clauses inapplicable to tortious-interference claims alleging interference with *other* contracts (as opposed to the contract containing the forum-selection clause). *See BeautiControl, Inc. v. Burditt*, 2001 WL 1149360, at *2 (N.D. Tex. Sept. 26, 2001) ("BeautiControl alleges Burditt's interference with *other* BeautiControl employees' contracts by attempting to recruit them to work for BeautiControl's competitor . . . . The claim is totally unrelated to Burditt's own contract with BeautiControl; thus, the Court cannot hold that Defendant is bound to the forum selection clause in regard to the tortious interference cause of action even if the clause is valid."); *cf. Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) (suggesting that a tortious-interference claim is only governed by a forum-selection clause when an allegedly breached duty arises from the contract with the forum-selection clause).

Precedent from various jurisdictions thus indicates "[t]he determinative question is whether [X's] claims will require the Court or the trier of fact to make any findings about the adequacy of the parties' performance under" X's Former TOS. *CZ Servs.*, 2018 WL 3972030, at *3. X's claims need no such findings. X's claims focus on MMFA's lies about X's platform—not on the parties' relationship as user and provider of the platform. The Former TOS and its forum-selection clause

are thus immaterial to this case. To be sure, in the Amended Complaint filed in the Northern District of Texas, X Corp. describes the steps Hananoki took to generate the results he was looking for. MMFA Ex. 19 ¶ 48-54. But these actions are neither in dispute nor alleged to be wrongful. Rather, as MMFA acknowledges in its motion to transfer in the Texas case, "X alleges in support of each of its three causes of action that [MMFA's] *reporting was false.*" *Id.* (emphasis added); Dvorscak Decl., Ex. 3 at 10 (emphasis added). It is MMFA's false reporting, rather than any wrongdoing on the platform, that forms the basis of X's causes of action.

A review of the parties' submissions and discovery in the Northern District of Texas case bears this out. For the almost year-and-a-half that the parties have been litigating, only a handful of case documents even mention the Former TOS: MMFA's motion to dismiss (in an unsuccessful venue challenge that did not contend that the Former TOS governed the parties' dispute), Dvorscak Decl., Ex. 1; MMFA's Request for Production No. 26 and the related motion to compel, ECF 114 (which demanded evidence of TOS violations by Elon Musk and was the subject of a relevance objection sustained by the Northern District of Texas court; and MMFA's Motion to Transfer currently before the Northern District of Texas. Dvorscak Decl. Ex. 3. So, while MMFA now professes that the Former TOS is intertwined with the merits of this case, its only references in 16 months of active litigation were tangentially in a venue motion and in a request for discovery the Texas court held irrelevant. *See Sims v. Paramount Gold & Silver Corp.*, 2010 WL 5364783, at *7 (D. Ariz. Dec. 21, 2010) (stating that "a defendant should not be able to defeat a plaintiff's otherwise legitimate choice of venue merely by alleging without specificity that the plaintiff's non-contractual claims require interpretation of the contract"). Consideration of the Former TOS has been absent from the merits of this case (and indeed, each of the foreign cases) for over a year; it is not of sudden importance now. Indeed, the Former TOS was of so little importance in the Ireland and Singapore proceedings that MMFA only cited it as general background information—not as substantive support for their forum non conveniens challenges. Byrne Decl. ¶ 31; Yuan Decl. ¶ 24. At most, MMFA invoked their briefing in the Texas case, Yuan Decl. ¶ 24, which likewise did not argue that the case should be transferred because of the forum selection clause.

Nevertheless, MMFA argues *its* performance under the Former TOS is crucial to the case, outlining its plan to show "Defendants' full compliance with X's Terms of Service" as a shield to liability. Dvorscak Decl., Ex. 3 at 11. But X has never maintained that MMFA's manipulation of the platform constituted a violation of the Former TOS or that it was in itself tortious. Rather, MMFA's manipulation was libelous because it was *mischaracterized as organic* in MMFA's defamatory publications. X's position is evidenced by its operative pleadings in Singapore and Ireland. *See* MMFA Ex. 23 ¶ 72 (MMFA falsely claimed that TAPPL "intentionally placed its major clients' advertisements next to antisemitic and/or racist content on the X platform"); MMFA Ex. 25 ¶ 16 ("Media Matters generated a specific, intended result that was not only inorganic, but exceedingly (and demonstrably) rare, all while taking specific steps to obscure this in its article of 16 November 2023.); *id.* ¶ 83 ("The overall effect of the article on advertisers and users was to create the false and misleading perception that these types of pairings were common, widespread, and alarming."). Because these allegations depend on MMFA's false reporting rather than any breach of the Former TOS, the forum-selection clause is inapplicable. *See In re Yahoo! Inc*., 313 F. App'x 722, 723 (5th Cir. 2009) (finding no abuse of discretion in denying transfer when "[t]he claims do not depend on the contractual relationship between" the parties, "do not require interpretation of" the contract, and "involve different operative facts than" a breach of contract suit).[5]

---

[5] In this respect, *Trump v. Twitter, Inc*., on which MMFA relies, is distinguishable. 2021 WL 8202673 (S.D. Fla. Oct. 26, 2021). The facts there centered on claims that Twitter improperly suspended the plaintiffs' accounts based on the plaintiffs' use of the platform and alleged violations of Twitter's TOS. *Id.* at *2. The *Trump* plaintiffs alleged "that Twitter . . . took actions to censor the Plaintiffs' Twitter accounts based on their conservative beliefs." *Id.* The claims therefore required a determination of whether the *Trump* plaintiffs violated the TOS and whether the platform was entitled to suspend the plaintiffs under those same TOS. Rather than suggesting the TOS forum-selection clause should apply here, *Trump* exemplifies a claim entwined with the applicable TOS, thereby justifying application of a forum-selection clause.

G.    **The Parties' Nonsignatory Posture Prevents Reliance on the Clause.**

Reliance on the forum-selection clause is further misplaced because the parties lack the necessary signatory relationship as to the TOS. Neither TIUC nor TAPPL are signatories to the TOS and their lawsuits should not be interfered with based on an agreement to which they are not a party. Plaintiffs make numerous unsupported allegations in an effort to support their argument that TIUC and TAPPL are somehow parties to X Corp.'s contract. All fail.

First, as detailed in Part V. B *supra*, TIUC and TAPPL are not alter egos of X Corp. And second, TIUC and TAPPL are not third-party beneficiaries of either X Corp.'s Former TOS or Current TOS. And the very words of the Former TOS disprove MMFA's claim to the contrary. The Former TOS is clear that it is a contract between X Corp. and the individual user only:

-    "These Terms are an agreement between you and X Corp…." MMFA Ex. 1 at 3.

-    "The laws of the State of California, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us." *Id.* at 10.

-    "The words "we," "us," and "our" mean X Corp." *Id.* at 3.

As written, the Former TOS specify that they do not apply to TIUC or TAPPL. TIUC has its own independent terms separate from X Corp., and the Former TOS applicable to TIUC did not have a forum selection clause. MMFA Ex. 1 at 11. *See Oxysure Sys., Inc. v. Castaldo*, 2016 WL 1031172, at *3 (E.D. Tex. Mar. 15, 2016) (language limited clause); *see also Ball Up, LLC v. Strategic Partners Corp.*, 2018 WL 3673044, at *7 (Tex. App.—Fort Worth Aug. 2, 2018) (same).

Next, contrary to MMFA's allegations, TIUC and TAPPL are not third party beneficiaries to the X Corp. contract. "Courts generally decline to find intended third-party beneficiaries where sophisticated signatories of a contract could have named the party as a beneficiary and did not." *Ruderman v. Rolls Royce Motor Cars, LLC*, 511 F. Supp. 3d 1055, 1059 (C.D. Cal. 2021). Indeed, instead of naming TIUC and TAPPL as parties, the Former TOS excludes them—"These Terms are an agreement between you and X Corp…." MMFA Ex. 1 at 3.

Moreover, MMFA cites a definition of the "X Entities" that includes "affiliates and "related companies," but a definition of a separate term—"X Entities"—does not change the plain language of the Former TOS specifying that the Former TOS is a contract with X Corp. alone, not with all

"X Entities." *Hicks v. Utiliquest LLC*, 736 F. Supp. 3d 849, 859 (E.D. Cal. 2024) (stating "[t]he mere fact that a contract results in benefits to a third party does not render that party a 'third-party beneficiary'" (alteration in original)); *Cummings v. Cenergy Int'l Servs.*, *LLC*, 258 F. Supp. 3d 1097, 1109-10 (E.D. Cal. 2017). Texas law is equally hostile to MMFA's argument.[6]

Finally, MMFA alleges that TIUC and TAPPL are both bound to the forum selection clause under the "closely related" test noted above. Even if that test applies, MMFA is wrong. To bind a non-party to a forum selection clause, the party must be "closely related" to the dispute such that it becomes foreseeable that it will be bound. *See Manetti-Farrow, Inc. v. Gucci Am., Inc*., 858 F.2d 509, 514 n.5 (9th Cir. 1988). Based on the above-quoted language from the Former TOS specifying that the contracting entity is X Corp. only, TIUC and TAPPL could not have foreseen that they were to be bound by the Former TOS. This is especially true for TIUC, who has its own terms of service. MMFA Ex. 1 at 11. The notion that it would be bound to a different entities' terms would not have been foreseeable. Further, MMFA's primary argument is that "both entities assert claims based on Media Matters' use of the platform, which is governed by the TOS." Mot. at 21. As discussed in detail above, X's claims focus on MMFA's lies about the X platform—not the use of platform itself. The Former TOS and its forum selection clause are both immaterial to the case. Under both Irish and Singaporean law, the forum selection clause would not apply to the conduct at issue because their claims "do not allege any breach of the X Terms of Service." Yuan Decl. ¶ 26; *accord* Byrne Decl. ¶ 34 ("[T]he US Terms are of no relevance to TIUC's pleaded claims in the Irish Proceedings, which are grounded in tort, for defamation and malicious falsehood, under Irish law."). Under Texas law, Plaintiffs' argument would fail similarly.[7]

---

[6] In Texas, like in California, a contract may be enforced by a third-party so long as "the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit." *Jody James Farms, JV v. Altman Group, Inc*., 547 S.W.3d 624, 635 (Tex. 2018). Neither general beneficence, nor incidental benefits, establish the necessary intent. *Id*. Because MMFA alleges only that third parties benefit from X Corp., MMFA's argument fails.
[7] A forum selection clause generally may be enforced "only by and against a party to the agreement containing the clause." *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 443 (Tex. 2017). In limited circumstances, agency principles allow an agreement to bind a nonsignatory, including alter ego and third-party beneficiaries. *See id*. at 432 n.3. And some parties who are "closely related to the contractual relationship" may "enforce a valid forum-selection clause even if they are not

H.    **Two of the Plaintiffs in This Action Are Not Parties to the TOS Containing the Forum Selection Clause.**

MMFA relies solely on the contract between Hananoki (as a user of X) and X Corp. through the Former TOS in support of a preliminary injunction. Mot. at 10 ("Media Matters reporter Hananoki agreed to the X TOS."). MMFA explains that "Hananoki created the X account that saw the ad pairings . . . in July of 2020." *Id.* But this case is not brought only by Eric Hananoki; Plaintiffs include Media Matters and Carusone, who are non-parties to Hananoki's user contract with X Corp. Accordingly, Media Matters and Carusone do not have a right to enforce the Former TOS between Hananoki and X Corp. MMFA falsely argues that those two plaintiffs can enforce Hananoki's agreement with X Corp. because they are "closely related" to Hananoki, and are therefore, also bound by the Former TOS. This is MMFA's burden to demonstrate; yet it fails to do so.

Federal courts have held that a non-signatory may avail self of a forum selection clause if he is "closely related" to the agreement such that "the non-signatory's enforcement of the forum selection clause is 'foreseeable.'" *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 898 (N.D. Cal. 2024) (quoting *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013)). Here, MMFA has failed to put forward any evidence that the non-signatories were even aware that the account Hananoki used to conduct his so-called "research" had been set up, much less that Hananoki's enforcement of the forum selection provision years after he created the account was be foreseeable. MMFA, Ex. 13 ¶ 3. *See Howard Lane NE Indus. Owner, LLC v. Civil & Envtl. Consultants, Inc.*, 2024 WL 5100387, at *3 (W.D. Tex. Nov. 21, 2024) ("CEC has provided no 'evidentiary basis' for concluding that . . . Howard Lane was aware of the contract in general or of the forum-selection clause in particular."). Further, it is important that "the non-signatory played an active role in the transaction." *Bent v. Zounds Hearing Franchising, LLC*, No. 15 Civ. 6555, 2016 WL 153092, at *4 (S.D.N.Y. Jan. 12, 2016). Again, MMFA did not present any evidence that MMFA or Carusone were aware of the existence of Hananoki's account when

---

actual signatories to the contract." *Rieder v. Woods*, 603 S.W.3d 86, 98-100 (Tex. 2020). This theory is "rooted in foreseeability." *Id.* at 99. MMFA's theories fail under Texas law as well.

it was first created, which is when he entered into the Former TOS with X Corp., let alone aware of the forum selection provision contained within it at that time. MMFA, Ex. 13 ¶ 3.

MMFA makes much of the relationship between Hananoki, Media Matters, and Carusone noting that Hananoki authored the false articles, MMFA published them, and Carusone amplified them. MMFA's focus on their relationship with respect to the publication of the articles, however, is irrelevant. District courts have emphasized that "the non-signatory's relationship is analyzed via 'their relation to the contract, not by their relation to the party.'" *Baton*, 740 F. Supp. at 898 (quoting *W. Boxed Meats Distributors, Inc. v. Parker*, 2017 WL 3034517, at *6 (W.D. Wash. July 18, 2017)); *see also JH Portfolio Debt Equities, LLC v. Garnet Capital Advisors, LLC*, 2018 WL 6112695, at *5 (C.D. Cal. March 16, 2018). MMFA fail to make any argument regarding the relevant issue, which is the non-signatories' relationship to *Hananoki's contract*. MMFA provides no such evidence. *See Howard Lane*, 2024 WL 5100387, at *3 ("CEC has provided no 'evidentiary basis' for concluding that . . . Howard Lane was aware of the contract in general or of the forum-selection clause in particular."). The only evidence Plaintiffs provide is that Carusone was allegedly aware of the Former TOS and the forum selection clause only after the case had been filed in the Northern District of Texas. MMFA, Ex. 13 ¶ 3. Such evidence is insufficient.

**I.    MMFA Cannot Satisfy Any of the *Unterweser* Factors.**

Because the forum selection clause in X Corp.'s Former TOS does not cover the claims that X Corp. has brought in the Northern District of Texas, that TIUC has brought in Ireland, or that TAPPL has brought in Singapore, the Court's antisuit injunction analysis can and should end there. But to the extent the Court concludes otherwise, MMFA also failed to satisfy any of the four *Unterweser* factors, including "whether the foreign litigation would (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) where the proceedings prejudice other equitable considerations. *Microsoft*, 696 F.3d at 881-82 (cleaned up). MMFA does not assert that the third factor applies. Mot. 22. MMFA is incorrect as to the others.

As to the first *Unterweser* factor, MMFA makes no argument that the foreign litigation

would frustrate this forum's policies other than the purported existence of a valid forum selection clause between the parties. For the reasons explained above in Part 1 *supra*, this is wrong, and the forum selection clause is inapplicable. Because there is no valid forum selection clause covering the conduct that TIUC and TAPPL have sued over in the foreign proceedings, and because TIUC and TAPPL could in any event have raised that defense in the Irish and Singaporean proceedings last year but failed to do so, there is nothing in those cases that frustrates this forum's policy.

MMFA's arguments on the second and fourth factors (at 22-24) blur together. MMFA insists that it would be unfair and costly for it to defend multiple suits. But the fact that MMFA is facing foreign lawsuits is a direct result of its own conduct, which inflicted significant damage in jurisdictions other than the United States. TIUC pleaded, for example, that "a number of Twitter International's advertisers pulled, paused or indicated that they were considering pulling their forecast advertisements from X." MMFA Ex. 21 ¶ 28. Unsurprisingly, TIUC suffered "very significant loss of advertising revenue." *Id.* ¶ 29. The same was true for TAPPL: it "suffered serious losses and injury to its business reputation." MMFA Ex. 23 ¶ 23. For instance, on November 17, 2023, Apple "informed TAPPL that it would cease/pause its global advertising on the X Platform. Insofar as that advertising would otherwise have been purchased by Apple's affiliates in the Asia Pacific region, this caused TAPPL to suffer loss and damage in Singapore." *Id.* ¶ 43. MMFA cites to no authority, and Defendants are unaware of any, that a party cannot sue where it suffered harm just because a related party suffered similar harm in a different jurisdiction.

On that score, MMFA insists that the foreign cases are vexatious because they arise over "exactly the same conduct" that X has sued over in the Northern District of Texas. Mot. 22. Each suit does allege that MMFA's November articles were false and defamatory. But the claims that TIUC and TAPPL brought are unique to the harm they have suffered for the specific advertisers who paused spending in their respective regions after the articles were published. MMFA chides TIUC and TAP for refusing MMFA's offer to join the Texas litigation to assert these claims, Mot. 24, but a plaintiff is generally entitled to choose his own venue, and in any event, it is unclear that any court in the United States could even hear TIUC's and TAP's claims on the merits.

MMFA crafts a narrative that the only purpose of these suits is for harassment. Mot. 23-24. But TIUC and TAPPL maintain that they have instituted their suits in good faith, *see Ensambles Hyson, S.A. de C.V. v. Sanchez*, 736 F. Supp. 3d 871, 892 (S.D. Cal. 2024), and nothing in this record contains evidence to refute that. The allegations in TIUC's and TAPPL's lawsuits are detailed and damning. They include claims for quantifiable damages to crucial business operations. *E.g.*, MMFA Ex. 21 ¶ 28; MMFA Ex. 23 ¶ 23. By contrast, MMFA attaches no evidence—only rank speculation—that the suits were brought at Elon Musk's personal behest or for any purpose other than recovering its economic costs from MMFA's long-running defamation campaign.

Almost as an aside, MMFA asserts (at 23-24) that "other equitable considerations" favor the issuance of an antisuit injunction. This contention falters because TIUC and TAPPL pursued their claims "well before" MMFA sought to have them enjoined in this court. *Sanchez*, 736 F. Supp. 3d at 891. "Thus, this action is not like other cases where the foreign litigation was filed after the original lawsuit was brought in a court in the United States which raises the specter of forum-shopping and/or vexatious litigation." *Id.* (citation omitted). If anything, it would be inequitable for a court to endorse MMFA's attempt to hedge its bets by fighting jurisdiction in Ireland and Singapore only to ask a court unfamiliar with the parties' dispute to enjoin those very proceedings at the eleventh hour. MMFA will not suffer prejudice by litigating to conclusion the jurisdictional attacks that it has insisted upon from the outset of the cases in Ireland and Singapore.

## J.    Enjoining Ireland and Singapore Cases Harms Comity Principles.

Finally, MMFA grossly underplays the effect the requested injunction will have on comity principles. Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Andina Licores S.A.*, 446 F.3d at 994. Courts evaluate "to what extent international comity would be impinged upon by an anti-suit injunction under the particular circumstances. The order in which the domestic and foreign suits were filed, although not dispositive, may be relevant to this determination depending on the particular circumstances." *Microsoft*, 696 F.3d at 887.

24

Ireland and Singapore courts are well-equipped to hear MMFA's venue arguments. Those courts have already allowed extensive briefing and expert submissions to aid in the resolution of those issues. MMFA does not even hint that those tribunals are biased or unable to resolve threshold jurisdictional questions. Indeed, many courts have noted that these courts are adequate alternative forums to hear a variety of claims. *See Mayhem Crude, Inc. v. Borrelli Walsh Pte. Ltd.*, 445 F. Supp. 3d 337, 345 (N.D. Cal. 2020) (Singapore); *In re Banco Santander Securities-Optimal Litig.*, 732 F. Supp. 2d 1305, 1333 n.16 (S.D. Fla. 2010) (Ireland). Under these circumstances—especially in the light of MMFA's extensive litigation conduct already in those forums—it would be improper to strip the Ireland and Singapore courts of their authority to resolve MMFA's pending motions. *See Sanchez*, 736 F. Supp. 3d at 893. To that end, MMFA's invocation of the upcoming hearing in Singapore hurts its cause more than it helps; it is a hearing that MMFA sought to address its forum non conveniens argument, and it comes *after* the expenditure of significant resources from both parties to present those issues for the court's consideration.

This is especially true because MMFA had never asserted to those courts that the parties contracted to resolve TIUC's and TAPPL's claims in this court. Those courts cannot be faulted for failing to consider an argument that MMFA never raised. MMFA has essentially filed a preemptive appeal in this Court if the Ireland or Singapore courts reach an unfavorable conclusion. Comity between co-equal courts in the United States does not allow for such gamesmanship. *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180-81 (4th Cir. 1974). The same notions of respect and comity likewise prohibit MMFA from its brazen effort to interfere in the affairs of two foreign tribunals. Texas law is similarly respectful of comity principles.[8]

## CONCLUSION

The motion for preliminary injunction should be denied.

---

[8] Texas law will not presume that other courts are incompetent to hear disputes or decide what law applies. *E.g.*, *In re AutoNation, Inc.*, 228 S.W.3d 663, 670 (Tex. 2007); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 793 (Tex. 2005).

Dated: March 25, 2025.                    Respectfully submitted,

                                          _/s/_ Bradley A. Benbrook
                                          Bradley A. Benbrook
                                            SBN 177786
                                          Stephen M. Duvernay
                                            SBN 250957
                                          **BENBROOK LAW GROUP, PC**
                                          701 University Avenue, Suite 106
                                          Sacramento, CA 95825
                                          Telephone: (916) 447-4900
                                          brad@benbrooklawgroup.com

                                          **STONE HILTON PLLC**
                                          Judd E. Stone II *
                                          Christopher D. Hilton *
                                          Ari Cuenin *
                                          Michael R. Abrams *
                                          Elizabeth Brown Fore *
                                          Alexander M. Dvorscak *
                                          600 Congress Ave.
                                          Suite 2350
                                          Austin, TX 78701
                                          Telephone: (737) 465-7248
                                          judd@stonehilton.com
                                          chris@stonehilton.com
                                          ari@stonehilton.com
                                          michael@stonehilton.com
                                          elizabeth@stonehilton.com
                                          alex@stonehilton.com
                                          * *Pro hac vice* pending

                                          *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel for record on March 25, 2025, via the Court's CM/ECF system.

                                          _/s/ Stephen M. Duvernay_
                                          Stephen M. Duvernay