JUSTIN A. NELSON (TX SBN 24034766)
jnelson@susmangodfrey.com
MATTHEW BEHNCKE (TX SBN 24069355)
mbehncke@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

KATHERINE M. PEASLEE (CA SBN 310298)
kpeaslee@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (713) 516-3883

AMANDA BONN (CA SBN 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiff Media Matters for America*
*(Additional parties and counsel listed with signature)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MEDIA MATTERS FOR AMERICA, ANGELO CARUSONE, and ERIC HANANOKI<br><br>Plaintiffs,<br><br>vs.<br><br>X CORP., TWITTER INTERNATIONAL UNLIMITED CO., and TWITTER ASIA PACIFIC PTE. LTD.<br><br>Defendants. | Case No. 3:25-cv-02397-VC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date      April 9, 2025<br>Time:     2:00 PM<br>Place:    Courtroom 4 – 17th Floor<br>            450 Golden Gate Avenue,<br>            San Francisco, CA 94102<br>Judge:   Hon. Vince Chhabria |

**TABLE OF CONTENTS**

I.     Plaintiffs correctly filed suit in this District per the relevant Terms (Arg. A). ..................... 1

II.    The Court has subject matter jurisdiction over Plaintiffs' claims (Arg. D). ........................ 2

III.   Plaintiffs have not waived their venue objection based on the Terms (Arg E). ................... 3

IV.    The forum selection clause governs TIUC and TAP's claims (Arg. F). .............................. 4

V.     The forum selection clause binds TIUC and TAP (Arg. G). ............................................... 6

VI.    Personal jurisdiction and venue exist under the forum selection clause (Args. B, C). ........................................................................................................................ 8

VII.   Media Matters can enforce the forum selection clause (Arg H). ......................................... 9

VIII.  MMFA's claims satisfy the *Unterweser* factors and do not impact comity (Args. I, J). ........................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Baton v. Ledger SAS*,
    2025 WL 416360 (N.D. Cal. Feb. 6, 2025) ................................................................................4

*Bent v. Zounds Hearing Franchising, LLC*,
    2016 WL 153092 (S.D.N.Y. Jan. 12, 2016) ..............................................................................10

*Binns v. Am. Gen. Life & Accident Ins. Co.*,
    2023 WL 5125042 (9th Cir. Aug. 10, 2023) ...............................................................................3

*Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*,
    622 F.3d 996 (9th Cir. 2010) ......................................................................................................3

*Chan v. Soc'y Expeditions, Inc.*,
    39 F.3d 1398 (9th Cir. 1994) ......................................................................................................9

*Cisco Sys., Inc. v. GTEC*,
    2011 WL 13253336 (N.D. Cal. Sept. 27, 2011) .........................................................................2

*Cummings v. Cenergy Int'l Servs., LLC*,
    258 F. Supp. 3d 1097 (E.D. Cal. 2017) ......................................................................................6

*CZ Services, Inc. v. Express Scripts Holding Co.*,
    2018 WL 3972030 (N.D. Cal. Aug. 20, 2018) ...........................................................................6

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) ....................................................................................................1

*E. & J. Gallo Winery v. Andina Licores S.A.*,
    446 F.3d 984 (9th Cir. 2006) ...............................................................................................4, 10

*Ene v. Graham*,
    546 P.3d 1232 (Nev. 2024) ........................................................................................................8

*Hamilton v. State Farm Fire & Cas. Co.*,
    270 F.3d 778 (9th Cir. 2001) ......................................................................................................5

*HDOS Franchise Brands, LLC v. El Paso Hot Dog, LLC*,
    2021 WL 5629923 (S.D. Cal. June 29, 2021) ............................................................................9

*Hicks v. Utiliquest LLC*,
    736 F. Supp. 3d 849 (E.D. Cal. 2024) ........................................................................................6

*Jones v. Gamboa*,
    2024 WL 5239892 (N.D. Cal. Dec. 27, 2024) ..................................................................6

*Lipshie v. Tracy Inv. Co.*,
    566 P.2d 819 (Nev. 1977) ................................................................................................8

*Lockheed Martin Corp. v. Aceworld Holdings Pty Ltd.*,
    2019 WL 3767553 (N.D. Cal. Aug. 9, 2019) ................................................................10

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) .............................................................................................................2

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
    858 F.2d 509 (9th Cir. 1988) ...........................................................................................6

*Marshall v. Ameriprise Fin. Servs.*,
    735 F. Supp. 3d 1229 (E.D. Cal. 2024) ...........................................................................3

*McMahon v. RMS Electronics*,
    618 F. Supp. 189 (S.D.N.Y. 1985) ..................................................................................6

*Media Matters for Am. v. Bailey*,
    2024 WL 3924573 (D.D.C. Aug. 23, 2024) ....................................................................5

*Naffe v. Frey*,
    789 F.3d 1030 (9th Cir. 2015) .........................................................................................3

*In re Orange, S.A.*,
    818 F.3d 956 (9th Cir. 2016) ...........................................................................................6

*Perry v. AT&T Mobility LLC*,
    2011 WL 4080625 (N.D. Cal. Sept. 12, 2011) ................................................................6

*Se. Power Group, Inc. v. Vision 33, Inc.*,
    2021 WL 1818949 (11th Cir. May 6, 2021) ....................................................................4

*Terracom v. Valley Nat. Bank*,
    49 F.3d 555 (9th Cir. 1995) .............................................................................................8

*In re Yahoo! Inc.*,
    313 F. App'x 722 (5th Cir. 2009) ....................................................................................6

**Other Authorities**

14D FED. PRAC. & PROC. JURIS. § 3803.1 (4th ed.) ...................................................................2

Nothing in Defendants' (collectively, "X") Response warrants denying injunctive relief.

**I.       Plaintiffs correctly filed suit in this District per the relevant Terms (Arg. A).**

The Terms operative when X filed its abusive lawsuits apply here for at least three reasons.

*First*, as X itself has argued, the Terms in place at the time of the alleged conduct—here, X's filing of suits against Plaintiffs—necessarily govern where a party brings claims based on that conduct. Here, the relevant conduct occurred in November 2023 when Media Matters published its articles and in the subsequent months when X filed its series of lawsuits, thereby breaching the contract in force at the time mandating that this Court be the forum for all disputes "related to" X's Terms or Services. As X concedes, the Terms did not change until November 2024, well after these breaches. In *Boose v. Musk*, Case No. 24-cv-05650 (N.D. Ga.), X currently has a motion pending to transfer the case from the Northern District of Georgia *to this District* based on the forum selection clause in its prior Terms. Peaslee Decl. Ex. 1. X's motion there argues that the "Court should transfer this action to the Northern District of California pursuant to the version of X Corp.'s Terms of Service to which Plaintiff agreed when he created and used his X account ('Governing Terms')." *Id*. at 1. X's motion acknowledges that its terms have changed, *id*. at 1 [sic] n.1, and Boose accepted those new terms because he continued to use his account, *see* https://x.com/ecb4000/status/1892210828050407563 (Boose X post dated 2/19/25). X's *Boose* motion argues that the "Governing Terms" are those in place when relevant conduct occurred—here, X's filing of suits against Media Matters—regardless of subsequent changes. That is correct.

*Second*, the language of the forum selection clause ("FSC") itself requires that if a dispute concerns a specific version of the Terms, the FSC in that particular version governs. The FSC that Plaintiffs are suing to enforce requires that "[a]ll disputes related to *these Terms*" must be litigated in California, and "these Terms" necessarily refers to the Terms containing the FSC in question—*i.e*., those existing at the time. ECF 16-2 at 10 (emphasis added). The language is not ambiguous. And even if it were, the Terms are a form contract drafted by X and must be construed against the drafter. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1224 (9th Cir. 2015) (rule that ambiguous contract terms are construed against the drafter applies "with peculiar force" to form contracts).

X does not contest that the relevant version of the Terms for determining whether X breached its contract is the version operative at the time it filed its lawsuits (that is, the version requiring venue in California). X could not argue otherwise, as the Terms on their face state that "changes will not be retroactive," ECF 16-2 at 10, (as illustrated by X's transfer motion in *Boose*, cited *supra*). Because Plaintiffs are suing for breach of ***those*** Terms, they must do so in California.

<u>Third</u>, even if X's amended terms could govern Plaintiffs' suit for breach of the prior Terms, the amended FSC is not enforceable as to Plaintiffs. While forum selection clauses are presumptively enforceable, that presumption may be overcome by a clear showing that the clause is "'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Courts consider, among other things, whether the inclusion of the clause was the product of overreaching. *Id.* at 12–13. However, "there is no precise formula" and "a judge must view the totality of circumstances in the case at hand." 14D FED. PRAC. & PROC. JURIS. § 3803.1 (4th ed.). X's new FSC is the product of overreaching, at least as applied to Plaintiffs, and is unreasonable under the circumstances. The Terms state that continued use of the X Platform constitutes consent to amendments. ECF 16-2 at 10. However, X amended the FSC in the middle of its own lawsuit against Plaintiffs over their use of the Platform. As part of that suit, Plaintiffs are *required* to maintain their X accounts, as deleting them could result in spoliation accusations. They must also *use* their X accounts in order to defend themselves: X's suits are premised on the notion that the ad/content pairings Plaintiffs saw are exceedingly rare. Testing that requires searching content on the Platform—which requires logging in to an account. Plaintiffs thus had no choice but to "accept" X's amendment to its Terms if they wanted to participate in their own defense in the lawsuits X filed against them. Enforcement of the amendment is unreasonable under the circumstances.

## II.     The Court has subject matter jurisdiction over Plaintiffs' claims (Arg. D).

Plaintiffs' claims satisfy the amount in controversy requirement for diversity jurisdiction in two separate ways. <u>First</u>, Plaintiffs seek to enjoin lawsuits wrongfully filed by TIUC and TAP in which those entities claim millions of dollars in damages from Media Matters, placing those multi-million-dollar damages in controversy here. *Cisco Sys., Inc. v. GTEC*, 2011 WL 13253336,

at *2 (N.D. Cal. Sept. 27, 2011); *see* ECF 1, ¶24. X does not address this at all.

*Second*, as noted in Plaintiffs' Complaint, the purported liability limitation in the Terms is not enforceable because it limits a user to $100 in damages while allowing X to sue the user for millions of dollars—exactly as it has done here. ECF 1, ¶24 n.9. If the limitation were applied to the present circumstances, Plaintiffs would be denied any possible remedy for the millions of dollars in costs and attorneys' fees they have incurred as a consequence of X's breach of its own Terms. *Marshall v. Ameriprise Fin. Servs.*, 735 F. Supp. 3d 1229, 1245 (E.D. Cal. 2024) (holding one-sided damages limitation unconscionable and citing cases in which "one-sided limitations on recovery" for non-statutory claims rendered an agreement substantively unconscionable).[1] The unenforceable damages limitation in the Terms should be severed pursuant to the Terms' severance clause. ECF 16-2 at 11. Once again, X does not address unenforceability.[2]

### III.    Plaintiffs have not waived their venue objection based on the Terms (Arg E).

Plaintiffs' present motion seeks to enjoin only X's actions in Singapore and Ireland. Accordingly, X's (incorrect) arguments in its Response referencing Plaintiffs' supposed waiver in the Northern District of Texas and/or Fifth Circuit have no bearing on whether Plaintiffs can invoke the FSC with respect to X's separate foreign proceedings. *See* ECF 28 at 2 (this Court's Order holding that waiver in Texas is for the Texas court to decide, but that Plaintiffs' "separate preliminary injunction motion" to enjoin the foreign actions may proceed).

Turning to those foreign actions, X states that "Plaintiffs have fully briefed forum non conveniens challenges in Ireland and Singapore." Opp. 14. This is incorrect. Plaintiffs have not yet submitted their legal argument briefs (known as legal or written submissions) on the issue in either case. Ahmed Decl. ¶3. Rather, those jurisdictions require parties to submit underlying factual

---

[1] As an adhesion contract, the Terms have at least some degree of procedural unconscionability. *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010).
[2] The cases cited by X do not discuss similar circumstance. In *Binns v. Am. Gen. Life & Accident Ins. Co.*, 2023 WL 5125042, (9th Cir. Aug. 10, 2023), the plaintiff offered no argument for how his insurance claim could exceed the benefit limitation in the contract; and in *Naffe v. Frey*, 789 F.3d 1030 (9th Cir. 2015), the plaintiff satisfied the amount in controversy.

affidavit and expert evidence in advance of legal arguments. *Id*. That evidence is all the parties have filed, *id*.—and, as X concedes, Plaintiffs' factual submissions reference the FSC. ECF 40-8, ¶24; Opp. 7. Plaintiffs' brief setting forth its legal arguments will be filed on April 7 in Singapore; a deadline has not yet been set in Ireland. Ahmed Decl. ¶4.

Regardless, X has cited no case to support the proposition that a party must first ask a foreign (*i.e*., non-U.S.) court to enforce a forum selection clause in order to preserve its ability to seek enforcement in a designated United States forum. Nor does X respond to *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984 (9th Cir. 2006), which rejected as "erroneous" the district court's view that Gallo should have petitioned the foreign court for a change of venue rather than seeking injunctive relief—a foreign court cannot simply transfer a case to a designated United States court. *Gallo*, 446 F.3d at 993. Thus, the appropriate way to enforce a forum selection clause vis-à-vis improperly filed foreign litigation is through an antisuit injunction. *Id*. X ignores this.

Plaintiffs have objected from the get-go to both jurisdiction and venue in X's foreign actions—as X concedes. Opp. 5–6. Plaintiffs certainly have not demonstrated the necessary "clear intent to waive" their objections to litigating in those forums. X cites only one case, *Se. Power Group, Inc. v. Vision 33, Inc.*, 2021 WL 1818949 (11th Cir. May 6, 2021), in which the court found waiver of a forum selection clause. And unlike the defendant there, Plaintiffs have sought no affirmative relief in the foreign suits beyond teeing up their jurisdictional dispute. In another of X's cases, *Baton v. Ledger SAS*, 2025 WL 416360, at *7 (N.D. Cal. Feb. 6, 2025), the court found reliance on a forum selection clause was ***not*** waived where the party had "participated in only one round of motion to dismiss briefing"—which is more than has occurred in the foreign actions.

Finally, X's purported prejudice concerns are baseless. X ignores that the foreign actions have not proceeded to the merits, no discovery has occurred, and the foreign courts have not yet even heard Media Matters' threshold jurisdictional challenges. Ahmed Decl. ¶4.

## IV.   The forum selection clause governs TIUC and TAP's claims (Arg. F).

X's assertion that because its allegations "depend on MMFA's [allegedly] false reporting rather than any breach of the Former TOS, the forum-selection clause is inapplicable" ignores the

plain language of the clause, which broadly covers disputes "related to . . . the Services" and mischaracterizes the law regarding the scope of such clauses. Opp. 18. X's assertion that Plaintiffs' use of the X Platform (*i.e.*, of "the Services") is not disputed or at issue is flat wrong. X does not dispute that the ad/content pairings in the November 16 article actually appeared on the MMFA account. *See, e.g.*, ECF 16-20, ¶54. Indeed, as another court found, "[i]n its public response to Hananoki's article, X did not deny that advertising in fact had appeared next to the extremist posts on the day in question" and thus "Plaintiffs have likely shown that their reporting was not defamatory and therefore was protected speech." *Media Matters for Am. v. Bailey*, 2024 WL 3924573, at *10 (D.D.C. Aug. 23, 2024). Instead, X's claims require finding Plaintiffs' *particular use* of the Services was so "manipulative" that Plaintiffs' truthful reporting on that (entirely permissible, Opp. 17) use was defamatory. X cannot prove its claims without proving its version of the facts regarding Plaintiffs' use of the Services. X's claims necessarily "relate to" the Services.

X's assertion that forum selection clauses "apply only to claims that require the interpretation of the agreements, or a determination of whether the parties complied with their terms" is wrong, Opp. 15—and judicially estopped by its own prior contrary argument. In *Hart v. Facebook*, Twitter argued its FSC "is broad—it applies to any and all disputes that 'relate'" to "Twitter's Services"; that "All that is required is 'some 'logical or causal connection' between the claim and Twitter's . . .Services," Peaslee Decl. Ex. 2 at 7; and that the "dispute at issue 'need not grow out of the contract or require interpretation of the contract' to be within the purview of the [FSC]," Peaslee Decl. Ex. 3 at 7–8 (citations omitted); *see id*. at 12–13. The court adopted Twitter's argument and granted transfer. Peaslee Decl. Ex. 4 at 6–7. Having argued and won on the point that a claim falls within the scope of its FSC so long as a claim has "some logical" connection to the Services and need not "require interpretation of the contract," X cannot advance a different reading now. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).

As X concedes, the language of a forum selection clause determines its scope. *Id*. The FSC here applies not only to disputes "related to" the Terms, but also those "related to" the "Services." Under X's view, the FSC only applies to disputes "related to" the Terms (as any claim requiring

interpretation of the Terms would be), improperly rendering the additional words "or the Services" superfluous. *Jones v. Gamboa*, 2024 WL 5239892, at *2 (N.D. Cal. Dec. 27, 2024) (courts "avoid interpretations that render any portion superfluous, void or inexplicable" (citation omitted)).

None of the cases cited by X stand for its sweeping declaration regarding the narrow application of forum selection clauses. In *In re Orange, S.A.*, 818 F.3d 956 (9th Cir. 2016), the clause itself specified that it only governed claims "arising out of or relating to ***the Agreement***." *Id*. at 962 (emphasis added). The same was true in each of *CZ Services, Inc. v. Express Scripts Holding Co.*, 2018 WL 3972030, at *2 (N.D. Cal. Aug. 20, 2018) (clause covered disputes "arising out of or related in any way to ***the interpretation or performance of the Agreement***"); *In re Yahoo! Inc.*, 313 F. App'x 722, 723 (5th Cir. 2009) (clause covered "any dispute relating" to "***[t]he terms of the Agreement***"); and *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (clause covered disputes regarding interpretation or fulfillment "***of the contract***") (emphases added). In *McMahon v. RMS Electronics*, 618 F. Supp. 189, 192 (S.D.N.Y. 1985), the clause covered disputes "arising out of the employment or termination of employment," and that language—not some categorical rule—dictated whether a claim fell within its scope. And X does not respond to *Perry v. AT&T Mobility LLC*, 2011 WL 4080625 (N.D. Cal. Sept. 12, 2011), which rejects the argument X makes here regarding the supposed limitation of forum selection clauses to only those claims "relating to the interpretation and performance of the contract itself." *Id*. at *4.

## V.     The forum selection clause binds TIUC and TAP (Arg. G).

TIUC and TAP are bound by the Terms in three ways: as third-party beneficiaries, because they are "closely related" the contract, and as alter egos of X. X's contrary arguments fail.

<u>Third Party Beneficiary</u>. The notion that X "could have named" TIUC and TAP as beneficiaries "and did not" ignores the express benefits conferred on the "X Entities"—which X does not dispute includes TIUC and TAP. Opp. 19 (citation omitted). X's cited cases highlight TIUC and TAP's third-party beneficiary status. In *Cummings v. Cenergy Int'l Servs., LLC*, 258 F. Supp. 3d 1097, 1109–10 (E.D. Cal. 2017), the contract contained no provision indicating intent to benefit the non-signatories at issue. And in *Hicks v. Utiliquest LLC*, 736 F. Supp. 3d 849, 859

(E.D. Cal. 2024), the court found the non-signatory parent company *was* a third-party beneficiary because the agreement expressly benefitted the Company's "parents."

<u>Closely Related</u>. X has again itself argued—and won—on the point that claims against non-signatories far more removed than TIUC and TAP are governed by its term: It successfully argued that the FSC applies even as to claims against non-signatory government officials who allegedly "acted jointly" with X. *See* Peaslee Decl. Ex. 2 at 7–8, Ex. 4 at 7. X misleadingly claims that "TIUC has its own independent terms separate from X Corp.," as supposed proof that TIUC could not foresee being bound by the X Terms. Opp. 19. But the terms X is referring to do not apply to U.S.-based users (such as Plaintiffs). ECF 16-2 at 11. Contrary to X's implication, there is no "separate" set of terms governing the relationship between U.S.-based users and TIUC (or TAP). The X Terms state in bolded text, "If you live outside the European Union. . . including if you live in the United States" that "These [Terms] govern your access to and use of the services"— which are the very same services TIUC and TAP represent in their respective regions. *Id*. Thus, if either foreign entity wanted to assert that a U.S.-based user misused the services in violation of the Terms (as another X Entity, Twitter UK, in fact did in its demand letter to Plaintiffs, ECF 1-7, ¶13), their ***sole*** recourse would be to enforce the X Terms. This confirms that TIUC and TAP are "closely related" to the contract. Finally, X's contention that under Singapore and Ireland law the FSC would not apply to tort claims has nothing to do with whether TIUC and TAP are "closely related" to the contractual relationship. Opp. 20. They are—which means that the California choice of law provision governs. Additionally, X's self-serving characterizations of Singapore and Ireland law should be given no weight: They are unsupported assertions made in attorney affidavits citing no case law at all. ECF 40-8, ¶26; ECF 40-9, ¶34. Plaintiffs respectfully request the opportunity to brief the foreign law issues if the Court deems them relevant. However, they are not. Even were X's unsupported assertions accurate, X could not get around the terms of its own agreement by filing in a jurisdiction with laws that differ from those of the contracted-for forum.

<u>Alter Ego</u>. X does not dispute that a party's alter ego is bound by that party's contracts, nor does it challenge Plaintiffs' public evidence of a unity of interest and ownership, including their

own claims of being "synonymous" with X Corp., such that treating the X Entities as separate for the purposes of X's lawsuits would work an injustice. *See* Mot. 18–20. Rather X argues that the foreign entities supposedly lost "distinct advertising revenue" (despite undisputed public documents suggesting those entities' revenue could be recovered by X Corp., Mot. 18), and claims that in order to plead alter ego, Plaintiffs had to "offer evidence of commingling of funds or other disregard of legal formalities." Opp. 12. But X ignores—and thus does not refute—Plaintiffs' public evidence showing *exactly* such a disregard of corporate formalities. Namely, Musk's unitary control of the X Entities and his direction of their worldwide attack on Media Matters. Mot. 18–20. To the extent "evidence of comingling of funds" is needed, Plaintiffs could only obtain that via discovery. Contrary to X's assertion, Plaintiffs have not waived the opportunity to take discovery into alter ego status: While arguments raised solely in footnotes may be waived, Plaintiffs' alter ego argument is made in the body of its brief. *See id*. And *Terracom v. Valley Nat. Bank*, 49 F.3d 555 (9th Cir. 1995), cited by X, underscores that such discovery would be warranted: The Ninth Circuit there found no discovery necessary where a claim of jurisdiction was "based on bare allegations in the face of specific denials made by defendants." *Id*. at 562. Here, by contrast, X does not address at all Plaintiffs' allegations regarding Musk's control, which are well supported by public reporting attached to Plaintiffs' motion and by Musk's own public statements.

Whether Nevada or California law applies makes no difference: X concedes that under Nevada law, "failure to observe corporate formalities" supports finding alter ego, as does "treatment of corporate assets as [an] individual's own"—as Musk seems to have done with TIUC and TAP's litigation efforts. Opp. 11. X's own Nevada caselaw sets forth a standard substantively the same as that in California, requiring "unity of interest and ownership" and facts "such that adherence to the fiction of separate entity would, under the circumstances," "promote injustice" *Lipshie v. Tracy Inv. Co*., 566 P.2d 819, 823 (Nev. 1977)—as is the case here. *See* Mot. 18–20; *Ene v. Graham*, 546 P.3d 1232, 1236 (Nev. 2024) (the "essence" of the alter ego doctrine "is to do justice whenever it appears that the protections provided by the corporate form are being abused").

**VI.    Personal jurisdiction and venue exist under the forum selection clause (Args. B, C).**

A party bound by a forum selection clause waives objections to both personal jurisdiction and venue. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1406 (9th Cir. 1994) (if a non-signatory is bound by a contract, the forum selection clause waives their objection to personal jurisdiction); *HDOS Franchise Brands, LLC v. El Paso Hot Dog, LLC*, 2021 WL 5629923, at *3–5 (S.D. Cal. June 29, 2021) (an enforceable forum selection clause waives objections to personal jurisdiction and venue). X does not offer any argument or caselaw to the contrary—none of the cases it cites regarding personal jurisdiction address forum selection clauses at all. Because TIUC and TAP are bound by the contract, *see supra*, the Court has personal jurisdiction and venue is proper here.

## VII.    Media Matters can enforce the forum selection clause (Arg H).

X's foreign lawsuits are solely against Media Matters. Thus, for the purpose of enjoining those suits, whether Carusone can enforce the Terms is irrelevant. Regardless, all Plaintiffs can.

Media Matters is "closely related" to the relationship between Hananoki and X such that it is foreseeable it would enforce the FSC (as Plaintiffs' opening brief explains, Mot. 17). Hananoki created and used the account—during which process he had to accept the Terms—solely for his work for Media Matters. ECF 16-15, ¶¶6–7. As X highlights, Media Matters has its own currently-active X account—and has since 2008, *see* https://x.com/mmfa—so it necessarily was aware that every user accepts the X Terms and must acknowledge modifications. *See* ECF 40-10, ¶¶3–7.

Carusone is similarly "closely related" to Hananoki's relationship with X. Carusone himself has had an account since 2009, *see* https://x.com/GoAngelo, and therefore likewise knew of the Terms all users must accept. *See* ECF 40-10, ¶¶3–7. And, contrary to X's claim that it sued Carusone on November 20, 2023 (Opp. 1), X did not do so until February 27, 2024. *See* ECF 1-5. The evidence thus confirms that Carusone was specifically aware of the FSC before X filed its claims against him in Texas, Opp. 22 (citing evidence of Carusone's awareness as of at least November 26, 2023)—and before X filed the foreign claims against Media Matters (of which Carusone is President and to which his knowledge is imputed) that are actually at issue here. It is entirely foreseeable that *all* Plaintiffs would seek to enforce that clause.

X's assertion that "MMFA has failed to put forward any evidence that the non-signatories

were even aware that the account Hananoki used to conduct his so-called 'research' had been set up" defies explanation for an additional reason, Opp. 21: X's theory of liability requires that Hananoki created a "secret" account with atypical parameters and used it in such a wildly unusual manner that his truthful reporting on that use was defamatory. The only way Media Matters or Carusone could be liable for defamation under X's theory would be if they ***knew*** of the specific "account Hananoki used to conduct his so-called 'research'" and of the nature of his alleged use. Allowing X to implead Media Matters and Carusone based on their purported knowledge of Hananoki's alleged use of his "secret account" but prohibiting them from enforcing the Terms *governing that use,* would be an absurd result and is not supported by any of X's cited cases.[3]

**VIII.   MMFA's claims satisfy the *Unterweser* factors and do not impact comity (Args. I, J).**

<u>First</u>, X's brief ignores Plaintiffs' caselaw holding that where a forum selection clause specifies venue in a U.S. forum, comity is not offended by its enforcement. *See* Mot. 25. And the foreign actions have not yet resolved threshold jurisdictional issues, let alone proceeded to the merits. *Supra*, §III. <u>Second</u>, X does not dispute that the need to enforce a valid forum selection clause fully satisfies the *Unterweser* factors—it simply denies the FSC applies. Opp. 22. <u>Third</u>, if more were necessary, X ignores the public evidence of personal animus driving its suits, which echo X's past attempts to stifle speech its chairman dislikes. X does not deny that X Corp. itself could recover global damages for injuries purportedly suffered abroad if TIUC and TAP opted not to refile in the U.S. And the fact that the foreign suits were filed before Plaintiffs sought to enjoin them represents the normal order of events. *See Lockheed Martin Corp. v. Aceworld Holdings Pty Ltd.*, 2019 WL 3767553, at *3 (N.D. Cal. Aug. 9, 2019); *Gallo*, 446 F.3d at 994; Mot. at 25. Of course, Plaintiffs seek to enjoin prospective foreign suits as well—relief that X does not address at all, and which is also permissible. *Lockheed*, 2019 WL 3767553, at *4.

---

[3] X's citation to *Bent v. Zounds Hearing Franchising, LLC*, 2016 WL 153092, at *4 (S.D.N.Y. Jan. 12, 2016) for the requirement that "the nonsignatory played an active role in the transaction" misreads that case. Although that is a common circumstance, it is not a required one—and, in any event, it is satisfied here given Media Matters' and Carusone's alleged close involvement in Hananoki's use of the Services—that is, the "transaction" governed by the contract.

Dated: April 1, 2025

By: */s/ Justin A. Nelson*
JUSTIN A. NELSON* (TX SBN 24034766)
jnelson@susmangodfrey.com
MATTHEW BEHNCKE* (TX SBN 24069355)
mbehncke@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

KATHERINE M. PEASLEE (CA SBN 310298)
kpeaslee@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (713) 516-3883

AMANDA BONN (CA SBN 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
*Facsimile: (310) 789-3150*

AMER S. AHMED* (NY SBM 4382040)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Email: aahmed@gibsondunn.com

*pro hac vice*

*Attorneys for Plaintiffs Media Matters for America, Angelo Carusone, and Eric Hananoki*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document has been served on all current counsel of record via the Court's CM/ECF system on April 1, 2025.

                                              /s/ Justin A. Nelson
                                               Justin A. Nelson