JUSTIN A. NELSON* (TX SBN 24034766)
jnelson@susmangodfrey.com
MATTHEW BEHNCKE* (TX SBN 24069355)
mbehncke@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

KATHERINE M. PEASLEE (CA SBN 310298)
kpeaslee@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (713) 516-3883

AMANDA BONN (CA SBN 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
*pro hac vice

Attorneys for Plaintiff Media Matters for America
(Additional parties and counsel listed with signature)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MEDIA MATTERS FOR AMERICA, ANGELO CARUSONE, and ERIC HANANOKI<br><br>Plaintiff,<br><br>vs.<br><br>X CORP., TWITTER INTERNATIONAL UNLIMITED CO., and TWITTER ASIA PACIFIC PTE. LTD.<br><br>Defendant. | Case No. 3:25-cv-02397-VC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, TRANSFER UNDER 28 U.S.C. §§ 1404, 1406, OR DISMISS FOR FORUM *NON CONVENIENS***<br><br>**Date and Time**: May 15, 2025, 10:00 AM<br>**Place**: Courtroom 4 – 17th Floor<br>450 Golden Gate Avenue,<br>San Francisco, CA 94102 |

## TABLE OF CONTENTS

I.      INTRODUCTION AND BACKGROUND ..........................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED ...................................................................2

III.    ARGUMENT .......................................................................................................................2

        A.    The law of the case precludes the bulk of Defendants' arguments.........................2

        B.    This Court has subject matter jurisdiction. .............................................................3

              1.    The value of an injunction satisfies the amount in controversy..................3

              2.    Attorneys' fees caused by X's breach satisfy the amount in
                    controversy.................................................................................................3

        C.    All Plaintiffs can enforce the forum selection clause. ............................................6

        D.    TIUC and TAP are subject to personal jurisdiction in this District........................7

        E.    Plaintiffs state a claim for relief.............................................................................12

        F.    Venue is proper in this District. .............................................................................13

        G.    Neither transfer nor dismissal for convenience is warranted.................................14

IV.     CONCLUSION...................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aguilar v. Amazon.com, Inc.*,
   677 F. Supp. 3d 1075 (N.D. Cal. 2023) ...................................................................6

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624 (2009)...................................................................................................13

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*,
   571 U.S. 49 (2013).....................................................................................................14

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...................................................................4

*Binns v. Am. Gen. Life & Accident Ins. Co.*,
   2023 WL 5125042 (9th Cir. Aug. 10, 2023)............................................................5

*Brady v. Mercedes-Benz USA, Inc.*,
   243 F. Supp. 2d 1004 (N.D. Cal. 2002) ...................................................................6

*Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*,
   622 F.3d 996 (9th Cir. 2010) ...................................................................................4

*Carnegie-Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988)...................................................................................................3

*Carolina Cas. Ins. Co. v. Team Equip., Inc.*,
   741 F.3d 1082 (9th Cir. 2014) .................................................................................9

*Chan v. Soc'y Expeditions, Inc.*,
   39 F.3d 1398 (9th Cir. 1994) ...................................................................................11

*Cisco Sys., Inc. v. GTEC*,
   2011 WL 13253336 (N.D. Cal. Sept. 27, 2011) ....................................................3, 6

*Crypto Asset Fund, LLC v. OPSkins Grp.*,
   478 F. Supp. 3d 919 (C.D. Cal. 2020) ....................................................................4

*D'Lux Movers & Storage v. Fulton*,
   2007 WL 1299400 (Tex. App.—Fort Worth May 3, 2007, pet. denied)...................5

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) .................................................................................14

*Davis v. Kia Motors Am., Inc.*,
    408 F. App'x 731 (4th Cir. 2011) ........................................................................5

*Doe v. Aetna, Inc.*,
    2018 WL 1614392 (N.D. Cal. Apr. 4, 2018) ..........................................................3

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002)...............................................................................................13

*Facebook Inc. v. Namecheap Inc.*,
    2020 WL 6585534 (D. Ariz. Nov. 10, 2020) .......................................................12

*Firexo, Inc. v. Firexo Grp. Ltd.*,
    99 F.4th 304 (6th Cir. 2024) .................................................................................11

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
    147 Cal. Rptr. 3d 634 (Cal. App. 2012).................................................................4

*FTC-Forward Threat Control, LLC v. Dominion Harbor Enters., LLC*,
    2020 WL 5545156 (N.D. Cal. Sept. 16, 2020) .....................................................12

*Gilbane Fed. v. United Infrastructure Projects FZCO*,
    275 F. Supp. 3d 1180 (N.D. Cal. 2017), *aff'd*, 777 Fed. Appx. 873 (9th Cir.
    2019) .......................................................................................................................6

*HDOS Franchise Brands, LLC v. El Paso Hot Dog, LLC*,
    2021 WL 5629923 (S.D. Cal. June 29, 2021).......................................................13

*Helfand v. Gerson*,
    105 F.3d 530 (9th Cir. 1997) .................................................................................8

*JH Portfolio Debt Equities, LLC v. Garnet Cap. Advisors, LLC*,
    2018 WL 6112695 (C.D. Cal. Mar. 16, 2018).......................................................6

*MacGregor v. Rutberg*,
    478 F.3d 790 (7th Cir. 2007) .................................................................................8

*Manetti-Farrow, Inc. v. Gucci Am. Inc.*,
    858 F.2d 509 (9th Cir. 1988) ...........................................................................11, 12

*Marshall v. Ameriprise Fin. Servs.*,
    735 F. Supp. 3d 1229 (E.D. Cal. 2024)..................................................................4

*Mazal Group, LLC v. Barak*,
    2019 WL 4316244 (C.D. Cal. June 17, 2019) .......................................................11

*Mesler v. Bragg Mgmt. Co.*,
    39 Cal.3d 290, 216 Cal. Rptr. 443, 702 P.2d 601 (1985) ....................................10

*Microsoft Corp. v. Motorola, Inc.*,
  795 F.3d 1024 (9th Cir. 2015) ...........................................................................5

*Murphy v. Twitter, Inc.*,
  274 Cal. Rptr. 3d 360 (Cal. App. 2021)...........................................................5

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) ...........................................................................3

*Pat Pellegrini Flooring Corp. v. ITEX Corp.*,
  2010 WL 1005318 (D. Or. Feb. 9, 2010), *rep. & rec. adopted*, 2010 WL
  1029725 (D. Or. Mar. 17, 2010) .......................................................................12

*Pestmaster Franchise Network, Inc. v. Mata*,
  2017 WL 1956927 (N.D. Cal. May 11, 2017) ....................................................12

*Pirozzi v. Fiserv Corp.*,
  668 F. Supp. 3d 968 (C.D. Cal. 2022) ...............................................................6

*Plantronics, Inc. v. Am. Home Assurance Co.*,
  2014 WL 2452577 (N.D. Cal. May 30, 2014) ....................................................2

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
  352 F. Supp. 2d 1048 (N.D. Cal. 2004) .............................................................5

*Prakash Jones v. Morris + D'Angelo*,
   2024 WL 4428980, (N.D. Cal. Oct. 4, 2024).....................................................5

*Products & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*,
  2017 WL 201703 (N.D. Cal. Jan. 18, 2017) ......................................................12

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ...........................................................................10

*Safety PPE, LLC v. Skanda Group of Indus. LLC*,
  2023 WL 2558549 (C.D. Cal. Feb. 13, 2023), *aff'd*, 2024 WL 2816494 (9th
  Cir. June 3, 2024)................................................................................................11

*Slater v. O'Brien's Moving & Storage, Inc.*,
  931 F.2d 61 (9th Cir. 1991) ...............................................................................5

*Solnes v. Wallis & Wallis, P.A.*,
  2013 WL 3771341 (S.D. Fla. July 18, 2013)......................................................7

*Trans-Tec Asia v. M/V HARMONY CONTAINER*,
  435 F. Supp. 2d 1015 (C.D. Cal. 2005), *aff'd*, 518 F.3d 1120 (9th Cir. 2008).........................8

v

*United States v. Lummi Indian Tribe*,
235 F.3d 443 (9th Cir. 2000) .................................................................2

*United States v. Phillips*,
367 F.3d 846 (9th Cir. 2004) .................................................................2

*Valhal Corp. v. Sullivan Assocs., Inc.*,
44 F.3d 195 (3d Cir. 1995)....................................................................5

*Velaro, Inc. v. Nat'l Flood Servs., LLC*,
2021 WL 8779924 (C.D. Cal. July 7, 2021) .........................................12

*Wescott v. Reisner*,
2018 WL 2463614 (N.D. Cal. June 1, 2018) ........................................12

*White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*,
407 F. Supp. 3d 931 (S.D. Cal. 2019)....................................................6

*X Corp. v. Media Matters for Am.*,
2024 WL 1895255 (N.D. Tex. Apr. 26, 2024) ......................................15

**Statutes**

28 U.S.C. § 1367.....................................................................................3

28 U.S.C. § 1391...................................................................................13

28 U.S.C. § 1406...................................................................................13

**Other Authorities**

17 Corpus Juris Secundum: Contracts § 10 ...........................................4

## I.    INTRODUCTION AND BACKGROUND

This Court has already ruled on nearly all of X's arguments in its Motion to Dismiss or Transfer ("Motion"). Specifically, the Court's Order granting in part Plaintiffs' Motion for Preliminary Injunction necessarily finds that (1) this Court has subject matter jurisdiction; (2) personal jurisdiction exists over the foreign X Entities; (3) Media Matters can enforce the forum selection clause; and (4) venue lies in this District. Nothing in X's Motion justifies reversal of those holdings. And its *forum non conveniens* argument ignores its own forum selection clause.

As set forth in Plaintiffs' Complaint, X has sued Media Matters in three jurisdictions around the world (Texas, Ireland, and Singapore) and has threatened further suits, all in retaliation for an article Media Matters published on November 16, 2023. ECF 1, ¶¶ 55–90. That article truthfully reported that X was placing advertisements next to offensive, fringe content, despite X's public promises that brands would be safe on the platform. *Id*. ¶¶ 47–54. As Plaintiffs have likewise set forth in both the Complaint and prior briefing, Plaintiff Hananoki's use of the Platform was governed by the X Terms of Service, which contain a binding forum selection clause ("FSC"). *Id*. ¶¶ 91–104. The FSC states: "All disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California. . . and you consent to personal jurisdiction and waive any objection as to inconvenient forum." *Id*. ¶ 94.

Plaintiffs filed the instant suit to vindicate their rights under the FSC and to stop X's vendetta-driven worldwide litigation campaign. *See id*., ¶¶ 105–122. Specifically, Plaintiffs seek damages for breach of contract and injunctive relief barring X's foreign suits. *Id*., p.38. On April 10, 2025, this Court issued an Order granting in part Plaintiffs' request for a preliminary injunction. ECF 56. The Court granted an injunction with respect to X's suit (filed by its subsidiary, Twitter International Unlimited Co. ("TIUC")) in Ireland and any prospective foreign litigation arising from the same conduct, but declined to enjoin X's pending Singapore litigation (filed through its subsidiary Twitter Asia Pacific, ("TAP")) in light of the more advanced state of Plaintiffs' jurisdictional challenge in that suit. *Id*. Plaintiffs did not seek to enjoin the Texas litigation and have instead filed a motion to transfer venue in that matter. *See* ECF 1, ¶16 n.7; ECF 16, 1 n.3.

1

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether the law of the case precludes reconsideration of issues already decided.

2.   Whether the amount in controversy is satisfied where Plaintiffs (1) seek injunctive relief worth millions and (2) properly seek well over $75,000 in attorneys' fees incurred in separate actions as consequential damages for X's breach of its own forum selection clause.

3.   Whether all parties are bound by the Terms such that Plaintiffs may enforce the FSC, this Court has personal jurisdiction over the foreign X Entities, and venue exists here.

4.   Whether exceptional circumstances exist such that, notwithstanding the binding FSC, this Court should nevertheless transfer or dismiss for *forum non conveniens*.

## III.   ARGUMENT

### A.   The law of the case precludes the bulk of Defendants' arguments.

"The law of the case doctrine precludes a court from reconsidering an issue that it has already resolved. Issues that a district court determines during pretrial motions become law of the case." *United States v. Phillips*, 367 F.3d 846, 856 (9th Cir. 2004). The doctrine applies where a question has been "decided explicitly or by necessary implication in [the] previous disposition." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (citation omitted). A court may depart from the law of the case if: "(1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." *Plantronics, Inc. v. Am. Home Assurance Co.*, 2014 WL 2452577, at *2 (N.D. Cal. May 30, 2014) (citation and alteration omitted). Application of the doctrine is a matter of judicial discretion. *Id.*

On April 10, the Court issued an Order granting in part Plaintiffs' Motion for Preliminary Injunction and enjoining X's litigation against Media Matters in Ireland, as well as any prospective foreign litigation based on the same underlying conduct, excepting the ongoing litigation in Singapore. ECF 56. That Order implicitly finds the Court has subject matter jurisdiction over this action, Media Matters can enforce the FSC, venue is proper in this District, and all Defendants are subject to personal jurisdiction in this District. ECF 56 at 1–2. Defendants contested each of these

2

points briefing. *See* ECF 40. None of the exceptions to the law of the case apply here. *See supra*, p.2. The Court should apply the law of the case to find these issues already resolved.

      **B.**     **This Court has subject matter jurisdiction.**

      1.     **The value of an injunction satisfies the amount in controversy.**

      X, through its subsidiaries TIUC and TAP, seeks well over $10 million dollars from Media Matters in its foreign litigation. ECF 1, ¶¶76, 79. Plaintiffs filed this case seeking to enjoin those actions, placing those millions of dollars in controversy. *Cisco Sys., Inc. v. GTEC*, 2011 WL 13253336, at *2 (N.D. Cal. Sept. 27, 2011). X does not address this at all. And putting aside the amounts X is seeking from Plaintiffs, an injunction is independently valuable to Plaintiffs because it saves them the need to expend attorneys' fees and litigation costs that will far exceed $75,000. *See* ECF 1, ¶¶24, 119 (plaintiffs have already spent millions in attorneys' fees); *Doe v. Aetna, Inc*., 2018 WL 1614392, at *4 (N.D. Cal. Apr. 4, 2018) ("[T]he value of [the] injunctive relief may be considered from the viewpoint of the plaintiff (i.e., the significance of the injunction to the plaintiff) or from the viewpoint of the defendant (i.e., the cost of the injunction to the defendant)."). Subject matter jurisdiction plainly exists for Plaintiffs' claims for breach of contract with respect to litigation filed in Ireland and Singapore, and supplemental jurisdiction exists over their claim for breach of contract with respect to litigation filed in Texas. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988); 28 U.S.C. § 1367.

      2.     **Attorneys' fees caused by X's breach satisfy the amount in controversy.**

      The damages limitation is unenforceable. While the Court need not engage with the limitation on liability to find the amount in controversy satisfied, that limitation is unenforceable. Under California law, finding a contractual provision unenforceable as unconscionable requires both substantive and procedural unconscionability, but it is a sliding scale—a stronger showing on one requires less of the other. *Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1280 (9th Cir. 2006). The damages limitation here is the height of substantive unconscionability: It allows X to sue Plaintiffs for tens of millions of dollars (as X has done) in lawsuits that themselves violate X's own Terms, while precluding Plaintiffs from recovering any more than $100 in compensation for

3

the millions of dollars Plaintiffs have expended defending against Defendants' breach. ECF 1-1 at 11. Courts regularly find one-sided damages limitations substantively unconscionable. *Marshall v. Ameriprise Fin. Servs.*, 735 F. Supp. 3d 1229, 1245 (E.D. Cal. 2024) (collecting cases). Here, the facts make it particularly so: The inequity of the one-sided provision is not—as it usually is— hypothetical. Rather, the unconscionability is playing out in real time as X willfully imposes costs on Plaintiffs while claiming Plaintiffs have no recourse. *Cf.* ECF 56 at 1 ("[I]t seems almost certain that the X entities' decision to file multiple suits in multiple jurisdictions is designed more to bully Media Matters and inflict financial hardship upon it than to actually vindicate those entities' rights."); *see also* 17 Corpus Juris Secundum: Contracts § 10 (unconscionability is fact-specific).

The fact that the Terms are a contract of adhesion provides a minimum level of procedural unconscionability under California law. *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010). Paired with the strong substantive unconscionability under these facts, it renders the damages limitation unenforceable.

X's claim that "equitable estoppel precludes" invoking a contract while attacking its enforcement, Mot. at 5, ignores that by the contract's own terms, the limitations provision can be severed and the rest of the contract still enforced. ECF 1-1 at 12 (stating that if "any provision of these Terms is held to be invalid or unenforceable," then that provision will be "limited or eliminated" and "the remaining provisions of these Terms will remain in full force and effect"). In the case cited by X, *Crypto Asset Fund, LLC v. OPSkins Grp.*, 478 F. Supp. 3d 919 (C.D. Cal. 2020), a party sought to avoid and enforce the contract on grounds general to the contract—making the arguments inconsistent. *Id.* at 928. Plaintiffs' discrete challenge creates no such conflict.

None of the cases cited by X support enforcing the one-sided damages limitation. X claims that limitations "are presumed valid" but then cites, in support of that statement, a California case stating that "'[l]imitation of liability clauses are enforceable *unless they are unconscionable*" *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 147 Cal. Rptr. 3d 634, 642 (Cal. App. 2012) (emphasis added). That is the case here. In *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019), the plaintiff provided no facts to support finding the limitation substantively unconscionable—

4

Facebook was not demanding millions from Bass in breach of its own Terms, then seeking to limit Bass to recover no more than $100 for Facebook's own willful breach. X misleadingly claims that *Murphy v. Twitter, Inc*., 274 Cal. Rptr. 3d 360 (Cal. App. 2021), "uph[eld the] limitation on liability per 'legitimate commercial need,'" but the user there had argued only that Twitter's unilateral ability to suspend accounts was unconscionably one-sided. *Id*. at 378. The court upheld Twitter's *ability to suspend an account* as a legitimate business need. It did not address the Terms' $100 damages limitation. Neither *Slater v. O'Brien's Moving & Storage, Inc.*, 931 F.2d 61, *2 (9th Cir. 1991) (table decision) nor *Binns v. Am. Gen. Life & Accident Ins. Co*., 2023 WL 5125042, at *1 (9th Cir. Aug. 10, 2023) discusses unconscionability at all. And X's cases applying non-California law are similarly inapposite. *See Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 209 (3d Cir. 1995) (under the facts of the case, a $50,000 cap did not serve to immunize defendant from liability for its actions—unlike the $100 cap here); *Davis v. Kia Motors Am., Inc*., 408 F. App'x 731, 732 (4th Cir. 2011) (unpublished disposition with no discussion of unenforceability); *D'Lux Movers & Storage v. Fulton*, 2007 WL 1299400, at *2 (Tex. App.—Fort Worth May 3, 2007, pet. denied) (unpublished disposition with no discussion of unenforceability).

    <u>Attorneys' fees caused by breach of contract satisfy the amount in controversy</u>. X is incorrect that Plaintiffs cannot recover attorneys' fees from a separate action as damages and that that amount cannot count toward the amount in controversy. Mot. 5. The Ninth Circuit has recognized that some states permit the recovery of attorneys' fees incurred in another action as consequential damages for breach of contract. *See Microsoft Corp. v. Motorola, Inc*., 795 F.3d 1024, 1049 (9th Cir. 2015). In *Microsoft*, the Ninth Circuit noted that such fees "are thus distinct from the same-suit fees generally banned by the American rule." *Id*.  California is just such a state.

    "[I]n California, a party may recover attorney fees not only on a statutory/contractual fee-shifting basis, but also as consequential damages in breach of contract actions when those fees are foreseeable and proximately caused by the breach." *Platte Anchor Bolt, Inc. v. IHI, Inc*., 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citation omitted); *Prakash Jones v. Morris + D'Angelo*, 2024 WL 4428980, at *9 (N.D. Cal. Oct. 4, 2024). Indeed, courts in this district have specifically

permitted a party to recover attorneys' fees incurred as a consequence of a defendant's breach of a forum selection clause. S*ee, e.g., Gilbane Fed. v. United Infrastructure Projects FZCO*, 275 F. Supp. 3d 1180, 1196 (N.D. Cal. 2017), *aff'd*, 777 Fed. Appx. 873 (9th Cir. 2019) ("UIP Lebanon violated the Subcontract's forum-selection clause by bringing an action against Gilbane in Lebanon. Gilbane is entitled to the $73,722.80 in Lebanese attorneys' fees it reasonably incurred as a result."); *Cisco Sys., Inc.*, 2011 WL 13253336, at *2–3 (allowing fees and costs from Dominican suit and distinguishing those from the non-recoverable fees in the California suit).

X cites this Court's opinion stating that "courts must include 'future attorneys' fees recoverable by statute or contract' in the amount in controversy" which—while largely irrelevant, if anything this **supports** finding the amount in controversy satisfied. *Aguilar v. Amazon.com, Inc*., 677 F. Supp. 3d 1075, 1077 (N.D. Cal. 2023). And the case X cites for the proposition that "attorney's fees are not considered part of the amount in controversy for diversity purposes" is in reference to fees incurred in the same action for which the party is trying to establish subject matter jurisdiction, *see Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010 (N.D. Cal. 2002)—that is entirely different from seeking fees incurred in another action as damages proximately caused by a breach of contract.

### C.    All Plaintiffs can enforce the forum selection clause.

"Forum selection clauses can be enforced by or against a non-signatory under certain circumstances," *Pirozzi v. Fiserv Corp*., 668 F. Supp. 3d 968, 974 (C.D. Cal. 2022), including where "the non-party is 'closely related to the contractual relationship.'" *White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931, 947 (S.D. Cal. 2019) (citation omitted); *JH Portfolio Debt Equities, LLC v. Garnet Cap. Advisors, LLC*, 2018 WL 6112695, at *5 (C.D. Cal. Mar. 16, 2018) (collecting cases for the proposition that a non-signatory party is bound by a forum selection clause when its alleged conduct is closely related to the contract).

Non-signatory Media Matters is "closely related" to the contractual relationship governing Hananoki's use of the X Platform. Hananoki used the X account subject to those terms in his capacity as an employee of Media Matters, in order to conduct research for Media Matters, and

ultimately reported on the results of that use in an article published by Media Matters. ECF 1, ¶¶47–54, 92–93. Each of X's Complaints—in Texas, Ireland, and Singapore—alleges purportedly manipulative use of the X Platform by "Media Matters." *See, e.g.*, ECF 1-1, ¶¶63, 74, 76, 81–82. Indeed, neither foreign complaint even names Hananoki as a defendant.

X Corp. alleges that Carusone was similarly closely related to the transaction between Hananoki and X—that is, Hananoki's use of the Platform—as it seeks to hold him liable for that very use and Media Matters' subsequent reporting on it. Carusone himself has had an X account since 2009, *see* https://x.com/GoAngelo, and therefore knew of the Terms all users must accept. *See* ECF 40-10, ¶¶3–7. The evidence further confirms that Carusone was specifically aware of the FSC before X filed any claims against him. ECF 16-14, ¶3.

X's own theory of liability requires that Media Matters and Carusone are "closely related" to the relationship between Hananoki and X.  According to X, Hananoki created a "secret" account with atypical parameters and used it in such a wildly unusual manner that his truthful reporting on that use was defamatory. The only way Media Matters or Carusone could be liable for defamation under X's theory would be if they knew of the specific "account Hananoki used to conduct his so-called 'research'" and of the nature of his alleged use—and, since both had their own accounts, both knew of the Terms and the FSC contained therein. Allowing X to implead Media Matters and Carusone based on their purported knowledge of Hananoki's alleged use of his "secret account" but prohibiting them from enforcing the Terms governing that use, would be an absurd result.

**D.    TIUC and TAP are subject to personal jurisdiction in this District.**

TIUC and TAP are subject to personal jurisdiction in at least three ways.

**1.** <u>Third-Party Beneficiary</u>. X does not contest that if a third-party beneficiary is bound by a forum selection clause, it waives any objection to personal jurisdiction. Rather, it cites a Southern District of Florida case for the proposition that third-party beneficiaries purportedly may not be sued for breach of contract. Mot. at 9 (citing *Solnes v. Wallis & Wallis, P.A.*, 2013 WL 3771341, at *4 (S.D. Fla. July 18, 2013). But here, it is TIUC and TAP that sued Plaintiffs—in foreign jurisdictions, in which Plaintiffs could not seek transfer—and the question is whether Plaintiffs

may enforce the Terms' FSC against those third-party beneficiaries of the Terms. As this Court has already held, they can. ECF 56. That accords with the law. *Trans-Tec Asia v. M/V HARMONY CONTAINER*, 435 F. Supp. 2d 1015, 1028 n.17 (C.D. Cal. 2005), *aff'd*, 518 F.3d 1120 (9th Cir. 2008) ("[U]nder well-established precedent a third-party beneficiary can be bound to the terms of a forum-selection clause contained in the contract to which it is a beneficiary" (collecting cases)).

The text of the Terms confers direct benefits on TIUC and TAP: The Terms provide that the "X Entities," which include X's "affiliates" and "related companies," disclaim warranties for everything from "merchantability" and "non-infringement," to responsibility for harm to a user's computer or data, to liability for whether the Services meet a user's requirements or are available on a "secure, or error-free basis." ECF 1, ¶100. The Terms also purport to limit TIUC and TAP's financial liability. *Id*., 101. Notably, these disclaimers are representations made directly by TIUC and TAP: Per the Terms, "THE X ENTITIES DISCLAIM" all warranties—that is, the X Entities make the disclaimer representation themselves. *Id*. Having themselves made representations in the Terms, it is certainly foreseeable that they would be bound by the FSC contained therein. Finally, no Terms other than the X Terms exist to govern the conduct of U.S.-based users on the X Platform—which is the exact same platform that TIUC and TAP operate and represent abroad. It defies reason that X would leave TIUC and TAP unable to address misuse of that platform by U.S.-based users. Of course, it did not (as acknowledged in Twitter UK's demand letter accusing Media Matters of violating the X Terms, *see* ECF 1-7, ¶13). Accordingly, X's claim that "[i]n order to be considered a third-party beneficiary, a party must have a provision of the contract it can sue on to enforce" is inapposite: As third-party beneficiaries, both TIUC and TAP can themselves enforce the FSC—and are likewise bound by it. To the extent X means that the contract must explicitly bestow a cause of action on a third party in order for them to be considered a third-party beneficiary, that proposition is not supported by either case cited by X (or any case Plaintiffs have located). Mot. at 9. Rather, *Helfand v. Gerson*, 105 F.3d 530 (9th Cir. 1997) simply states that "[c]ourts have extended the right to sue for breach of contract to intended third-party beneficiaries." *id*. at 538, and *MacGregor v. Rutberg*, 478 F.3d 790, 794 (7th Cir. 2007) states the

8

same proposition. Nothing in either case suggests a forum selection clause cannot be enforced by against a third-party beneficiary to a contract.

**2.** <u>Alter Ego</u>. X argues that establishing parties as alter ego requires "such unity of interest and ownership that the separate personalities no longer exist," and that "failure to disregard [their separate entities] would result in fraud or injustice." Mot. 10 (citation omitted). Those conditions are met here: TIUC and TAP's claims are premised on the notion that their identities are interchangeable with "X" in their respective regions such that they have an identical interest in Media Matters' purportedly "manipulative" use of the X Platform and subsequent reporting on that use. ECF 1, ¶¶73–86. Each of TIUC and TAP are subsidiaries of X Corp., which is in turn part of X Holdings. *See id.* ¶27. Upon information and belief, TIUC and TAP's profits and losses roll up to X Corp. *Id.* Plaintiffs' alter ego allegations based on "information and belief" are not conclusory because they specify the information supporting the belief (*e.g.*, Twitter's public financial reporting and Musk's public statements). *See id.* ¶¶27–29. Tellingly, X has not contested Plaintiffs' allegation that the subsidiaries' profits and losses roll up to X, nor has it submitted any contrary evidence. Furthermore, plaintiffs may plead jurisdictional allegations on information and belief "where the facts supporting jurisdiction are not reasonably ascertainable by the plaintiff." *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014). X is a privately held company. The only way Plaintiffs could learn more regarding X's finances would be via discovery. Thus, if the Court believes the record requires further development to support alter ego, Plaintiffs respectfully request an order permitting jurisdictional discovery.

Elon Musk is both the majority owner of X Holdings and the chairman of X Corp. and, according to numerous reports, exercises direct control over the X Entities both domestically and abroad. For instance, Musk reportedly directed the dramatic changes in staffing and content moderation that followed his 2022 takeover of the company formerly known as Twitter, ECF 16-3, pp.3–4; Musk personally emailed staff, both domestically and abroad, about potential layoffs; and Musk involves himself in individual decisions about which specific accounts to allow or suspend and details like how public media accounts should be labeled, ECF 16-31, ECF 16-32,

9

p.3. *See also* 16-33 (Business Insider report that "Musk is closing many international Twitter offices"); ECF 16-34, pp.1–2 (Reuters report stating Musk-directed cuts included workers in Twitter's Dublin and Singapore offices). And uncontested public evidence indicates that, in his role as X Corp. chairman, Musk exercised direct control over the decision to file lawsuits against Media Matters by TIUC and TAP. *See* ECF 16-1, p.3 (Musk promising "thermonuclear" litigation in response to Media Matters' November 16 article); *id.*, p.4 (Musk promising that Texas suit against Plaintiffs is the "first of many"); ECF 16-21, pp.1–2 (Musk calling Media Matters an "evil propaganda machine" and stating, "[w]e are suing them in every country that they operate"). With regard to their pending suits against Media Matters, X Corp. and its subsidiaries have a complete unity of interest: All are proceeding at the direction of X Corp. chairman, Musk.

Failure to disregard Defendants' separate identities would result in injustice. Musk, through X Corp., has initiated serial litigation against Media Matters worldwide over a single course of (protected) conduct. As this Court has already observed, this conduct seems more intended to bully Media Matters and drive up costs than to vindicate any legitimate right. ECF 56 at 1.

X argues that Plaintiffs must show "pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business," Mot. 10 (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015)); but this ignores that in *Ranza*, the court considered whether parent company Nike exercised control over its subsidiary NEON in all respects such that it could attribute Nike's contacts with the forum (where Nike was headquartered and thus subject to general jurisdiction) for the purpose of general jurisdiction over NEON. *Id.* at 1075. Here, the Court need not find that X Corp. and its subsidiaries are alter egos for all purposes. Rather, the question is whether they are alter egos for the purpose *of this lawsuit*. *Mesler v. Bragg Mgmt. Co.*, 39 Cal.3d 290, 216 Cal. Rptr. 443, 702 P.2d 601, 606–07 (1985) ("The issue is not so much whether, f*or all purposes*, the corporation is the 'alter ego' of its stockholders or officers . . . as it is an issue of whether *in the particular case presented and for the purposes of such case* justice and equity can best be accomplished and fraud and unfairness defeated by a disregard of the distinct entity of the corporate form." (emphasis added)). As one court has explained, "the alter

ego inquiry may, in appropriate circumstances, focus narrowly on certain inequitable uses of the corporate form for specific purposes." *Safety PPE, LLC v. Skanda Group of Indus. LLC*, 2023 WL 2558549, at *10 (C.D. Cal. Feb. 13, 2023), *aff'd*, 2024 WL 2816494 (9th Cir. June 3, 2024). Indeed, "the California Supreme Court has analogized the imposition of alter ego liability as 'a hole' being 'drilled in the wall of limited liability erected by the corporate form; for all purposes other than that for which the hole was drilled, the wall still stands.'" *Id*. That is the case here. Musk, through X Corp., used TIUC and TAP to enact his worldwide campaign of retribution against Media Matters. TIUC and TAP are X Corp.'s alter egos at least with respect to this case. *See Mazal Group, LLC v. Barak*, 2019 WL 4316244, at *2 (C.D. Cal. June 17, 2019) (non-signatory was bound by forum selection clause where the signatory and non-signatory "acted as . . . corporate alter ego[s] with respect to [the] suit").[1]

**3.** <u>Closely Related</u>. Finally, both TIUC and TAP are bound by the FSC as closely related parties. Where nonparties are closely related to the contractual relationship, "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Manetti-Farrow, Inc. v. Gucci Am. Inc*., 858 F.2d 509, 514 n.5 (9th Cir. 1988). For all of the reasons stated above, both TIUC and TAP are "closely related" to the contractual relationship here—indeed, they make representations directly in the contract themselves. *See supra*, p.8.

X cites a Sixth Circuit case, *Firexo, Inc. v. Firexo Grp. Ltd*., 99 F.4th 304 (6th Cir. 2024), to argue that the closely related test "implicates a constitutional due process problem"—but this line X quotes is dicta. Mot. 8 (citation omitted). The Sixth Circuit went on to cite cases allowing forum selection clauses to establish personal jurisdiction over non-signatories. It then recognized a Circuit split between those circuits that use the federal common law's "closely related" test to determine the scope and applicability of forum selection clauses, and those that use the *Erie* doctrine to determine the applicable law. The *Firexo* court acknowledged that the Ninth Circuit

---

[1] Once could also view X Corp.'s use of its subsidiaries through an agency lens, which would likewise subject them to personal jurisdiction in view of the forum selection clause. *See, e.g., Chan v. Soc'y Expeditions, Inc*., 39 F.3d 1398, 1406 (9th Cir. 1994). However one labels the conduct, it cannot be that X Corp. can evade its own Terms of Service by acting through its subsidiaries.

uses the "closely related" test. *Id.* at 312–313, 323

X also argues that the test from *Manetti-Farrow* does not apply to confer personal jurisdiction on a non-signatory. However, courts in the Ninth Circuit have repeatedly found otherwise. *See, e.g., Products & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, 2017 WL 201703, at *7 (N.D. Cal. Jan. 18, 2017) ("[W]ith regards to forum selection clauses, non-signatories can be bound and considered to have consented to jurisdiction where their alleged conduct is closely related to the contractual relationship."); *Velaro, Inc. v. Nat'l Flood Servs., LLC*, 2021 WL 8779924 (C.D. Cal. July 7, 2021) (applying *Manetti-Farrow* to personal jurisdiction and finding non-signatories bound and subject to personal jurisdiction; rejecting argument that minimum contacts were also needed); *Facebook Inc. v. Namecheap Inc.*, 2020 WL 6585534, at *3 (D. Ariz. Nov. 10, 2020) (finding "WhoisGuard is bound by the Registration Agreement's forum selection clause regardless of whether it is a signatory" and therefore subject to personal jurisdiction); *see also Pat Pellegrini Flooring Corp. v. ITEX Corp.*, 2010 WL 1005318, at *10 (D. Or. Feb. 9, 2010), *rep. & rec. adopted*, 2010 WL 1029725 (D. Or. Mar. 17, 2010) (applying *Manetti-Farrow* to find personal jurisdiction over non-signatories, despite lack of minimum contacts, where non-signatories were bound by forum selection clause under agency theory).[2]

### E.   Plaintiffs state a claim for relief.

Plaintiffs' declaratory relief claim is not duplicative of their claims for breach of contract: While the contract claims address whether specific X entities breached the FSC, declaratory relief

---

[2] X cites cases declining to apply the "closely related" test to personal jurisdiction under different facts. In *Wescott v. Reisner*, 2018 WL 2463614 (N.D. Cal. June 1, 2018), the non-party at issue was a signatory's wife who was a co-conspirator in the signatory's alleged misconduct. The court did not consider other cases that have applied Manetti-Farrow; and nothing in that case would have made binding the non-signatory wife foreseeable. In *FTC-Forward Threat Control, LLC v. Dominion Harbor Enters., LLC*, 2020 WL 5545156, at *5 (N.D. Cal. Sept. 16, 2020), the court noted that the parties had cited cases in which defendants rather than plaintiffs had sought to enforce a forum selection clause; but here, TIUC and TAP are plaintiffs against which Media Matters seeks to enforce the FSC. However, because those entities sued in foreign jurisdictions, Media Matters cannot simply seek transfer in those jurisdictions. And in *Pestmaster Franchise Network, Inc. v. Mata*, 2017 WL 1956927, at *5 (N.D. Cal. May 11, 2017), the non-signatory was not sufficiently related to the agreement to be "effectively on notice of the forum selection clause[]"—but here, TIUC and TAP *themselves make representations in the agreement*.

that the FSC governs the allegations in those suits speaks to the parties' respective rights with regard to any future international litigation X might seek to file based on the same conduct. X's assertion that Plaintiffs fail to state a claim otherwise fails for all of the reasons stated herein.[3]

### F.    Venue is proper in this District.

Venue in this district is proper pursuant to the FSC requiring that all claims related to the X Terms or Services be litigated in San Francisco County, California, by which all parties are bound. *See supra*, pp.7–12; *HDOS Franchise Brands, LLC v. El Paso Hot Dog, LLC*, 2021 WL 5629923, at *3–5 (S.D. Cal. June 29, 2021) (forum selection clause waives venue objection). X has not argued that its FSC is unenforceable—only that it purportedly does not apply. Because it does, X's arguments under 28 U.S.C. § 1406 and § 1391 are irrelevant.

X recently amended its Terms to designate the Northern District of Texas as the forum for disputes. The Court should reject X's attempt to apply its revised FSC to Plaintiffs' claims.

*First*, as X itself has argued, the Terms in place *at the time of the alleged conduct*—here, X's filing of suits against Plaintiffs—necessarily govern. The relevant conduct here occurred in November 2023 and in subsequent months when X filed its series of lawsuits. X's Terms did not change until November 2024, well after these events. ECF 40, p.2. X itself has recently argued, in a motion to transfer to this District, that the "Court should transfer this action to the Northern District of California pursuant to the version of X Corp.'s Terms of Service to which Plaintiff agreed when he created and used his X account ('Governing Terms')." ECF 50-3, p.1. X's motion acknowledges that its terms have changed, *id*. at 1 [sic] n.1, and the user accepted those new terms by continuing to use his account, *see* https://x.com/ecb4000/status/1892210828050407563. X's motion argues that the "Governing Terms" are those in place when relevant conduct occurred—in

---

[3] X's quotation from *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002) that "a contract cannot bind a nonparty" takes that statement entirely out of context. The Court there was addressing a contract between two private parties which, on its face, could not bind third-party government agency the EEOC. The Supreme Court did not, in that single sentence, reverse decades of law regarding the circumstances under which a non-party may be bound. *See, e.g., Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) ("'[T]raditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories. . .'").

this case, X's filing of lawsuits—regardless of subsequent changes. That is correct.

_Second_, the text of the FSC itself requires that if a dispute concerns a specific version of the Terms, the FSC **in that particular version** governs. The FSC that Plaintiffs are suing to enforce here requires that "[a]ll disputes related to **these Terms**" must be litigated in California; and "**these Terms**" necessarily refers to the Terms containing the FSC in question—i.e., those existing at the time. ECF 16-2 at 10 (emphasis added). The language is clear. And even were it not, the Terms are a form contract drafted by X and must be construed against the drafter. _Daniel v. Ford Motor Co._, 806 F.3d 1217, 1224 (9th Cir. 2015) (rule that ambiguous contract terms are construed against the drafter applies "with peculiar force" to form contracts).[4]

Rather than addressing the above arguments, X simply claims that its newly revised terms "supercede" the terms operative when X filed its suits. Mot 12. But X ignores that the Terms themselves state that "changes will not be retroactive," ECF 1-1 at 11. X cannot retroactively change the venue provision for the Terms upon which Plaintiffs are suing X for breach.

### G. Neither transfer nor dismissal for convenience is warranted.

Where a party's claims are subject to a valid forum selection clause—as Plaintiffs' claims are here—a court should enforce the forum selection clause absent "exceptional" circumstances. _Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex._, 571 U.S. 49, 62 (2013). Normally, a court adjudicating a _forum non conveniens_ argument weighs both private and public interest factors. _Id_. at 62. However, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses." _Id_. at 64. Indeed, X has itself argued, in support of a motion to transfer to this District, that "a forum-selection clause modifies the factors considered on a Section 1404(a) transfer motion by excluding consideration of any private interests of the parties." ECF 50-4, p.6. "As a consequence, a district court may consider arguments about public-interest factors only"— and those factors will "rarely" outweigh the parties' agreement. _Atl. Marine_, 571 U.S. at 64.

---

[4] As Plaintiffs explain in their preliminary injunction briefing, the amended FSC is also not enforceable against Plaintiffs because it is "'unreasonable' under the circumstances," as Plaintiffs had no choice but to preserve and use their X accounts in light of this litigation. _See_ ECF 50, p.2.

14

The public interest factors do not support transfer to the Northern District of Texas—and they certainly do not do so with such force so as to overcome a valid forum selection clause. *First*, pursuant to the Terms' choice of law provision, California law governs the X Entities' breach of the Terms in place at the time X filed its lawsuits against Plaintiffs. ECF 1-1 at 11. X could not retroactively change the law governing its own breach (and indeed the Terms disclaim any such retroactivity, *id.*). This Court is best situated to apply California law. *Second*, administrative concerns favor keeping this matter in California: This Court is familiar with the issues from adjudicating Plaintiffs' preliminary injunction motion, and, as X has itself repeatedly argued when seeking transfer to this District, "there is no indication the Northern District of California is afflicted with administrative difficulties from Court congestion." ECF 50-3, p.9; Peaslee Decl. Ex. A at 15, 17. If this case were transferred, X would presumably argue it is related to its pending matter in the Fort Worth division and should be heard there; but as the Court in X's pending Texas case has stated, that division is one of the busiest judicial divisions in the country, with only two judgeships, and its "misalignment of population size and total judgeships leads to an especially busy docket." *X Corp. v. Media Matters for Am.*, 2024 WL 1895255, at *6 (N.D. Tex. Apr. 26, 2024). *Third*, there is no "local interest" in this matter in the Northern District of Texas. X cites its move to Bastrop, Texas, a year into its litigation against Plaintiffs and well after the conduct at issue, but fails to note that Bastrop is in the **Western** District of Texas, not the Northern District.

X cites no case supporting dismissal of foreign parties based on *forum non conveniens* if those parties are bound by a forum selection clause, as TIUC and TAP are here. Whether an "adequate alternative forum" exists is irrelevant under the present facts: The X Entities agreed to litigate their claims in this one (and to do so under California law). TIUC and TAP have sued U.S.-based Plaintiffs for their use of services provided by a U.S.-based parent corporation (which, at the time of their suits, was based in California) for alleged losses that would roll up to that same U.S.-based parent. There is no "meaningful connection" to either foreign forum.

## IV.    CONCLUSION

For these reasons, the Court should deny X's Motion to Dismiss or Transfer.

Dated: April 15, 2025

By:  */s/ Justin A. Nelson*

JUSTIN A. NELSON* (TX SBN 24034766)
jnelson@susmangodfrey.com
MATTHEW BEHNCKE* (TX SBN 24069355)
mbehncke@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

KATHERINE M. PEASLEE (CA SBN 310298)
kpeaslee@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (713) 516-3883

AMANDA BONN (CA SBN 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
*Facsimile: (310) 789-3150*

AMER S. AHMED* (NY SBM 4382040)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Email: aahmed@gibsondunn.com

*pro hac vice*

*Attorneys for Plaintiffs Media Matters for America, Angelo Carusone, and Eric Hananoki*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing document has been served on all current counsel of record via the Court's CM/ECF system on April 15, 2025.

*/s/Justin A. Nelson*

Justin A. Nelson

PLAINTIFFS' OPP. TO MOT. TO DISMISS OR TRANSFER, Case No.: 3:25-cv-02397-VC