**BENBROOK LAW GROUP, PC**
Bradley A. Benbrook (SBN 177786)
Stephen M. Duvernay (SBN 250957)
701 University Avenue, Suite 106
Sacramento, CA 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

**STONE HILTON PLLC**
Judd E. Stone II *
Christopher D. Hilton *
Ari Cuenin *
Michael R. Abrams *
Elizabeth Brown Fore (SBN 200471)
Alexander M. Dvorscak *
Cody C. Coll*
600 Congress Ave.
Suite 2350
Austin, TX 78701
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
elizabeth@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com
* Admitted *pro hac vice*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MEDIA MATTERS FOR AMERICA, ANGELO CARUSONE, and ERIC HANANOKI,<br><br>    *Plaintiffs*,<br><br> v.<br><br>X CORP., TWITTER INTERNATIONAL UNLIMITED CO., and TWITTER ASIA PACIFIC PTE. LTD.,<br><br>    *Defendants*. | Case No.: 3:25-cv-02397-VC<br><br>**DEFENDANTS X CORP., TWITTER INTERNATIONAL UNLIMITED CO., and TWITTER ASIA PACIFIC PTE. LTD.'s NOTICE OF MOTION; MOTION TO STAY; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**HEARING: June 5, 2025, 10:00AM** |

# TABLE OF CONTENTS

Table of Contents ...................................................................................................... i

Table of Authorities ................................................................................................. ii

Notice of Motion and Motion ................................................................................. 1

Introduction ............................................................................................................. 1

Statement of the Issue to be Decided ...................................................................... 3

Background and Allegations .................................................................................... 3

    I.    Defendants Sue Plaintiffs in Texas, Singapore, and Ireland for Harming X's Platform. 3

    II.    Plaintiffs Wait to Sue Defendants in California for Prosecuting Those Claims. ............. 3

    III.    The Court's Preliminary Injunction Order .................................................... 4

Argument ................................................................................................................. 4

    I.    The Court's Injunction Improperly Interferes with Ongoing Irish Proceedings, Harming International Comity and Irreparably Injuring Defendants. ............................................ 5

    II.    Defendants have Shown a Strong Likelihood of Succeeding on the Merits .................. 8

    III.    A Stay of the Injunction Will Not Harm Plaintiffs. ........................................ 15

Conclusion ............................................................................................................ 15

Certificate of Service ............................................................................................ 16

Certificate of Conference ...................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Alutiiq Int'l Sols., LLC v. OIC Marianas Ins. Corp.*,
  305 F.R.D. 618 (D. Nev. 2015) ............................................................................ 6

*Bacon v. Fed. Rsrv. Bank of S.F.*,
  289 F. 513 (E.D. Wash. 1923) ............................................................................ 11

*Baton v. Ledger SAS*,
  2025 WL 416360 (N.D. Cal. Feb. 6, 2025) ........................................................ 14

*BeautiControl, Inc. v. Burditt*,
  2001 WL 1149360 (N.D. Tex. Sept. 26, 2001) .................................................. 15

*Brady v. Mercedes-Benz USA, Inc.*,
  243 F. Supp. 2d 1004 (N.D. Cal. 2002) ............................................................. 12

*Briskin v. Shopify, Inc.*,
  2025 WL 1154075 (9th Cir. Apr. 21, 2025) ....................................................... 13

*Candy v. NPRTO Fla. LLC*,
  322 F. Supp. 3d 1261 (M.D. Fla. 2017)............................................................... 11

*Chavez v. JPMorgan Chase & Co.*,
  888 F.3d 413 (9th Cir. 2018) .............................................................................. 12

*Contra Cisco Sys., Inc. v. GTEC, C. por A.*,
  2011 WL 13253336 (N.D. Cal. Sept. 27, 2011) ................................................ 12

*CPC Pat. Techs. PTY Ltd. v. Apple, Inc.*,
  2024 WL 393492 (N.D. Cal. Feb. 1, 2024) ......................................................... 8

*CZ Servs., Inc. v. Express Scripts Holding Co.*,
  2018 WL 3972030 (N.D. Cal. Aug. 20, 2018) ................................................... 15

*Dole Food Co., Inc. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) ........................................................................... 14

*Ene v. Graham*,
  546 P.3d 1232 (Nev. 2024)................................................................................. 13

*Ensambles Hyson, S.A. de C.V. v. Sanchez*,
  736 F. Supp. 3d 871 (S.D. Cal. 2024)................................................................. 7

*Firexo, Inc. v. Firexo Grp. Ltd*,
  99 F.4th 304 (6th Cir. 2024) .............................................................................. 13

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021)............................................................................................ 13

*Galt G/S v. JSS Scandinavia*,
  142 F.3d 1150 (9th Cir. 1998) ........................................................................... 12

*Gatton v. T-Mobile USA, Inc.*,
  2003 WL 21530185 (C.D. Cal. Apr. 18, 2003) ........................................................... 13

*Google LLC v. NAO Tsargrad Media*,
  2025 WL 964692 (N.D. Cal. Mar. 31, 2025) ................................................................. 5

*Griggs v. Credit Sols. of Am., Inc.*,
  2009 WL 911420 (E.D. Mo. Mar. 31, 2009) ................................................................ 12

*Harper v. Wausau Ins. Co.*,
  56 Cal. App. 4th 1079 (1997) ........................................................................................ 10

*Helfand v. Gerson*,
  105 F.3d 530 (9th Cir. 1997) ............................................................................................ 9

*Hicks v. Utiliquest, LLC*,
  736 F. Supp. 3d 849 (E.D. Cal. 2024) .............................................................................. 9

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ......................................................................................................... 12

*In re Boon Global Ltd.*,
  923 F.3d 643 (9th Cir. 2019) .......................................................................................... 13

*In re Icenhower*,
  398 B.R. 902 (Bankr. S.D. Cal. 2008) .............................................................................. 5

*Int'l Customs Assocs. v. Ford Motor Co.*,
  893 F. Supp. 1251 (S.D.N.Y. 1995) ............................................................................... 10

*Ismart Int'l Ltd. v. I-Docsecure, LLC*,
  2005 WL 588607 (N.D. Cal. Feb. 14, 2005) ................................................................. 10

*Jacocks v. Cap. Commer. Real Est. Grp., Inc.*,
  310 So. 3d 71 (Fla. Dist. Ct. App. 2021) ....................................................................... 11

*JW Gaming Dev., LLC v. James*,
  544 F. Supp. 3d 903 (N.D. Cal. 2021) .............................................................................. 5

*Kung v. FOM Inv. Corp.*,
  563 F.2d 1316 (9th Cir. 1977) .......................................................................................... 6

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) ............................................................................................ 5

*MacGregor v. Rutberg*,
  478 F.3d 790 (7th Cir. 2007) ............................................................................................ 9

*Microsoft Corp. v. Lindows.com, Inc*,
  319 F. Supp. 2d 1219 (W.D. Wash. 2004) ....................................................................... 8

*Microsoft Corp. v. Motorola, Inc.*,
  696 F.3d 872 (9th Cir. 2012) ..................................................................................... 7, 15

*Mutual Serv. Cas. Ins. Co. v. Frit Indus., Inc.*,
  805 F. Supp. 919 (M.D. Ala. 1992) .................................................................................. 8

*N.F. Gozo Corp. v. Kiselman*,
  960 N.Y.S.2d 846 (N.Y. App. Div. 2012) ................................................................ 10

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*,
  319 F. Supp. 2d 1059 (C.D. Cal. 2003) .................................................................. 10

*Nken v. Holder*,
  556 U.S. 418 (2009) ....................................................................................................... 5

*Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*,
  802 F.2d 362 (9th Cir. 1986) ....................................................................................... 11

*Ruderman v. Rolls Royce Motor Cars, LLC*,
  511 F. Supp. 3d 1055 (C.D. Cal. 2021) ...................................................................... 9

*S&J Rentals, Inc. v. Hilti, Inc.*,
  294 F. Supp. 3d 978 (E.D. Cal. 2018) ....................................................................... 14

*S. Cal. All. of Publicly Owned Treatment Works v. EPA*,
  297 F. Supp. 3d 1060 (E.D. Cal. 2018), *aff'd*, 8 F.4th 831 (9th Cir. 2021) .............. 11

*Se. Power Grp., Inc. v. Vision 33, Inc.*,
  855 F. App'x 531 (11th Cir. 2021) ............................................................................. 14

*See In re Orange, S.A.*,
  818 F.3d 956 (9th Cir. 2016) ...................................................................................... 14

*Serafin v. Realmark Hldgs., LLC*,
  2023 WL 7110708 (N.D. Cal. Oct. 26, 2023) ........................................................... 13

*Site 2020 Inc. v. Superior Traffic Servs., LLC*,
  2023 WL 4060099 (D. Mont. March 27, 2023) ........................................................... 6

*Souza v. Westlands Water Dist.*,
  135 Cal. App. 4th 879 (2006) ..................................................................................... 11

*Sweet v. Cardona*,
  657 F. Supp. 3d 1260 (N.D. Cal. 2023) ....................................................................... 5

*TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*,
  915 F.2d 1351 (9th Cir. 1990) .................................................................................... 10

*TradeComet.com LLC v. Google, Inc.*,
  693 F. Supp. 2d 370 (S.D.N.Y. 2010) .................................................................. 2, 14

*Vespa of Am. Corp. v. Bajaj Auto Ltd.*,
  550 F. Supp. 224 (N.D. Cal. 1982) .............................................................................. 8

*Wescott v. Reisner*,
  2018 WL 2463614 (N.D. Cal. June 1, 2018) ....................................................... 10, 11

*X Corp. v. Media Matters for Am.*,
  2024 WL 4001803 (N.D. Tex. Aug. 29, 2024) ........................................................... 7

*Zynga, Inc. v. Vostu USA, Inc.*,
  816 F. Supp. 2d 824 (N.D. Cal. 2011) ....................................................................... 15

**Statutes**

28 U.S.C. § 1332(b) ................................................................................................ 11

28 U.S.C. § 1391 ...................................................................................................... 13

28 U.S.C. § 1404 ...................................................................................................... 14

28 U.S.C. § 1406 ...................................................................................................... 14

Cal. Civ. Code § 1559 ............................................................................................. 10

**Other Authorities**

14B Fed. Prac. & Proc. Juris. § 3707 (5th ed.) ..................................................... 12

14B Fed. Prac. & Proc. Juris. § 3712 (5th ed.) ..................................................... 12

187 Am. Jur. Proof of Facts 3d 277 § 11 .............................................................. 12

20 Williston on Contracts § 55:19 (4th ed.) ........................................................ 9

5 Fed. Prac. & Proc. § 1213 (4th ed.) .................................................................... 12

Wolters Kluwer Bouvier Law Dictionary Desk Ed.,
     *Third-Party Beneficiary* (2012) ...................................................................... 9

**Rules**

Fed. R. Civ. P. 62(c) ............................................................................................... 5

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 5, 2025, at 10:00 AM in Courtroom 4–17th Floor of the U.S. District Court, N.D. Cal., San Francisco Division, San Francisco Courthouse, 450 Golden Gate Ave., San Francisco, CA 94102, Defendants X Corp., Twitter International Unlimited Co. ("TIUC"), and Twitter Asia Pacific Pte. Ltd. ("TAP") will and hereby do move to stay the preliminary injunctive relief granted to Plaintiffs by the Court's April 10, 2025 Order Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction, ECF 56. The Motion is based on this Notice; the Memorandum of Points and Authorities; the papers, pleadings, and documents on file herein, including, without limit, the Complaint; documents incorporated by reference or properly subject to judicial notice; and declarations and exhibits.

## INTRODUCTION

The Court should stay its injunction, which appears to rest on a factual misunderstanding. To start with what the Court got right, it was not "appropriate" to "enjoin[] the Singapore lawsuit" because "the parties" there had already "filed their briefs" addressing jurisdictional issues. ECF 56 at 2. The same correct conclusion should have applied to the Irish litigation. The premises of the Court's decision to enjoin "the Ireland case" were (1) "previous counsel for Media Matters simply missed th[e] issue" Plaintiffs now claim requires suit to be brought in California exclusively, and (2) "the parties" in Ireland "haven't filed their briefs on Media Matters's jurisdictional challenge" there. ECF 56 at 1-2. Neither premise is correct. Plaintiffs' replacement counsel said on the record the decision not to press that forum selection clause ("FSC") argument was "a considered decision to make the best arguments in those particular courts." ECF 58 at 10:13-20. And, as a result of that decision in Ireland, the jurisdictional issue *is* currently being teed up: In response to TIUC's complaint, Media Matters filed a forum non conveniens motion in Ireland and the parties filed multiple expert reports and factual affidavits on the Irish jurisdictional challenge before Plaintiffs asked this Court for a preliminary injunction. *Compare* ECF 40-9 ¶¶ 12-23 (Decl. of Audrey Byrne), *with* ECF 16 (PI motion filed March 11). This Court's order stays progress on that motion,

which would have swiftly moved toward resolution but for this lawsuit. *See* ECF 40-9 ¶¶ 24-27. Proceedings should continue in Ireland, just as in the Singaporean court that is considering a similar forum non conveniens motion, pending Defendants' appeal.

A stay is also warranted because Defendants have shown a substantial likelihood of success on the merits. It is blackletter law that a third-party beneficiary cannot be sued for breach of a contract to which it is not a party, unless it first seeks to enforce a part of that same contract for its benefit. TIUC and TAP (and X Corp. for that matter) have not invoked the Terms of Service ("TOS") affirmatively, thus no claim for breach of those terms can lie against TIUC and TAP. The injunction ignored that rule and improperly transformed TIUC and TAP from alleged third-party beneficiaries of portions of the Terms of Service into obligors under the entire agreement. That distinction—between an obligor, who is bound to a contract by virtue of its assent to be bound, and a third-party beneficiary, who can be bound only through estoppel and only when asserting rights under the contract—is elemental to contract law. MMFA cannot invoke the FSC offensively against TIUC and TAP, who never agreed to it in the first place, without eviscerating third-party beneficiary doctrine. Defendants are reinforced by Media Matters' lengthy and inexplicable delay in seeking relief here: that delay, a "considered decision," ECF 58 at 10:15-20 (emphasis added), reflected the common-sense understanding that MMFA could not enforce a contract against nonparties regarding claims that fall outside the scope of the TOS.

Ironically, MMFA invokes this Court's jurisdiction in contravention of a binding FSC—the one effective on the date MMFA filed this action—that required them to bring their claims *in Texas*. Plaintiffs assert that Defendants breached a prior version of the TOS. Defendants dispute that. But, for now, the important point is that the parties agreed those terms could be amended— and it was the amended version, requiring suit in Texas, that was operative at the time of Plaintiffs' suit. *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 375-76 (S.D.N.Y. 2010) (enforcing, under California law, a modified FSC in the parties' superseding agreement).

Finally, a stay will not harm Plaintiffs. The preliminary questions of venue and jurisdiction have been submitted to the foreign courts *by Media Matters*, and a ruling on those questions could

moot substantial parts of this case, including the need for the preliminary injunction at all. In this context, no harm can come from a stay—and certainly not harm sufficiently great to outweigh the serious comity concerns that this Court has already acknowledged.

## STATEMENT OF THE ISSUE TO BE DECIDED

Should the Court stay its preliminary injunction pending appeal to the Ninth Circuit?

## BACKGROUND AND ALLEGATIONS

### I. Defendants Sue Plaintiffs in Texas, Singapore, and Ireland for Harming X's Platform.

Texas-headquartered X Corp. contracts with advertisers on the X platform in the US. One of its subsidiaries, TIUC, is an Irish company with an Ireland registered address. TIUC contracts with advertisers in Europe and the UK. TAP, a Singaporean company with a Singapore registered address, contracts with advertisers in the Asia Pacific region. Compl. ¶¶ 21-23. Plaintiffs reside in New York, Washington, D.C., and Maryland. *Id.* ¶¶ 18-20.

On November 20, 2023, Defendant X Corp. sued MMFA and Hananoki (and later Carusone) in the Northern District of Texas, alleging interference with contract, business disparagement, and interference with economic advantage. *Id*. ¶ 58. The basis was a November 16 article written by Hananoki, and published by Carusone and Media Matters, stating that "X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content." *Id.* ¶¶ 50, 60. X Corp.'s Amended Complaint alleges that Hananoki's article was false and defamatory, as it was based on intentional manipulation of the X platform. *Id.* ¶¶ 62, 68. X alleged that Plaintiffs pushed the article to pressure advertisers into leaving the platform. *Id.* ¶ 61. The foreign defendants, TIUC and TAP, filed suits against Plaintiff Media Matters in December 2023 in Ireland and July 2024 in Singapore, respectively. *Id.* ¶¶ 72, 79. The foreign defendants, which each contract with advertisers in their respective jurisdictions, asserted defamation claims based on the same article; the parties have litigated in their respective fora ever since. *See id.* ¶¶ 71, 77, 79, 85, 130, 138.

### II. Plaintiffs Wait to Sue Defendants in California for Prosecuting Those Claims.

In March 2025—almost a year and a half after Defendants filed suit—Plaintiffs filed this case for alleged breach of a FSC. *Id.* ¶¶ 123-44. Plaintiffs seek "millions of dollars" for "attorneys' fees

and costs defending" against lawsuits, *id.* ¶¶ 130, 138; a declaration that the clause "governs the international cases filed by Defendants," *id.* ¶ 144; and "[i]njunctive relief enjoining Defendants from further prosecuting their pending actions," *id.* at Prayer for Relief.

Plaintiffs' claims should never have been brought here. To be sure, the FSC in X's TOS ***previously*** required that any suit be filed in San Francisco County, CA. *Id.* ¶ 94; ECF 1-1 at 11. But the TOS that were ***in effect when plaintiffs filed this suit*** require disputes to be "brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County." ECF 40-1 (Dvorscak Decl.) ¶ 3; ECF 40-3 (Dvorscak Decl.) Ex. 2, at 10. Each Plaintiff accepted the effective TOS before suing. ECF 40-10 (Scolari Decl.) ¶¶ 5-7. That is where these claims should have been brought, if at all.

## III.    The Court's Preliminary Injunction Order.

Plaintiffs moved this Court for a preliminary injunction the day after they improperly filed suit here. ECF 16. In their Response, ECF 40, Defendants argued that the applicable, current FSC requires litigation in Texas, that the Court lacks personal jurisdiction over TIUC and TAP, that the Court lacks subject-matter jurisdiction, and that there are several reasons even the old FSC does not support a preliminary injunction. ECF 40. Defendants subsequently moved to dismiss, or alternatively to transfer per the applicable FSC and on *forum non conveniens* grounds. ECF 51.

On April 9, 2025, the Court held a hearing on Plaintiffs' preliminary injunction motion. ECF 55. Despite Plaintiffs' professed inability to explain their delay in bringing this case, the Court granted Plaintiffs' requested injunction in part. ECF 56. Specifically, the Court enjoined any further prosecution of TIUC's Irish litigation against Media Matters and enjoined Defendants from instituting any litigation against Plaintiffs outside the US. *Id.* The Court declined, however, to enjoin the prosecution of TAP's Singaporean action and stated that it would "under no circumstances" enjoin or otherwise restrain the Texas litigation. *Id.*

## ARGUMENT

The Court has discretion to stay its preliminary injunction under Federal Rule of Civil

Procedure 62(c). This Court considers four factors regarding whether to issue a stay, including: (1) likelihood of success on the merits, (2) irreparable harm absent a stay, (3) whether a stay will "substantially injure" Plaintiffs, and (4) "where the public interest lies." *Sweet v. Cardona*, 657 F. Supp. 3d 1260, 1267 (N.D. Cal. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)). The Ninth Circuit has explained that these factors are to be considered on a "sliding scale," meaning that a weaker showing in one requires a stronger showing of the others, and vice versa. *Id.* (citing *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011)).

All four factors strongly support a stay. Defendants have amply shown their likelihood of success on the merits for multiple reasons including because Plaintiffs do not meet the diversity-jurisdiction amount-in-controversy threshold, and because Plaintiffs fail to establish personal jurisdiction over foreign non-signatories TIUC and TAP, whether under third-party beneficiary, closely-related, or alter-ego theories. Defendants will be irreparably harmed without a stay because the injunction risks unduly influencing foreign proceedings and permanently depriving TIUC of a remedy for damages it suffered abroad. Plaintiffs have offered no cognizable countervailing harms cutting against a stay aside from the ordinary litigation costs that every party suffers. And the public interest—particularly comity between US and foreign courts—weighs heavily against a global injunction binding TIUC not to press long-pending claims in Ireland where it resides.

## I. The Court's Injunction Improperly Interferes with Ongoing Irish Proceedings, Harming International Comity and Irreparably Injuring Defendants.

**A.** The public interest in comity favors a stay. There is a "great public interest in . . . comity." *JW Gaming Dev., LLC v. James*, 544 F. Supp. 3d 903, 922 (N.D. Cal. 2021). Here, the antisuit injunction unmistakably interferes with pending foreign litigation, including the Irish courts' ability to determine their own jurisdiction, and therefore poses a threat to comity. *In re Icenhower*, 398 B.R. 902, 911 (Bankr. S.D. Cal. 2008). And the further an injunction reaches—the more foreign sovereigns it touches—the greater the comity concerns. *See Google LLC v. NAO Tsargrad Media*, 2025 WL 964692, at *13 (N.D. Cal. Mar. 31, 2025) (finding the most concern when the requested injunction would "reach across the entire globe"). This Court has enjoined Defendants

from litigating further in any foreign courts, save for the ongoing Singaporean litigation; a global injunction against not only the ongoing Irish litigation but any additional possible litigation therefore inflicts extremely heavy comity costs that this Court has already recognized substantially weigh against an injunction. ECF 58 at 23:9-12. (emphasizing "shutting down foreign litigation when the foreign judge is in the middle of adjudicating it" harms comity). These costs in turn support a stay of the injunction: if Defendants are to be denied recourse to all foreign fora but one, that result should come only after appellate review.

Plaintiffs never asserted in either the Irish or Singaporean courts that Defendants had to sue in this Court. Although Plaintiffs appear to now shift responsibility for that decision to their former counsel, they nonetheless had multiple opportunities to raise the very same argument they raise now before this Court in three different cases across three different jurisdictions—and chose not to. When asked by this Court at the oral argument on this injunction why the FSC was not asserted for more than 15 months, Media Matters' replacement counsel stated, with respect to the foreign jurisdictions, that "the answer is because it was a considered decision to make the best arguments in those particular courts." ECF 58 at 10:13-20. Such gamesmanship should not be countenanced. *See Site 2020 Inc. v. Superior Traffic Servs., LLC*, 2023 WL 4060099, at *14 (D. Mont. March 27, 2023) (gamesmanship "undermines the confidence of both litigants and the public in the fairness of judicial proceedings"). Plaintiffs are bound to their former counsel's "considered decision." *See* ECF 58 at 10:15-20. Clients are "bound by the conduct of their attorneys, absent egregious circumstances which are not present here." *Kung v. FOM Inv. Corp.*, 563 F.2d 1316, 1318 (9th Cir. 1977). "[W]hile it may seem unfair" to Plaintiffs that counsel's delays "should be visited upon [them]," *id.*, it is not the Court's role to forgive even fatal mistakes of counsel, *Alutiiq Int'l Sols., LLC v. OIC Marianas Ins. Corp.*, 305 F.R.D. 618, 629-30 (D. Nev. 2015). The "blame-our-last-lawyers plea" is a tired one. *Id.* at 629.

Further, contrary to the notion that the foreign litigation is designed to "bully" Media Matters or impose financial burdens on it, ECF 56 at 1, the Irish and Singaporean suits seek damages suffered by TIUC and TAP, respectively, that do not overlap with X Corp.'s. ECF 1-3 at 17-18

(TAP's separate damages); ECF 1-6 at 9-10 (TIUC's separate damages). Plaintiffs acknowledge, ECF 1 ¶¶ 22-23, that the foreign entities are responsible for contractual relationships with advertisers on the X platform in Europe and Asia, ECF 1-3 at 2 (TAP "contracts with advertising clients located in the Asia Pacific region"); ECF 1-6 at 5 (TIUC "contract[s] for advertisements with advertisers on the X platform in Europe"). Accordingly, each foreign entity sought recovery for harm to its own economic interests that it separately suffered. There is no "duplication" to "raise the specter of forum-shopping" or a "motive to harass or annoy." *See Ensambles Hyson, S.A. de C.V. v. Sanchez*, 736 F. Supp. 3d 871, 891-92 (S.D. Cal. 2024). Moreover, whether such foreign entities may sue in their home jurisdictions is a question for the able courts in those jurisdictions, and it is precisely the question that has been aired there far more fully than in the hasty briefing here. ECF 40-8 ¶¶ 10-21 (Decl. of Tae Zhi Yuan) (describing lengthy course of Singaporean proceedings); ECF 40-9 ¶¶ 10-28 (same for Ireland).

Plaintiffs miss the mark (PI Mot., ECF 16, at 26) by citing *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir. 2012). There, the plaintiff "invoked the [foreign] action . . . and sought injunctive relief in [the foreign forum] before the [district] court could adjudicate that precise issue." *Id.* at 886. Here, in contrast, the foreign cases and the Texas suit seek resolution of separate issues and damages for separate harms. True, the actions concern the same tortious conduct by the same defendants, but a single tortious act can often have multiple victims. So it is *Plaintiffs* who ask this Court to "adjudicate th[e] precise issue" before the foreign courts before those courts have the chance to do so. *Id.* Further, the foreign actions are backed by "reasonable or probable cause." *Ensambles Hyson*, 736 F. Supp. 3d at 891. In Ireland, a judicial officer granted permission to issue and serve a summons. ECF 40-9 ¶¶ 3-4. The same occurred in Singapore. ECF 40-8 ¶ 3. And a Texas federal court denied Plaintiffs' motion to dismiss for failure to state a claim. *X Corp. v. Media Matters for Am.*, 2024 WL 4001803, at *6-8 (N.D. Tex. Aug. 29, 2024). Plaintiffs cannot claim these actions lack probable cause or are duplicative and harassing. The Court should not have enjoined the Irish action absent any evidence it is vexatious.

Finally, public interests favor a stay to "obtain meaningful appellate review" and "mitigate the

risk of mootness." *CPC Pat. Techs. PTY Ltd. v. Apple, Inc.*, 2024 WL 393492, at \*4 (N.D. Cal. Feb. 1, 2024). After all, were the foreign courts to rule on jurisdiction (and the Singapore case is proceeding apace on that question), that may moot Plaintiffs' requested injunction. If those courts decide in Plaintiffs' favor, no such relief would be needed here. And, as discussed below, the non-final antisuit injunction poses a risk of improperly swaying the foreign courts' jurisdictional deliberations while Defendants' appeal is pending.

**B.** Defendants will be irreparably harmed absent a stay. TIUC has diligently pursued litigation in Ireland only to be stymied just before otherwise-imminent Irish jurisdictional proceedings. *See* ECF 58 at 62 (Plaintiffs' counsel stating jurisdictional affidavits have been exchanged and a roll call was set for early May); ECF 40-9 ¶¶ 6, 24-28. Effectively foreclosing Irish courts from even considering their own jurisdiction is especially egregious. After all, federal courts' understanding of comity demands that "when possible, the decisions of foreign tribunals should be given effect in domestic courts." *Microsoft Corp. v. Lindows.com, Inc*, 319 F. Supp. 2d 1219, 1222 (W.D. Wash. 2004); *see also Vespa of Am. Corp. v. Bajaj Auto Ltd.*, 550 F. Supp. 224, 229 (N.D. Cal. 1982). The injunction "cut[s] off the right of an independent forum to exercise its power over matters subject to its jurisdiction." *Mutual Serv. Cas. Ins. Co. v. Frit Indus., Inc.*, 805 F. Supp. 919, 922 (M.D. Ala. 1992). *A fortiori*, comity demands foreign courts be allowed to consider their own jurisdiction, which an unstayed injunction may forestall in Ireland.

Worse, this Court's statement that the FSC also binds TAP will likely prejudice the pending Singapore case, absent a stay. This Court's ruling was preliminary and subject to appeal, yet Plaintiffs will surely argue that the Singaporean court should follow it in imminent Singaporean jurisdictional proceedings. *Lindows.com*, 319 F. Supp. 2d at 1222; ECF 40-8 ¶¶ 11-12 (describing process to notify Singaporean court of matters outside the "reasonable contemplation" of movant at time of original filing), ¶ 22 (describing steps Plaintiffs have taken to notify Singaporean court of developments here and in Texas). A stay is the only way to honor this Court's expressed desire not to frustrate Singaporean courts or interfere with jurisdictional proceedings there. ECF 56 at 2.

**II. Defendants have Shown a Strong Likelihood of Succeeding on the Merits.**

As Defendants have shown in their response to Plaintiff's motion for preliminary injunction, ECF 40, and in their motion to dismiss, ECF 51, Defendants have a strong likelihood of succeeding on the merits. TIUC and TAP are not third-party beneficiaries of the TOS and are not bound by the FSC. Plaintiffs' suit fails for myriad other reasons. First, this Court lacks subject matter jurisdiction. Second, this Court lacks personal jurisdiction over TIUC and TAP. Third, the claims asserted belong elsewhere: venue is improper here and, in any case, the suit should be transferred. Fourth, Plaintiffs have not shown any entitlement to the relief for which they pray.

**A.** Plaintiffs argue TAP and TIUC "are bound by" an FSC "providing for litigation in this district" "because they are third party beneficiaries of the TOS." ECF 1 ¶¶ 26, 102, 126. That's both wrong and irrelevant. TAP and TIUC are not third-party beneficiaries. Regardless, Plaintiffs cannot bring a breach of contract claim against third-party beneficiaries: it is blackletter law that a third-party beneficiary is "not held to have agreed in absentia to all of the contract's provisions," 20 WILLISTON ON CONTRACTS § 55:19 (4th ed.), and thus "***cannot breach the contract***," WOLTERS KLUWER BOUVIER LAW DICTIONARY DESK ED., *Third-Party Beneficiary* (2012) (emphasis added).

Initially, TIUC and TAP do not satisfy the test for third-party beneficiary status to the TOS. ECF 1-1 at 3 (providing that the TOS is an agreement between user and X Corp. only, and not naming any party as an intended third-party beneficiary); *Ruderman v. Rolls Royce Motor Cars, LLC*, 511 F. Supp. 3d 1055, 1059 (C.D. Cal. 2021) (a "sophisticated signatory" could have named the third party as a beneficiary and did not). "The mere fact that a contract results in benefits to a third party does not render that party a 'third-party beneficiary.'" *Hicks v. Utiliquest, LLC*, 736 F. Supp. 3d 849, 859 (E.D. Cal. 2024). Unless the purported beneficiary has some provision on which it can sue to recover the intended benefit, it is not a third-party beneficiary at all. *See MacGregor v. Rutberg*, 478 F.3d 790, 794 (7th Cir. 2007) ("[O]rdinarily a person's entitlement to sue to enforce a contract to which she's not a party must be expressed in the contract rather than implied."); *see also Helfand v. Gerson*, 105 F.3d 530, 538 (9th Cir. 1997) (defendant's duty to plaintiff was derived from the defendant's contract with plaintiff's spouse, and plaintiff was intended to receive a benefit from the contract). For example, an insurance-policy beneficiary

frequently has the right to sue for benefits that are not paid according to the contract. *Harper v. Wausau Ins. Co.*, 56 Cal. App. 4th 1079, 1087-88 (1997). Plaintiffs cannot point to any such provision, let alone one the foreign Defendants actually invoked. *See* ECF 16 at 24-25 (failing to identify any provision Defendants have invoked); ECF 50 at 10-11 (same).

Even if TIUC and TAP were third party beneficiaries (and they are not), Plaintiffs fail to cite a single case stating that the theory underlying their claims—that a party (Hananoki) to a two-person contract (between Hananoki and X Corp.) suing third-party beneficiaries (allegedly TIUC and TAP) who have not invoked the same contract affirmatively—is permissible. For good reason: it is not. Claims for breach of contract brought by parties to the contract against third-party beneficiaries of that contract fail. *Ismart Int'l Ltd. v. I-Docsecure, LLC*, 2005 WL 588607, at *8 n.5 (N.D. Cal. Feb. 14, 2005) ("Although California law permits third party beneficiaries to sue under contracts, Cal. Civ. Code § 1559, the parties have cited no law . . . that third party beneficiaries can similarly be sued by parties to a contract."); *Int'l Customs Assocs. v. Ford Motor Co.*, 893 F. Supp. 1251, 1256 n.3 (S.D.N.Y. 1995) ("The status of an intended third-party beneficiary . . . does not give others the right to sue that person on the contract." (citation omitted)); *N.F. Gozo Corp. v. Kiselman*, 960 N.Y.S.2d 846, 848 (N.Y. App. Div. 2012) ("While the status of an intended third-party beneficiary gives that individual a right to sue on a contract . . . , this status does not confer upon one of the parties to the agreement the right to sue the third-party beneficiary."); *Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1068 (C.D. Cal. 2003) ("[A] third party beneficiary . . . cannot be sued for breach").

There is a narrow but inapplicable "estoppel" exception to this rule: "a forum selection clause may be enforced against non-signatories who *affirmatively* bring suit to assert a right under the contract." *Wescott v. Reisner*, 2018 WL 2463614, at *8 (N.D. Cal. June 1, 2018) (emphasis added) (citing *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990)). A plaintiff who "seeks to secure benefits under a contract as to which he is a third-party beneficiary," "must take the contract as he finds it" and "cannot select the parts favorable to him and reject those unfavorable to him." *Souza v. Westlands Water Dist.*, 135 Cal. App. 4th 879,

895 (2006) (cleaned up); *Candy v. NPRTO Fla. LLC*, 322 F. Supp. 3d 1261, 1263 (M.D. Fla. 2017) ("[A] third-party beneficiary cannot sue to enforce a contract and also argue it is not bound by its terms."). Courts also apply this estoppel rule to arbitration clauses. *Jacocks v. Cap. Commer. Real Est. Grp., Inc.*, 310 So. 3d 71, 73 (Fla. Dist. Ct. App. 2021). Here, TIUC and TAP (or X Corp. for that matter) never invoked the TOS against Plaintiffs. TIUC and TAP's claims in Ireland and Singapore, respectively, are tort claims that are not premised on any TOS breach and make no reference to the TOS. Whether Plaintiffs breached the TOS is simply immaterial to those claims; those claims are based on the inaccuracy of Plaintiffs' reporting about X's platform. Accordingly, TIUC and TAP, which have never affirmatively invoked the TOS, cannot be bound as third-party beneficiaries to the FSC therein. The preliminary injunction elides this distinction, wrongly converting the third-party beneficiaries into parties bound by all of the agreement's terms.

Finally, although the foreign defendants have asserted that a limitation of liability within the TOS vitiates subject-matter jurisdiction, that is not enough. Obviously, the foreign defendants need only "invoke" that clause if the Court finds some *other* ground on which to bind the foreign defendants to the TOS and subject them to personal jurisdiction and potential liability. The doctrine is not satisfied by asserting a defense *after* the purported third-party beneficiary was already sued. This is analogous to the historical special appearance, in which a defendant could contest the court's jurisdiction without subjecting itself thereto. *See Bacon v. Fed. Rsrv. Bank of S.F.*, 289 F. 513, 515-16 (E.D. Wash. 1923). Plus, the cap is also insufficient because it is not a benefit to the foreign defendants that they could sue to enforce. *See Wescott*, 2018 WL 2463614, at *8.

**B.** For many more reasons Defendants will likely prevail on the merits. First, the Court must assure itself of subject-matter jurisdiction before it can act. *S. Cal. All. of Publicly Owned Treatment Works v. EPA*, 297 F. Supp. 3d 1060, 1067 (E.D. Cal. 2018), *aff'd*, 8 F.4th 831 (9th Cir. 2021). In this diversity case, Plaintiffs cannot show the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(b). When "a contract limit[s] the plaintiff's possible recovery" to less than that, there is a "legal certainty" that the claim is for less than that amount, and jurisdiction fails. *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986); 5 FED. PRAC.

& PROC. § 1213 (4th ed.). TOS provisions have consistently capped damages at $100 for "any theory of liability." ECF 1-1 at 10-11; ECF 40-3 at 9-10. Such presumptively valid terms are routinely enforced in jurisdictional analyses. 14B FED. PRAC. & PROC. JURIS. § 3712 (5th ed.); 187 AM. JUR. PROOF OF FACTS 3d 277 at § 11; ECF 51 at 4-5 (collecting cases). Further, neither injunctive nor declaratory relief helps Plaintiffs. The "amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977); 14B FED. PRAC. & PROC. JURIS. § 3707 (5th ed.). Here, the value is $0 because attorneys' fees not provided by statute or contract are non-cognizable, *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010 (N.D. Cal. 2002), or are TOS-capped at $100.

The negligible value of an antisuit injunction against Irish and Singaporean proceedings is insufficient. First, the damages open to the foreign entities in those cases cannot form the basis of that value. *Contra Cisco Sys., Inc. v. GTEC, C. por A.*, 2011 WL 13253336, at *2 (N.D. Cal. Sept. 27, 2011). The foreign entities could still sue in the US for their damages under Plaintiffs' theory— Plaintiffs do not seek an injunction barring the foreign parties from doing so. ECF 16 at 29. Under Plaintiffs' theory, the foreign entities can bring the similar claims in the US, Plaintiffs would be required to defend them in the US, and Plaintiffs would be subject to the same damages exposure in the US as in Ireland and Singapore. Thus, Plaintiffs' total damages exposure in the foreign litigation is unaltered and not a measure of the "amount at stake" here. *Griggs v. Credit Sols. of Am., Inc.*, 2009 WL 911420, at *2-3 (E.D. Mo. Mar. 31, 2009). So, too, with attorneys' fees. *Id.*

Second, in any event, Plaintiffs' pleadings are deficient on this front. Their complaint lacks any factual allegations showing the value of the requested injunction and the outcomes that would flow from it. Nor does the complaint try to balance those supposed (but unidentified) savings from litigating in the US against the costs of proceeding in the ordinary course in the foreign litigation. *Contra Cysco Sys.*, 2011 WL 13253336, at *2.

And to the extent that the "cost of complying with [the] injunction" is included in the amount in controversy, *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018), Plaintiffs

have not pleaded any fact to show that amount is greater than zero. That is fatal to any reliance on injunctive relief. *Id.* ("Conclusory allegations as to the amount in controversy are insufficient." (citation omitted)). Regardless, the cost to Defendants—who actually bear the court costs of complying with the injunction by halting the foreign litigation and refiling— would be minimal. Again, any injunction would not extinguish TIUC and TAP's claims but simply require they be brought elsewhere. And the "administrative costs" of compliance—for example, rewriting, printing, and mailing a deficient document—are not within the amount in controversy. *Gatton v. T-Mobile USA, Inc.*, 2003 WL 21530185, at *3-4 (C.D. Cal. Apr. 18, 2003). So even the minimal administrative expense of, e.g., filing a notice of voluntary dismissal would not be included. The case should be dismissed and the preliminary injunction withdrawn.

Next, the Court lacks personal jurisdiction over TIUC and TAP. Neither entity has any contacts with California, let alone any from which Plaintiffs' claims arise. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). As Plaintiffs' own allegations make clear, those entities instituted actions in their respective domestic fora for injuries sustained in those countries. ECF 16-24 ¶ 43; ECF 16-26 ¶ 24. There is no "relationship" between this forum and the foreign defendants, who neither "direct[ed their] activities" to California, nor conducted activities here. *Briskin v. Shopify, Inc.*, 2025 WL 1154075, at *6-7 (9th Cir. Apr. 21, 2025) (en banc). Plaintiffs have alleged no facts suggesting that TIUC and TAP are X Corp. alter egos such that jurisdiction could exist. Both Nevada and California law refute that idea. *Ene v. Graham*, 546 P.3d 1232, 1236-37 (Nev. 2024); *In re Boon Global Ltd.*, 923 F.3d 643, 653 (9th Cir. 2019) (California law). And any reliance on the so-called "closely related doctrine" must be rejected: applying it against a non-signatory defendant "implicates a constitutional due process problem by circumventing the minimum-contacts requirement." *Firexo, Inc. v. Firexo Grp. Ltd*, 99 F.4th 304, 312 (6th Cir. 2024).

Third, venue is improper in this Court and appropriately exercised elsewhere. Plaintiffs failed to allege that any defendant "resides" in this district; no "events giving rise to the [breach of contract] claim occurred" here. 28 U.S.C. § 1391; *Serafin v. Realmark Hldgs., LLC*, 2023 WL 7110708, at *6 (N.D. Cal. Oct. 26, 2023). Rather, at least for X Corp., the right forum per the FSC

13

is Texas. *See* ECF 40 at 8-9; ECF 51 at 13-14. Each Plaintiff affirmed and agreed to that term before filing this suit. ECF 40-10 ¶¶ 5-7. Because that clause governs, *TradeComet.com*, 693 F. Supp. 2d at 375-76, the Court should transfer as to X Corp. and dismiss as to TIUC and TAP per either 28 U.S.C. § 1404 or § 1406. Even under a traditional forum non conveniens analysis, Texas, Ireland, and Singapore are the most appropriate fora for the respective Defendants. Each is an available and adequate forum offering a remedy for the supposed harms alleged, and both private and public interest factors support transfer to Texas for X Corp. and dismissal for TIUC and TAP. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002).

As to the claims' merits, Plaintiffs are not entitled to the relief they seek for multiple reasons. Critically, Plaintiffs waived or forfeited their right to rely on the FSC. *S&J Rentals, Inc. v. Hilti, Inc.*, 294 F. Supp. 3d 978, 984 (E.D. Cal. 2018). At a minimum, by filing two dispositive motions in the Texas action—without arguing the FSC applied despite citing it—Plaintiffs made the affirmative choice to forgo that defense and to waive or forfeit the FSC. *Se. Power Grp., Inc. v. Vision 33, Inc.*, 855 F. App'x 531, 536 (11th Cir. 2021). And Plaintiffs' counsel confirmed that affirmative choice at argument. ECF 58 at 10:15-20 (describing the "considered decision . . . in those particular courts"). A party shows clear intent to waive an FSC when it "substantially participate[s] in the litigation to a point inconsistent with an intent" to enforce the clause. *Baton v. Ledger SAS*, 2025 WL 416360, at *6 (N.D. Cal. Feb. 6, 2025). Plaintiffs' conduct plainly shows an intent to relinquish any right to enforce the clause.

Nor does the FSC cover the Texan, Irish or Singaporean claims. FSCs do not cover all litigation between parties, but only claims requiring interpreting agreements or deciding whether parties complied therewith. *See In re Orange, S.A.*, 818 F.3d 956, 962-63 (9th Cir. 2016). No such interpretation or determination is necessary in the Texan, Irish, or Singaporean cases, which do not depend on whether Plaintiffs breached any term through X platform use. The operative fact is Plaintiffs lied in articles they published. Those claims are outside the FSC scope because those lies are neither an "aspect of the relationship" with nor "arising from or related to" the TOS or the Services. ECF 40 at 16-17. Put simply, X's terms—and its contractual relationship with Plaintiffs

14

generally—are not intertwined with defamation and tortious interference. *See CZ Servs., Inc. v. Express Scripts Holding Co.*, 2018 WL 3972030, at *2-3 (N.D. Cal. Aug. 20, 2018); *BeautiControl, Inc. v. Burditt*, 2001 WL 1149360, at *2 (N.D. Tex. Sept. 26, 2001).

Other reasons aside, Plaintiffs satisfied no *Unterweser* antisuit injunction factor. *Microsoft Corp.*, 696 F.3d at 882. Plaintiffs correctly avoid the third, *in rem* factor. Plaintiffs argued the first factor—whether foreign litigation frustrates this forum's policy—is met because of a pro-FSC policy. As Defendants have shown, no FSC governs the Irish and Singaporean cases. Plaintiffs' arguments on the second and fourth factors equally fail. Those ask whether the foreign litigation is vexatious or oppressive and if it prejudices "other equitable considerations." *Id.* Plaintiffs appear to assert that a party cannot sue in its domestic forum for harm felt there just because a related entity is also suing in its own domestic forum for a different harm from the same wrong. That notion is without support. As stated, each Defendant instituted and maintained litigation against Plaintiffs in good faith for discrete and quantifiable harms. ECF 16-24 ¶ 41-44; ECF 16-26 ¶ 22-23, 25-29, 32. Plaintiffs have no contrary evidence.

### III.    A Stay of the Injunction Will Not Harm Plaintiffs.

A stay will not harm plaintiffs. Plaintiffs sought an antisuit injunction *because* foreign proceedings had not progressed to "any substantive hearing." ECF 58 at 62:13-18. Plaintiffs distinguished jurisdictional and merits proceedings in the foreign fora, contending that an antisuit injunction was proper because neither the Irish nor Singaporean litigation had proceeded to the merits in those cases. ECF 58 at 17:13-18-7. As Plaintiffs' arguments confirm, if a stay is granted, the foreign proceedings will continue toward resolution of jurisdictional matters *initiated by Media Matters* presently before the foreign courts that could moot the antisuit injunction dispute altogether. Against that backdrop, Plaintiffs cannot complain about a stay. *Cf., e.g., Zynga, Inc. v. Vostu USA, Inc.*, 816 F. Supp. 2d 824, 830 (N.D. Cal. 2011) (noting the stay of a foreign injunction cut against harm to a party seeking an antisuit injunction domestically).

### CONCLUSION

The Court should stay its preliminary injunction pending Defendants' appeal of that order.

Dated: April 25, 2025.

Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II *
Christopher D. Hilton *
Ari Cuenin *
Michael R. Abrams *
Elizabeth Brown Fore
  SBN 200471
Alex M. Dvorscak *
Cody C. Coll *
**STONE HILTON PLLC**
600 Congress Ave.,
Suite 2350
Austin, TX 78701
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
elizabeth@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com
* Admitted *pro hac vice*

*/s/ Bradley A. Benbrook*
Bradley A. Benbrook
  SBN 177786
Stephen M. Duvernay
  SBN 250957
**BENBROOK LAW GROUP, PC**
701 University Avenue, Suite 106
Sacramento, CA 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel of record on April 25, 2025, via the Court's CM/ECF system.

*/s/ Cody C. Coll*
Cody C. Coll

## CERTIFICATE OF CONFERENCE

I hereby certify that I communicated via email with counsel for Plaintiffs on April 18, 2025, and that counsel stated this motion is opposed.

*/s/ Cody C. Coll*
Cody C. Coll