JUSTIN A. NELSON* (TX SBN 24034766)
jnelson@susmangodfrey.com
MATTHEW BEHNCKE* (TX SBN 24069355)
mbehncke@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

KATHERINE M. PEASLEE (CA SBN 310298)
kpeaslee@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (713) 516-3883

AMANDA BONN (CA SBN 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
*pro hac vice

Attorneys for Plaintiff Media Matters for America
(Additional parties and counsel listed with signature)

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| MEDIA MATTERS FOR AMERICA, ANGELO CARUSONE, and ERIC HANANOKI<br><br>Plaintiff,<br><br>vs.<br><br>X CORP., TWITTER INTERNATIONAL UNLIMITED CO., and TWITTER ASIA PACIFIC PTE. LTD.<br><br>Defendant. | Case No. 3:25-cv-02397-VC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY**<br><br>**Date and Time**: June 6, 2025, 10:00 AM<br>**Place**: Courtroom 4 – 17th Floor<br>450 Golden Gate Avenue,<br>San Francisco, CA 94102 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...........................................................................................................1

II.     BACKGROUND ON THE STATE OF THE IRELAND LITIGATTION.......................2

III.    STATEMENT OF ISSUES TO BE DECIDED ............................................................2

IV.     ARGUMENT .................................................................................................................2

        A.      X has not shown it will suffer irreparable harm absent a stay. ................................3

        B.      The Court's April 10 Order is correct. ..................................................................4

        C.      A stay prejudices Media Matters and the public interest does not favor
                one. .........................................................................................................................14

V.      CONCLUSION ............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado v. Wolf,*
   952 F.3d 999 (9th Cir. 2020) ................................................................................2, 3

*Allen v. Bedolla,*
   787 F.3d 1218 (9th Cir. 2015) ...................................................................................7

*Alutiiq Int'l Sols. v. OIC Marianas Ins. Corp.,*
   305 F.R.D. 618 (D. Nev. 2015)................................................................................13

*Applied Med. Distrib. Corp. v. Surgical Co. BV,*
   587 F.3d 909 (9th Cir. 2009) .......................................................................1, 14, 15

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.,*
   571 U.S. 49 (2013)..................................................................................................12

*BeautiControl, Inc. v. Burditt,*
   2001 WL 1149360 (N.D. Tex. Sept. 26, 2001)........................................................5

*Brady v. Mercedes-Benz USA, Inc.,*
   243 F. Supp. 2d 1004 (N.D. Cal. 2002) .................................................................10

*Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.,*
   622 F.3d 996 (9th Cir. 2010) ..................................................................................11

*Chan v. Soc'y Expeditions, Inc.,*
   39 F.3d 1398 (9th Cir. 1994) ..................................................................................11

*Cisco Sys., Inc. v. GTEC,*
   2011 WL 13253336 (N.D. Cal. Sept. 27, 2011) ......................................................8

*Creative Realty Partners, Inc. v. Michaelson Real Estate Group, LLC,*
   2022 WL 16935330 (C.D. Cal. Sept. 13, 2022) ......................................................8

*Cuviello v. City of Vallejo,*
   944 F.3d 816 (9th Cir. 2019) ..................................................................................13

*CZ Services, Inc. v. Express Scripts Holding Co.,*
   2018 WL 3972030 (N.D. Cal. Aug. 20, 2018) ........................................................5

iii

*E. & J. Gallo Winery v. Andina Licores S.A.*,
    446 F.3d 984 (9th Cir. 2006) ........................................................................................12, 13

*Firexo, Inc. v. Firexo Group Ltd*,
    99 F.4th 304 (6th Cir. 2024) ....................................................................................................8

*Galt G/S v. JSS Scandinavia*,
    142 F.3d 1150 (9th Cir. 1998) ...............................................................................................10

*Geographic Expeditions, Inc. v. Est. of Lhotka*,
    599 F.3d 1102 (9th Cir. 2010) ...............................................................................................10

*Griggs v. Credit Sols. of Am., Inc.*,
    2009 WL 911420 (E.D. Mo. Mar. 31, 2009) ..........................................................................9

*Hamilton v. State Farm Fire & Cas. Co.*,
    270 F.3d 778 (9th Cir. 2001) ...................................................................................................5

*Hart v. Facebook*,
    3:21-cv-01543-W, ECF 45 (Feb. 2, 2022, S.D. Cal.) ..............................................................5

*HDOS Franchise Brands, LLC v. El Paso Hot Dog, LLC*,
    2021 WL 5629923 (S.D. Cal. June 29, 2021)........................................................................11

*Helfand v. Gerson*,
    105 F.3d 530 (9th Cir. 1997) ...................................................................................................7

*Hicks v. Utiliquest, LLC*,
    736 F. Supp. 3d 849 (E.D. Cal. 2024)......................................................................................7

*Int'l Customs Assocs. v. Ford Motor Co.*,
    893 F. Supp. 1251 (S.D.N.Y. 1995).........................................................................................6

*Ismart Int'l Ltd. v. I-Docsecure, LLC*,
    2005 WL 588607 (N.D. Cal. Feb. 14, 2005) ...........................................................................6

*JW Gaming Dev., LLC v. James*,
    544 F. Supp. 3d 903 (N.D. Cal. 2021) ...................................................................................15

*Kung v. FOM Inv. Corp.*,
    563 F.2d 1316 (9th Cir. 1977) ...............................................................................................13

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ...............................................................................................1, 3

*Leo India Films Ltd. v. GoDaddy.com, LLC*,
    840 F. App'x 227 (9th Cir. 2021) (unpublished) ...................................................................10

iv

*MacGregor v. Rutberg*,
    478 F.3d 790 (7th Cir. 2007) ..................................................................................7

*Microsoft Corp. v. Lindows.com, Inc*,
    319 F. Supp. 2d 1219 (W.D. Wash. 2004)..............................................................4

*Microsoft Corp. v. Motorola, Inc.*,
    696 F.3d 872 (9th Cir. 2012) ................................................................................14

*N.F. Gozo Corp. v. Kiselman*,
    960 N.Y.S.2d 846 (N.Y. App. Div. 2012) ..............................................................6

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*,
    319 F. Supp. 2d 1059 (C.D. Cal. 2003) ..................................................................6

*New England Mortgage Sec. Co. v. Gay*,
    145 U.S. 123 (1892)................................................................................................9

*Nken v. Holder*,
    556 U.S. 418 (2009)................................................................................................3

*In re Orange, S.A.*,
    818 F.3d 956 (9th Cir. 2016) ..................................................................................5

*Pachinger v. MGM Grand Hotel-Las Vegas*,
    802 F.2d 362 (9th Cir. 1986) ................................................................................11

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
    352 F. Supp. 2d 1048 (N.D. Cal. 2004) ..................................................................9

*Prakash Jones v. Morris*
    *+ D'Angelo*, 2024 WL 4428980 (N.D. Cal. Oct. 4, 2024).....................................10

*Quinault Tribe of Indians of Quinault Reservation in State of Wash. v. Gallagher*,
    368 F.2d 648 (9th Cir. 1966) ..................................................................................9

*Ruderman v. Rolls Royce Motor Cars, LLC*,
    511 F. Supp. 3d 1055 (C.D. Cal. 2021) ..................................................................7

*Sun v. Adv. China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ................................................................................5

*TradeComet.com LLC v. Google, Inc.*,
    693 F. Supp. 2d 370 (S.D.N.Y. 2010)...................................................................12

*Trans-Tec Asia v. M/V HARMONY CONTAINER*,
    435 F. Supp. 2d 1015 (C.D. Cal. 2005), *aff'd*, 518 F.3d 1120 (9th Cir. 2008).........................6

*Wescott v. Reisner*,
No. 17-cv-06271-EMC, 2018 WL 2463614 (N.D. Cal. June 1, 2018).....................................6

*X Corp. v. Media Matters et al.*,
4:23-cv-01175 (N.D. Tex.) ...................................................................................................13

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................................................14

**Other Authorities**

187 Am. Jur. Proof of Facts 3d 277 (2021) ...............................................................................11

21 Williston on Contracts § 57:19 (4th ed.) (2024)....................................................................6

PLAINTIFFS' OPP. TO MOT. TO STAY, Case No.: 3:25-cv-02397-VC

## I.     INTRODUCTION

On April 10, this Court correctly enjoined X's litigation against Media Matters in Ireland (filed by Twitter International Unlimited Co. ("TIUC")), as well as any future foreign litigation premised on the same allegations, due to the binding forum selection clause in X's Terms of Service. ECF 56. Nothing in X's Motion warrants staying that injunction. *First*, X has not demonstrated that it will suffer any irreparable harm absent a stay. This alone dooms its motion. *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011). *Second*, X has not shown that it will likely succeed on the merits. Rather, it repeats the same arguments this Court already considered and, rightly, rejected. *Third*, Media Matters would be prejudiced by a stay. Require Media Matters to continue litigating in Ireland would require it to further divert time and resources away from its defenses in other jurisdictions (and its regular work). *Fourth*, the public interest does not favor a stay. There is a strong public interest in the enforcement of forum selection clauses. And while X spends ample space in its brief dedicated to comity—which falls under the public interest factor—comity is not implicated by enforcement of a valid forum selection clause. *Applied Med. Distrib. Corp. v. Surgical Co. BV*, 587 F.3d 909, 920 (9th Cir. 2009). X's stay request should be denied.

X's wrongly claims that this Court's ruling rests on two incorrect premises. First, X quotes Media Matters' counsel to claim that Plaintiffs' failure to raise the forum selection clause ("FSC") in this Court sooner was a "considered decision," but in doing so it takes the quote out of context. Mot. at 1. As made clear by the hearing transcript that X cites, the decision to focus arguments in the foreign jurisdictions on the legal bases most appropriate for those jurisdiction was the "considered decision" being referenced—not any decision with respect to filing in this forum. ECF 58, 10:15–20. Second, X claims that Media Matters incorrectly represented that "the parties" in Ireland "haven't filed their briefs on Media Matters's jurisdictional challenge"—but that is absolutely true, and X's motion does not demonstrate otherwise. Rather, X states that the parties had submitted expert testimony and factual affidavits, Mot. at 1, which is precisely what Media Matters has also represented. ECF 50-1, ¶¶3–4. However, no party has yet filed their legal argument brief in Ireland. *Id*. The claim that Media Matters misrepresented the Irish proceedings

is not supported, either by X's brief or by the record. And X's claim that Media Matters' jurisdictional challenge in Ireland "would have swiftly moved toward resolution but for this lawsuit," Mot. at 2, ignores that no briefing schedule on that challenge has yet been set; no hearing had been scheduled; and the next available hearing in the Irish court would likely not be until December 2025 or January 2026. Smith Decl. ¶6; *see also* ECF 50-1, ¶4. Indeed, TIUC itself has acknowledged that it has been "unable to progress the Proceedings" in Ireland due to Media Matters' threshold jurisdictional challenge. Smith Decl. Ex. KS1 at 4.

Nothing in X's Motion changes the analysis regarding the propriety of an injunction barring X's suit in Ireland and similar future foreign suits. The Court should deny X's request for a stay.

## II.     BACKGROUND ON THE STATE OF THE IRELAND LITIGATTION

Following the Court's April 10 Order granting an injunction as to X's Ireland case and future foreign cases, X and TIUC refused to fully adjourn the Ireland case. Smith Decl. ¶4 & Ex. KSI at 4–5. Accordingly, a "for mention" hearing proceeded before the Ireland Court on May 7. Smith Decl. ¶3. While TIUC asked that court for an adjournment until a fixed date in October 2025 in light of this Court's April 10 Order, the Ireland court held in an oral order that a general adjournment was appropriate and would not prejudice X. *Id*. ¶6. Accordingly, the Irish proceeding has been indefinitely adjourned with either party being free to seek to reopen the matter upon a week's notice to the opposing party. *Id*.

## III.    STATEMENT OF ISSUES TO BE DECIDED

Whether this Court should stay its partial grant of Plaintiffs' motion for a preliminary injunction, where X has shown no imminent irreparable harm nor any error in the Court's decision.

## IV.     ARGUMENT

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 (9th Cir. 2020) (citation omitted). Rather, "[i]t is instead 'an exercise of judicial discretion,'" and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id*. (citations omitted). When deciding a motion to stay an order pending appeal, courts consider four factors: (1) "whether the stay

applicant has made a strong showing that he is likely to succeed on the merits," (2) "whether the applicant will be irreparably injured absent a stay," (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding," and (4) "where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 433 (2009). "'The first two factors ... are the most critical'; the last two are reached only 'once an applicant satisfies the first two factors.'" *Al Otro Lado*, 952 F.3d at 1007 (quoting *Nken*, 556 U.S. at 434–35). Here, none of the factors favor X.

### A.      X has not shown it will suffer irreparable harm absent a stay.

"[I]f the petitioner has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Leiva-Perez*, 640 F.3d at 965; *see Al Otro Lado*, 952 F.3d at 1007 ("An applicant for a stay pending appeal must show that a stay is necessary to avoid likely irreparable injury to the applicant while the appeal is pending."). X has not shown that it will likely suffer irreparable harm absent a stay. Its request must therefore be denied.

X's argument regarding irreparable harm consists of two paragraphs, on page eight of its motion, in which it proclaims that "Defendants will be irreparably harmed absent a stay"—but then fails to explain why that is so. Instead, X argues first that the Court's order harms international comity. As explained *infra*, that is incorrect; and regardless, any purported harm to comity falls under the public interest factor and does not demonstrate the required harm to X. *See infra*, p.15.

X then argues that the Court's Order will "prejudice the pending Singapore case" because Plaintiffs might there cite to this Court's decision. Mot. at 8.  However, a stay would have no effect on this supposed "harm." If Media Matters cites this Court's decision to the Singapore court, X can inform the Singapore Court that this Court's decision is pending appeal. A stay does nothing to change that posture—this Court's Order remains valid and citable whether or not its effects are stayed. Furthermore, this Court's Order makes no ultimate ruling with respect to jurisdiction in Singapore, and a Singapore Court is fully capable of determining for itself what is or is not relevant to its own jurisdictional inquiry. Finally, X has cited no caselaw for the novel proposition that the potential for another court to consider a duly-issued Order constitutes irreparable harm. Its cited

case, *Microsoft Corp. v. Lindows.com, Inc*, 319 F. Supp. 2d 1219 (W.D. Wash. 2004), is inapposite—that case does not mention irreparable harm at all.

  **B. The Court's April 10 Order is correct.**

  Though the Court need not reach X's arguments on the merits given its lack of irreparable harm, *see supra*, p.3, X's likelihood of success on the merits similarly does not support a stay. X's merits argument contains two parts: (1) TIUC and TAP are not third-party beneficiaries, and (2) the Court got most other things wrong, too. Neither will likely succeed on appeal.

  1. <u>TIUC and TAP are bound by the FSC</u>. The third-party beneficiary analysis for personal jurisdiction here has two parts: <u>*First*</u>, are TIUC and TAP third-party beneficiaries of the agreement? <u>*Second*</u>, if so, are their claims subject to the FSC? The answer to both questions is yes.

  TIUC and TAP directly benefit from the plain terms of the agreement. The Terms provide that the "X Entities," which include X's "affiliates" and "related companies," disclaim warranties for everything from "merchantability" and "non-infringement," to responsibility for harm to a user's computer or data, to liability for whether the Services are available on a "secure, or error-free basis." ECF 1, ¶100. The Terms also purport to limit TIUC and TAP's financial liability—a limitation that TIUC and TAP are invoking in this very case to argue that this Court lacks subject matter jurisdiction. Mot. at 11–12. Notably, these disclaimers are representations made directly by TIUC and TAP: Per the Terms, "THE X ENTITIES DISCLAIM" all warranties—that is, either the X Entities make the disclaimer representation themselves, or X Corp. is speaking directly on their behalf (which, in addition to supporting their third-party beneficiary status, supports either an alter ego or an agency analysis, *see* ECF 16 (Mot. for PI) at 18–21; ECF 50 (Reply ISO PI) at 7–8; ECF 60 (MTD Opp.) at 9–11). ECF 1, ¶101. Given this direct representation in the Terms, it is certainly foreseeable that both TIUC and TAP would be bound by the FSC contained therein when they chose to sue Media Matters on claims that relate to X's Services. TIUC and TAP's status as intended beneficiaries of the agreement is also bolstered by the fact that no other terms govern the conduct of a U.S.-based user of the X Services, such that if TIUC and TAP—both of whom have an interest in the use of the X Platform in their respective regions—want to pursue a

U.S.-based user for misuse in the Europe or the Asia Pacific region, respectively, they could do so only by looking to the X Terms (as illustrated by the demand letter from another X subsidiary, Twitter UK, that accused Media Matters of violating the X Terms, *see* ECF 1-7, ¶13).

Given that TIUC and TAP are third-party beneficiaries of the contract, the remaining question is whether their affirmative claims against Media Matters fall within the scope of the FSC such that they were required to file them in this District. They do, as they plainly "relate[] to" "the Services" provided by X. ECF 1, ¶ 94. X's repeated argument that the FSC applies only to "claims requiring interpreting agreements or deciding whether parties complied therewith," Mot. at 11, ignores both clear Ninth Circuit law and X's own prior arguments. As Plaintiffs' have explained, in *Hart v. Facebook*, Twitter argued that the "dispute at issue 'need not grow out of the contract or require interpretation of the contract' to be within the purview of the [FSC]," ECF 50-5 (Twitter Mot. to Transfer) at 7–8 (citation omitted); *see id.* at 12–13. The court adopted Twitter's argument and granted transfer. ECF 50-6 (Order Granting Transfer) at 6–7. Having argued and won on the point that a claim falls within the scope of its FSC so long as a claim has "some logical" connection to the Services and need not "require interpretation of the contract," X cannot now advance a different theory. *Id.*; *Hamilton v. State Farm Fire & Cas. Co*., 270 F.3d 778, 782 (9th Cir. 2001). That is particularly so given that Ninth Circuit caselaw confirms X's prior position was correct. *Sun v. Adv. China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (a dispute "need not grow out of the contract or require interpretation of the contract in order to relate to the contract").

X again cites to *In re Orange, S.A*., 818 F.3d 956 (9th Cir. 2016) and *CZ Services, Inc. v. Express Scripts Holding Co*., 2018 WL 3972030 (N.D. Cal. Aug. 20, 2018), again ignoring that the respective forum selection clauses in those cases specified that they only governed claims "arising out of or relat[ing]" to "the Agreement." 818 F.3d at 962; 2018 WL 3972030, at *2. The same is true of *BeautiControl, Inc. v. Burditt*, 2001 WL 1149360, at *2 (N.D. Tex. Sept. 26, 2001) (clause applied to matters "arising under this Agreement"). The clause at issue here is broader, applying to disputes "related to these Terms *or the Services*." ECF 1, ¶ 94 (emphasis added).

X's claim that a third-party beneficiary is "not held to have agreed in absentia to all of the

contract's provisions" and thus "cannot breach the contract" is a red herring, Mot. at 9 (citing to treatises)[1]—Media Matters is not seeking to hold TIUC and TAP "to all of the contract's provisions." Rather, it seeks to enforce one specific provision—the FSC—which squarely applies to TIUC and TAP's affirmative claims against Media Matters. *Trans-Tec Asia v. M/V HARMONY CONTAINER*, 435 F. Supp. 2d 1015, 1028 n.17 (C.D. Cal. 2005), *aff'd*, 518 F.3d 1120 (9th Cir. 2008) ("[U]nder well-established precedent a third-party beneficiary can be bound to the terms of a forum-selection clause contained in the contract to which it is a beneficiary" (collecting cases)). The Court recognized exactly this distinction at the preliminary injunction hearing: As the Court noted, "the point is that the third-party beneficiary *is the plaintiff* in these foreign actions." ECF 58, 44:4–5 (emphasis supplied). Had TIUC and TAP's actions been filed in the United States, Media Matters would have sought to transfer (in which case it would be seeking, as defendant, to enforce the FSC against the X entities as plaintiffs). The fact that Media Matters had to instead file an affirmative suit is a byproduct of the fact that X's subsidiaries sued abroad, making transfer impossible; but that does not negate Plaintiffs' ability to enforce the clause with respect to third-party beneficiaries' in-scope claims. X's additional case citations for the proposition that a third-party generally cannot be sued for breach of contract are irrelevant for this same reason, *see* Mot. at 10: None address the scenario here, where a third-party beneficiary has affirmatively brought claims subject to a forum selection clause, and the defendant seeks to enforce that clause against the plaintiff via a separate action.[2] X's argument that TIUC and TAP's use of the damages

---

[1] X cites to Williston on Contracts—but that same treatise acknowledges that "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through . . . third party beneficiary theories." 21 WILLISTON ON CONTRACTS § 57:19 (4th ed.).

[2] *See Wescott v. Reisner*, No. 17-cv-06271-EMC, 2018 WL 2463614, at *3 (N.D. Cal. June 1, 2018) (FSC could not be enforced against third-party Ms. Condon because "Ms. Condon is the *defendant* being sued, not the plaintiff bringing suit" (emphasis in original)); *Ismart Int'l Ltd. v. I-Docsecure, LLC*, 2005 WL 588607, at *8 n.5 (N.D. Cal. Feb. 14, 2005) (non-signatory third-party beneficiary argued it could not be liable for recission of a contract and court did not reach the issue); *Int'l Customs Assocs. v. Ford Motor Co*., 893 F. Supp. 1251, 1256 (S.D.N.Y. 1995) (plaintiff could not sue third party beneficiary that had not itself sued); *N.F. Gozo Corp. v. Kiselman*, 960 N.Y.S.2d 846, 848 (N.Y. App. Div. 2012) (same); *Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc*., 319 F. Supp. 2d 1059, 1068 (C.D. Cal. 2003) (a third-party beneficiary cannot be sued for failure to perform obligations it never had a duty to perform).

limitation as a defense "*after*" being sued cannot establish any benefit to them similarly ignores that it was TIUC and TAP that first sued Media Matters. Mot. at 11 (emphasis by X).

None of X's additional case cites change the analysis. X cites *Ruderman v. Rolls Royce Motor Cars, LLC*, 511 F. Supp. 3d 1055 (C.D. Cal. 2021) for the proposition that a "sophisticated signatory" can name a third-party beneficiary, *id.* at 1059; but X ignores that in that case, by referring to "affiliates," the agreement *did* include non-signatory Rolls Royce (as the contract here includes benefits for "affiliates")—the clause Rolls Royce sought to enforce was just narrower than the full list of beneficiaries otherwise named in the agreement. *Id.* at 1058–59. Here, by contrast, the FSC applies to "[a]ll disputes related to . . . the Services," without narrowing the application to just those disputes between specific parties. In *Hicks v. Utiliquest, LLC*, 736 F. Supp. 3d 849 (E.D. Cal. 2024), non-signatory Utiliquest *was* a third-party beneficiary of the agreement signed by its parent—so too here. *Id.* at 859. X again cites *Helfand v. Gerson*, 105 F.3d 530 (9th Cir. 1997), which simply states that "[c]ourts have extended the right to sue for breach of contract to intended third-party beneficiaries." *Id.* at 538. And it repeats its citation to *MacGregor v. Rutberg*, 478 F.3d 790 (7th Cir. 2007), which explains that third-party beneficiary analysis is "about the intentions of the parties concerning who should be able to enforce the contract or selected parts of it." *Id.* at 794. The FSC at issue broadly applies to "[a]ll disputes" related to the Services, and TIUC and TAP are given express benefits in the only agreement governing U.S. users of the platform they represent in their respective regions. The contract contemplates they can enforce the agreement. To illustrate the point, the Terms similarly contemplate that X Corp.'s "officers" can enforce the clause, ECF 1, ¶100—and X has in fact argued that its chairman, Elon Musk, can enforce the forum selection clause in light of its "broad language" encompassing "[a]ll disputes related to . . . the Services." ECF 50-3 (X Mot. to Transfer, *Boose v. Musk*) at 11.

The Ninth Circuit "may affirm on any basis supported by the record, whether or not relied upon by the district court." *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015). Thus, regardless of whether the Court reaches the alternative bases for finding TIUC and TAP bound—namely, under an alter ego/agency theory or the closely related test—the Ninth Circuit may affirm on either

ground as well. X makes no new argument on either point. With respect to alter ego, X argues only that "[b]oth Nevada and California law refute" finding TIUC and TAP are X Corp.'s alter egos for the purpose of this litigation so as to support personal jurisdiction (the standard for which "is lower than the standard for liability under an alter ego theory," *Creative Realty Partners, Inc. v. Michaelson Real Estate Group, LLC*, 2022 WL 16935330, at *4 (C.D. Cal. Sept. 13, 2022)), while ignoring Plaintiffs' arguments on the issue, *see, e.g.*, ECF 50 (Reply ISO PI) at 7–8; ECF 60 (MTD Opp.) at 9–11. With regard to the "closely related" standard, X doubles-down on its citation of *dicta* from *Firexo, Inc. v. Firexo Group Ltd*, 99 F.4th 304, 312 (6th Cir. 2024) to claim that the "closely related" test "implicates a constitutional due process problem by circumventing the minimum-contacts requirement"—again (as in its prior brief) ignoring that the Sixth Circuit both cited cases allowing forum selection clauses to establish personal jurisdiction over non-signatories, and also acknowledged that the Ninth Circuit uses the "closely related" test. *Id.* at 312–313, 323.

2a.    <u>The Court has subject matter jurisdiction</u>. The $75,000 amount in controversy necessary for diversity jurisdiction is met by (1) the value of the injunction (whether assessed from the perspective of Defendants' lost opportunity or Plaintiffs' saved expenses), and (2) the attorneys' fees Plaintiffs have been forced to expend in the improperly-filed foreign actions.

<u>*First*</u>, Defendants seek tens of millions of dollars in their foreign actions against Plaintiffs. Those amounts satisfy the amount in controversy requirement, as an injunction barring prosecution of those suits eliminates X's ability to pursue those amounts. *See Cisco Sys., Inc. v. GTEC*, 2011 WL 13253336, at *2 (N.D. Cal. Sept. 27, 2011). X argues that those amounts "cannot form the basis" of the amount in controversy because TIUC and TAP could refile in this jurisdiction. X cites no caselaw—instead simply adding a "*contra*" cite to *Cisco Systems* (a case that supports Plaintiffs)—because its request that this Court discount the amount in controversy based on future hypothetical events is contrary to the law. The Supreme Court long ago held that "[i]t is well settled" that, "when our jurisdiction depends upon the amount in controversy, it is determined by the amount involved in the particular case, and not by any contingent loss either one of the parties may sustain by the probative effect of the judgment, however certain it may be that such loss will

occur." *New England Mortgage Sec. Co. v. Gay*, 145 U.S. 123, 130 (1892); *see Quinault Tribe of Indians of Quinault Reservation in State of Wash. v. Gallagher*, 368 F.2d 648, 655 (9th Cir. 1966) ("[J]urisdiction depends upon the matter directly in dispute in the particular cause, and the court is not permitted, for the purpose of determining its sum or value, to estimate its collateral effect."). X's own cited authority makes this same point. In *Griggs v. Credit Sols. of Am., Inc*., 2009 WL 911420 (E.D. Mo. Mar. 31, 2009), the court *declined* to consider the amount potentially recoverable in future litigation that could follow from the court's ruling when determining whether plaintiff had satisfied the amount in controversy. *Id*. at *2–3. As the *Griggs* court explained, "The Court must determine the amount in controversy 'by looking at what is involved in the case before the court, rather than by trying to predict possible effects resulting from judgment.'" *Id*. at *3 (citation omitted). That is exactly right.

Whether TIUC and TAP would actually refile is entirely speculative—X itself has argued that requiring TIUC and TAP to litigate here would be inconvenient. *See, e.g*., ECF 51 at 14–15. By contrast, Plaintiffs' requested relief would eliminate millions in now-existing damages exposure in X's pending foreign actions. That satisfies the amount in controversy.

The value of the injunction to Plaintiffs—that is, the amount they will save in legal fees and costs as a consequence of not litigating X's foreign claims—similarly satisfies the amount in controversy. Again, hypothetical future expenses that could potentially be incurred as a result of the Court's judgment are not relevant to assessing the value of the injunction—Plaintiffs are not required to "balance" wholly speculative and contingent future costs against the necessary cost of defending itself against existing litigation.

<u>Second</u>, X repeats its incorrect argument that "attorneys' fees not provided by statute or contract are non-cognizable," Mot. at 12—ignoring that "in California, a party may recover attorney fees not only on a statutory/contractual fee-shifting basis, but also as consequential damages in breach of contract actions when those fees are foreseeable and proximately caused by the breach." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)

(citation omitted).[3] As explained in Plaintiffs' Motion to Dismiss Opposition, Courts in this district have specifically permitted a party to recover attorneys' fees incurred as a consequence of a defendant's breach of a forum selection clause. *See* ECF 60 at 5–6 (collecting cases). X's cited cases do not change this. Rather, in *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998), the court simply included statutory fees in the amount in controversy—the case it cites for the proposition that "attorneys' fees are excludable in determining the amount in controversy" is in reference to attorneys' fees incurred in the same case where the damages are sought, not attorneys' fees incurred in a *different* case and claimed as damages in a separate action for breach of contract. And *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004 (N.D. Cal. 2002), cites *Galt* for the proposition that attorneys' fees are not considered part of the amount in controversy, again, in reference to fees incurred *in that case*. It contains no discussion of attorneys' fees from a separate matter which, if proximately caused by a breach, are recoverable as damages for that breach. To be clear, Plaintiffs do not seek to include their attorneys fees from *this* case as part of the amount in controversy—only their fees from the matters filed by X in breach of its own FSC.

As for the purported limitation on liability, "just because [X] might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean [it] will ultimately prevail on that defense." *Geographic Expeditions*, 599 F.3d 1102, 1108 (9th Cir. 2010). It is thus not a "legal certainty" that Plaintiffs' expenses from X's improperly filed actions—which total in the millions, ECF 1, ¶16—will fall below the jurisdictional amount. *See Leo India Films Ltd. v. GoDaddy.com, LLC*, 840 F. App'x 227, 228 (9th Cir. 2021) (unpublished) (remanding district court's order finding, as a legal certainty, that the amount in controversy was not met where a contract capped damages at $10,000 because the order failed to consider *Geo. Expeditions*).

Regardless, as Plaintiffs have explained, this case presents a paradigmatic unconscionable

---

[3] X quotes *Prakash Jones v. Morris + D'Angelo*, 2024 WL 4428980, at *9 (N.D. Cal. Oct. 4, 2024) in its motion to dismiss reply to argue that "Plaintiffs *may not* recover the attorneys' fees incurred in this action as consequential damages," ECF 63 at 4 (emphasis by X); but X ignores the distinction between attorneys' fees "incurred in this action," which may not be recovered as consequential damages, and attorneys' fees incurred in *another* action, which, *Prakash* explains, *can* be so recovered. 2024 WL 4428980, at *9 (allowing fees from a separate action as damages).

damage limitation. *See* ECF 60 (Plfs.' MTD Opp.) at 3–5. X's damages limitation, which under the present facts would allow X to (1) breach its own form contract, (2) sue Plaintiffs for hundreds of millions of dollars as part of that breach, and (3) bar Plaintiffs from seeking relief for X's breach, is the height of substantive unconscionability. *Id.* at 4. And, as a contract of adhesion, X's Terms meet the minimum level of procedural unconscionability. *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010). None of the treatises cited by X requires this Court to blindly enforce a contractual damages limitation when a party demonstrates the provision is unconscionable under the circumstances. *See* Mot. 12. On the contrary, they confirm that a contractual limitation can only possibly limit the amount in controversy "if a court determines the limitation is valid and enforceable." 187 Am. Jur. Proof of Facts 3d 277 at § 11. And X's cited case, *Pachinger v. MGM Grand Hotel-Las Vegas*, 802 F.2d 362, 364 (9th Cir. 1986), confirms that where a "measure of damages [] limits liability," a court must still "determin[e] the applicability of the rule or measure of damages." *Id.* at 364. The Terms' damages limitation cannot apply here.

2b.    <u>The Court has personal jurisdiction</u>. A binding forum selection clause waives objections to personal jurisdiction. *See, e.g., Chan v. Soc'y Expeditions, Inc.,* 39 F.3d 1398, 1406 (9th Cir. 1994); *HDOS Franchise Brands, LLC v. El Paso Hot Dog, LLC*, 2021 WL 5629923, at *3–5 (S.D. Cal. June 29, 2021). TIUC and TAP are bound by the FSC, whether under a third-party beneficiary, alter ego, or "closely related" theory. *See supra*, pp.4–8. Plaintiffs address X's cursory arguments regarding alter ego and the closely related test above, pp.7–8; and Plaintiffs have repeatedly briefed these same arguments. ECF 50 at 7–8; ECF 60 at 9–12; *see* ECF 16 at 18–21.

2c.    <u>Venue is proper here</u>. Venue is proper in this District pursuant to the FSC. S*ee, e.g., HDOS Franchise*, 2021 WL 5629923, at *3–5. X argues that its new, amended terms—which designate venue in the Northern District of Texas—should govern; but its argument ignores the plain language of the Terms. Plaintiffs have sued X for breaching the terms in place at the time X filed its lawsuits against Media Matters (during the period from November 2023 through July 2024), which state that "[a]ll disputes related to *these Terms*" must be heard in San Francisco County, California. ECF 16-2 at 10 (emphasis added). Having brought a dispute related to those

Terms, Plaintiffs were required to file in this District. And while the Terms allow for modification, they also state that any "changes will not be retroactive." ECF 1-1 at 11. This is a critical difference between the instant matter and the case cited by X, *TradeComet.com LLC v. Google, Inc*., 693 F. Supp. 2d 370, 375 (S.D.N.Y. 2010): There, plaintiff TradeComet.com argued that the version of a forum selection clause in place at the time of the relevant conduct should govern. Neither Google nor the court disagreed that, in principle, the terms operative at the time of the conduct govern; but Google argued it had modified the terms; TradeComet.com had accepted the modification; and the modification now applied to cover the relevant conduct. *Id*. at 375. The contract at issue there— unlike X's Terms—did not disclaim retroactive application of modification (and even had language, not present here, broadly providing that the modified version "supersedes and replaces any other agreement, terms and conditions applicable to the subject matter hereof," *id.*).

X has itself argued that the governing terms are those in place at the time the relevant conduct took place—in this case, the Terms containing the FSC designating venue in this District. *See* ECF 60 (MTD Opp.) at 13–14 (citing X's *Boose* Transfer Mot.). The Terms' bar on retroactive application confirms that the governing version is that in place at the time X's suits were filed.

X's assertion that "under a traditional *forum non conveniens* analysis, Texas, Ireland, and Singapore" are more appropriate fora ignores that "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses," leaving only consideration of the public factors for a *forum non conveniens* analysis—and those will "rarely" outweigh the parties' contract. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62, 64 (2013). They certainly do not do so here. *See* ECF 60 (MTD Opp.) at 15 (addressing public interest factors).

2d.    An injunction is the appropriate means of enforcing the FSC. An injunction is the appropriate method of enforcing a forum selection clause violated by actions filed in a foreign forum. *See E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 993 (9th Cir. 2006). X's claim that Plaintiffs waived reliance on the clause in X's Texas litigation is irrelevant to their request to stay this Court's grant of an injunction in Ireland and prohibiting new foreign actions.

Mot. at 14. And the decision to raise arguments in the foreign forums that best suited those forums does not demonstrate a "clear intent to waive" the forum selection clause, Mot. at 14 (citation omitted) particularly when Plaintiffs have consistently contested jurisdiction and venue in the foreign proceedings; and the failure to raise the FSC in this Court sooner was an oversight that Media Matters' new counsel sought to remedy immediately upon entering the case, *compare X Corp. v. Media Matters et al.*, 4:23-cv-01175 (N.D. Tex.), ECF 145 (first appearance for Susman Godfrey, filed March 3, 2025); ECF 1 (N.D. Cal. Complaint, filed March 10, 2025). To be sure, a party may not use a change in counsel to avoid the consequences of their prior actions—but that is not what the Court's Order granting in part Plaintiffs' motion for injunctive relief allows.[4] On the contrary, the Court found that delay precluded an injunction in Singapore. However, delay is but one of multiple relevant factors weighed when ruling on injunctive relief, *see, e.g., Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019), and the fact that new counsel immediately filed this action  demonstrates that there was no "gamesmanship" involved. *Contra* Mot. at 6.

  As explained above—and as this Court has recognized—Plaintiffs' claims fall within the scope of the FSC. *See* ECF 56 (Order on PI). Given that, Plaintiffs necessarily satisfy the *Unterweser* factors: Defendants do not contest that a binding forum selection clause is sufficient to do so (only whether one applies here). *See Gallo*, 446 F.3d at 992. And the notion that Plaintiffs have "no [] evidence" that X's foreign litigation was not filed "in good faith" and for "discrete" harms, Mot. at 15, ignores the mountain of public evidence showing that X's foreign litigation was filed as part of a retaliatory "thermonuclear" campaign, designed to harass Media Matters and provide an avenue to get at Media Matters' "donors," all as part of a pattern of X trying to shift the blame for its advertising revenue losses to anyone but the real culprit—Elon Musk. ECF 1, ¶¶13–15, 28, 105–117. As this Court rightly found, "it seems almost certain that the X entities'

---

[4] X's cited cases address facts unlike those here. In *Kung v. FOM Inv. Corp.*, 563 F.2d 1316, 1318 (9th Cir. 1977), a party had repeatedly been warned that if his case was not prosecuted it would be dismissed. That "warning was fair; it was flagrantly ignored," and thus dismissal was proper. *Id.* And in *Alutiiq Int'l Sols. v. OIC Marianas Ins. Corp.*, 305 F.R.D. 618 (D. Nev. 2015), a party repeatedly tried to blame its lawyers for its own discovery failures, but a "pervasive pattern of discovery abuses" through multiple lawyers undermined the claim. That is nothing like this case.

decision to file multiple suits in multiple jurisdictions is designed more to bully Media Matters and inflict financial hardship upon it than to actually vindicate those entities' rights." ECF 56 at 1.

X's argument that it survived a motion to dismiss in Texas and that judicial officers in Ireland and Singapore allowed it to serve its summonses does not negate the harassing nature of those proceedings, *see* Mot. at 7 (citation omitted): Review on a Rule 12(b)(6) motion to dismiss considers only whether a pleading has stated a claim that is plausible on its face, not whether the claim is supported by the facts; and the foreign summonses issued pursuant to self-serving affidavits from X without any input from Media Matters. As the Ninth Circuit noted in *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir. 2012), "litigation may have some merit and still be vexatious." *Id.* at 886. (Of course, X's claims here have no merit at all). And while X claims that its multiple suits "seek resolution of separate issues and damages for separate harms," Mot. at 7, this ignores that its foreign complaints take their allegations directly from its Texas Complaint; and X has never proffered any evidence to counter the public information suggesting that TIUC and TAP are effectively pass-through entities whose profits and losses roll up to X Corp. *See, e.g.*, ECF 1, ¶27. X could have sought global damages in a single case filed in this District. Its attempt to instead file lawsuits "in every country that they operate" appears to be a bullying tactic.

**C.    A stay prejudices Media Matters and the public interest does not favor one.**

1.    <u>A stay will prejudice Media Matters</u>. Staying this Court's injunction would require Media Matters to continue dividing litigation efforts between three separate forums. The additional litigation in Ireland requires employee time and attention preparing affidavits, reviewing testimony from experts, and working with counsel—all of which take resources away from Media Matters' efforts to defend itself in X's other pending matters (let alone employees' ability to simply do their jobs). ECF 16-14, ¶¶5–7. Staying this Court's injunction will further prejudice Media Matters— whereas, as the court in Ireland found, adjourning the Ireland proceeding does not harm X. Indeed dismissal without prejudice would be appropriate.

2.    <u>The public interest does not favor a stay</u>. The Ninth Circuit recognizes "a strong policy favoring robust forum selection clauses." *Applied Med. Distrib.*, 587 F.3d at 918–19; *see*

ECF 56 (California policy likewise favors enforcement). That public policy weighs against a stay.

X cites *JW Gaming Dev., LLC v. James*, 544 F. Supp. 3d 903, 922 (N.D. Cal. 2021) for the proposition that there is a "great public interest in . . . comity," Mot. at 5; but it ignores the Ninth Circuit's guidance that enjoining a foreign proceeding filed in violation of a forum selection clause "does not implicate comity." *Applied Med. Distrib.*, 587 F.3d at 920. X's allegation that this Court's Order "interferes with pending foreign litigation" has no basis in reality. Mot. at 5 (citation omitted). Strictly speaking, ***every*** foreign antisuit injunction will necessarily "interfere with pending foreign litigation"—but here, any interference is minimal: No party has yet filed their legal argument briefs regarding Plaintiffs' jurisdictional challenge, no briefing schedule or hearing has even been set—the next available hearing date would not be until December. Smith Decl. ¶6.

X's claim that "whether [its] foreign entities may sue in their home jurisdictions is a question for the able courts in those jurisdictions" ignores that X's own Terms already dictate venue—and they place it in this Court.[5] Mot. at 7. A party cannot evade its own forum selection clause by filing in a foreign court in violation of the clause, then arguing that only ***that*** court can decide the issue. And X's assertion that "comity demands that 'when possible, the decisions of foreign tribunals should be given effect in domestic courts,'" ignores that there is no decision of a foreign tribunal to "be given effect." Mot. at 8 (citations omitted).

Finally, X claims that "were the foreign courts to rule on jurisdiction . . . that may moot Plaintiffs' requested injunction"—but X does not explain how or why a jurisdictional ruling in *Singapore* would moot the Court's injunction barring prosecution of proceedings in *Ireland* (and elsewhere abroad). And the Irish Court has adjourned proceedings indefinitely. Smith Decl. ¶6. Furthermore, the parties contracted for X's claims to be heard in *this* Court.

## V.    CONCLUSION

For these reasons, the Court should deny X's Motion to Stay.

---

[5] X's defense of courts' ability to decide for themselves whether matters are properly before them appears to apply only to its preferred fora, as it continues to ask the Texas court to enjoin Plaintiffs from proceeding before this Court. *See* Peaslee Decl. Ex. A (X's 4/12/25 filing in N.D. Tex.) at 5.

Dated: May 9, 2025

By:  */s/ Justin A. Nelson*

JUSTIN A. NELSON* (TX SBN 24034766)
jnelson@susmangodfrey.com
MATTHEW BEHNCKE* (TX SBN 24069355)
mbehncke@susmangodfrey.com
ALEXANDRA FOULKES GRAFTON*
agrafton@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

KATHERINE M. PEASLEE (CA SBN 310298)
kpeaslee@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (713) 516-3883

AMANDA BONN (CA SBN 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
*Facsimile: (310) 789-3150*

AMER S. AHMED* (NY SBM 4382040)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Email: aahmed@gibsondunn.com

*pro hac vice*

*Attorneys for Plaintiffs Media Matters for
America, Angelo Carusone, and Eric Hananoki*

16

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document has been served on all current counsel of record via the Court's CM/ECF system on May 9, 2025.

*/s/ Justin A. Nelson*

Justin A. Nelson

PLAINTIFFS' OPP. TO MOT. TO STAY, Case No.: 3:25-cv-02397-VC