**BENBROOK LAW GROUP, PC**
Bradley A. Benbrook (SBN 177786)
Stephen M. Duvernay (SBN 250957)
701 University Avenue, Suite 106
Sacramento, CA 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

**STONE HILTON PLLC**
Judd E. Stone II *
Christopher D. Hilton *
Ari Cuenin *
Michael R. Abrams *
Elizabeth Brown Fore (SBN 200471)
Alexander M. Dvorscak *
Cody C. Coll*
600 Congress Ave., Suite 2350
Austin, TX 78701
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
elizabeth@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com
* Admitted *pro hac vice*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MEDIA MATTERS FOR AMERICA, ANGELO CARUSONE, and ERIC HANANOKI,<br><br>        *Plaintiffs*,<br><br>    v.<br><br>X CORP., TWITTER INTERNATIONAL UNLIMITED CO., and TWITTER ASIA PACIFIC PTE. LTD.,<br><br>        *Defendants*. | **Case No.: 3:25-cv-02397-VC**<br><br>**DEFENDANTS X CORP., TWITTER INTERNATIONAL UNLIMITED CO., and TWITTER ASIA PACIFIC PTE. LTD.'s NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CODE OF CIVIL PROCEDURE 425.16 (ANTI-SLAPP)** |

# TABLE OF CONTENTS

Table of Contents ...................................................................................................................... i

Table of Authorities ................................................................................................................. ii

Notice of Motion and Motion .................................................................................................. 1

Introduction ............................................................................................................................. 1

Statement of the Issues to be Decided ..................................................................................... 3

Background and Allegations ..................................................................................................... 3

    I.   Defendants Sue Plaintiffs in Texas, Singapore, and Ireland for Harming X's Platform. ... 3

    II.  After Plaintiffs Improperly Sought Injunctive Relief in This Court, Defendants Moved to Dismiss Under Federal Rule of Civil Procedure 12(b)(6). ................................................... 4

    III. The U.S. District Court for the Northern District of Texas Subsequently Ruled That Plaintiffs Had Waived the Contractual Forum-Selection Rights on Which They Rely. .... 5

Argument ................................................................................................................................. 5

    I.   The Court Should Strike Plaintiffs' Complaint Under California's Anti-SLAPP Law...... 5

       A. Defendants satisfy prong one because Plaintiffs attack protected activity. .................. 6

       B. The breach of contract claims lack a reasonable probability of prevailing. ................ 8

          1. Plaintiffs have no reasonable probability of prevailing against X Corp. ................ 8

          2. Plaintiffs are also unlikely to prevail against the foreign Defendants. ................. 13

    II. Defendants Are Entitled to Attorneys' Fees. .................................................................... 15

Conclusion .............................................................................................................................. 15

Certificate of Service .............................................................................................................. 16

Certificate of Conference ........................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases:**

*Alvarez v. XPO Logistics Cartage, LLC*,
  2021 WL 5238582 (C.D. Cal. July 14, 2021) ........................................................... 6

*Bacon v. Fed. Rsrv. Bank of S.F.*,
  289 F. 513 (E.D. Wash. 1923) ............................................................................. 15

*Baral v. Schnitt*,
  1 Cal. 5th 376 (2016) ........................................................................................ 6

*Barry v. State Bar*,
  2 Cal. 5th 318 (2017) ........................................................................................ 5

*Baton v. Ledger SAS*,
  2025 WL 416360 (N.D. Cal. Feb. 6, 2025) ............................................................ 11

*BeautiControl, Inc. v. Burditt*,
  2001 WL 1149360 (N.D. Tex. Sept. 26, 2001) ....................................................... 11

*Boles v. Merscorp, Inc.*,
  2009 WL 734135 (C.D. Cal. Mar. 18, 2009) .......................................................... 12

*Brady v. Mercedes-Benz USA, Inc.*,
  243 F. Supp. 2d 1004 (N.D. Cal. 2002) ................................................................ 12

*Briggs v. Eden Council for Hope & Opportunity*,
  19 Cal. 4th 1106 (1999) ..................................................................................... 6

*CoreCivic, Inc. v. Candide Grp.*,
  46 F.4th 1136 (9th Cir. 2022) .............................................................................. 5

*Couveau v. Am. Airlines, Inc.*,
  218 F.3d 1078 (9th Cir. 2000) ............................................................................ 11

*Crittendon v. Muldrow*,
  2023 WL 2743582 (N.D. Cal. Mar. 31, 2023) .......................................................... 3

*CZ Servs., Inc. v. Express Scripts Hldg. Co.*,
  2018 WL 3972030 (N.D. Cal. Aug. 20, 2018) ........................................................ 11

*Danjaq LLC v. Sony Corp.*,
  263 F.3d 942 (9th Cir. 2001) .............................................................................. 11

*Dodson Int'l Parts, Inc. v. Williams Int'l Co. LLC*,
  12 F.4th 1212 (10th Cir. 2021) ........................................................................... 10

*Du Charme v. IBEW*,
  110 Cal. App. 4th 107 (2003) ............................................................................... 8

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002) .......................................................................................... 13

*Fennell v. Becerra*,
  2020 WL 9422373 (N.D. Cal. June 3, 2020) ............................................................ 6

*Galt G/S v. JSS Scandinavia*,
    142 F.3d 1150 (9th Cir. 1998) ................................................................................. 12

*Gray v. Don Miller & Assocs.*,
    35 Cal. 3d 498 (1984) ........................................................................................... 12

*Gunn v. Drage*,
    65 F.4th 1109 (9th Cir. 2023) ................................................................................. 6

*Hamilton v. Greenwich Investors XXVI, LLC*,
    195 Cal. App. 4th 1602 (2011) ............................................................................... 9

*Helfand v. Gerson*,
    105 F.3d 530 (9th Cir. 1997) ................................................................................. 14

*Hicks v. Utiliquest, LLC*,
    736 F. Supp. 3d 849 (E.D. Cal. 2024) ................................................................... 14

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ................................................................................. 6

*In re Orange, S.A.*,
    818 F.3d 956 (9th Cir. 2016) ................................................................................. 11

*Ismart Int'l Ltd. v. I-Docsecure, LLC*,
    2005 WL 588607 (N.D. Cal. Feb. 14, 2005) ......................................................... 14

*Kahnert v. Kotick*,
    2022 WL 2167798 (C.D. Cal. Mar. 4, 2022) ......................................................... 10

*MacGregor v. Rutberg*,
    478 F.3d 790 (7th Cir. 2007) ................................................................................. 14

*Makaeff v. Trump Univ. LLC*,
    715 F.3d 254 (9th Cir. 2013) ................................................................................. 8

*Martinez v. Welk Grp.*,
    907 F. Supp. 2d 1123 (S.D. Cal. 2012) ................................................................. 9

*MBM Fin. Corp. v. Woodlands Operating Co.*,
    292 S.W.3d 660 (Tex. 2009) ................................................................................. 12

*Metabolife Int'l, Inc. v. Wornick*,
    264 F.3d 832 (9th Cir. 2001) ................................................................................. 8

*Microsoft Corp. v. Motorola Inc.*,
    795 F.3d 1024 (9th Cir. 2015) ............................................................................... 12

*Muhammad v. YouTube, LLC*,
    2019 WL 2338503, (M.D. La. June 3, 2019) ......................................................... 9

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*,
    319 F. Supp. 2d 1059 (C.D. Cal. 2003) ................................................................. 14

*Navellier v. Sletten*,
    29 Cal. 4th 82 (2002) ........................................................................................... 6

*Patent Scaffolding Co. v. William Simpson Constr. Co.*,
   256 Cal. App. 2d 506 (1967) ...................................................................... 13

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) ...................................................................... 8

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
   352 F. Supp. 2d 1048 (N.D. Cal. 2004) ...................................................... 12

*Ray v. NPRTO Fla. LLC*,
   322 F. Supp. 3d 1261 (M.D. Fla. 2017) ...................................................... 15

*Rivero v. Am. Fed'n of State, Cnty. & Mun. Emps., AFL–CIO*,
   105 Cal. App. 4th 913 (2003) .................................................................... 8

*Ruderman v. Rolls Royce Motor Cars, LLC*,
   511 F. Supp. 3d 1055 (C.D. Cal. 2021) ...................................................... 14

*Rudgayzer v. Yahoo! Inc.*,
   2012 WL 5471149 (N.D. Cal. Nov. 9, 2012) ............................................. 13

*S&J Rentals, Inc. v. Hilti, Inc.*,
   294 F. Supp. 3d 978 (E.D. Cal. 2018) ........................................................ 10

*Sanchez v. Monumental Life Ins. Co.*,
   102 F.3d 398 (9th Cir. 1996) ...................................................................... 13

*Se. Power Grp. v. Vision 33, Inc.*,
   855 F. App'x 531 (11th Cir. 2021) .............................................................. 10

*Smith Int'l, Inc. v. Egle Grp.*,
   490 F.3d 380 (5th Cir. 2007) ...................................................................... 9

*Souza v. Westlands Water Dist.*,
   135 Cal. App. 4th 879 (2006) .................................................................... 15

*Toyrrific, LLC v. Karapetian*,
   2012 WL 5306229 (C.D. Cal. Oct. 26, 2012) ..................................... 6, 7, 12

*TradeComet.com LLC v. Google, Inc.*,
   693 F. Supp. 2d 370 (S.D.N.Y. 2010) ................................................... 3, 9

*Travelers Com. Ins. Co. v. Hall*,
   2023 WL 4291843 (C.D. Cal. Mar. 15, 2023) ............................................ 6

*U.S. News & World Rep., L.P. v. Chiu*,
   2024 WL 2031635 (N.D. Cal. May 7, 2024) ......................................... 6, 15

*United States ex rel. Newsham v. Lockheed*,
   190 F.3d 963 (9th Cir. 1999) ...................................................................... 2

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .................................................................... 7

*Wescott v. Reisner*,
   2018 WL 2463614 (N.D. Cal. June 1, 2018) ......................................... 14, 15

*Westlake Vinyls, Inc. v. Goodrich Corp.*,
    2014 WL 2816070 (W.D. Ky. June 23, 2014) ........................................................ 13

**Statutes:**

Cal. Civ. Proc. Code § 1021 ........................................................................................ 12

Cal. Civ. Proc. Code § 425.16 ...................................................................................... 5

Cal. Civ. Proc. Code § 425.16(b)(1) ............................................................................ 2

Cal. Civ. Proc. Code § 425.16(c) ................................................................................ 15

Cal. Civ. Proc. Code § 425.16(e) .................................................................................. 5

Cal. Civ. Proc. Code § 425.16(e)(1)-(2) ................................................................... 2, 6

Cal. Civ. Proc. Code § 425.16(e)(3)-(4) ...................................................................... 7

Cal. Civ. Proc. Code § 425.16(e)(4) ............................................................................ 2

**Other Authorities:**

Terms of Service,
    https://x.com/en/tos (effective Nov. 15, 2024) ........................................................ 9

Williston on Contracts (4th ed.) ............................................................................... 13

Wolters Kluwer Bouvier Law Dictionary Desk Ed.,
    *Third-Party Beneficiary* (2012) ............................................................................. 14

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 26, 2025, at 10:00 AM in Courtroom 4–17th Floor of the U.S. District Court, N.D. Cal., San Francisco Div., San Francisco Courthouse, 450 Golden Gate Ave., San Francisco, CA 94102, Defendants X Corp., Twitter International Unlimited Co. ("TIUC"), and Twitter Asia Pacific Pte. Ltd. ("TAP") will and hereby do move to strike Plaintiffs Media Matters for America, Angelo Carusone, and Eric Hananoki's Complaint ("Compl.") under California Code of Procedure Section 425.16 ("anti-SLAPP"). This Motion is made on the grounds that the state-law breach-of-contract claims in the Complaint improperly challenge protected petitioning activity and conduct otherwise protected by California's anti-SLAPP law. The Motion is based on this Notice; the Memorandum of Points and Authorities; the papers, pleadings, and documents on file herein, including, without limit, the Complaint; documents incorporated by reference thereto or properly subject to judicial notice; and any declarations and exhibits.

## INTRODUCTION

Defendants first sued Plaintiffs over a year ago in Texas, Ireland, and Singapore for defamation-based torts. Those cases have been proceeding apace, including extensive discovery, motion practice, and a Fifth Circuit interlocutory appeal. The Northern District of Texas already rejected challenges to that court's jurisdiction and venue after extensive submissions. And challenges to jurisdiction in Ireland and Singapore are pending. Unwilling to let those courts decide the issues properly before them, Plaintiffs filed this contract action, belatedly moved to transfer in the Northern District of Texas, sought a TRO, and moved for a preliminary injunction—all to stymie other courts' prior and pending decisions on jurisdiction, venue, and choice of forum.

The Northern District of Texas rejected Plaintiffs' belated attempt to transfer the litigation to this District, finding Plaintiffs waived the contractual forum-selection rights they now seek to enforce. ECF 190 at 9, *X Corp. v. Media Matters*, 4:23-CV-01175-O (N.D. Tex. May 2, 2025). The court called Plaintiffs' course of conduct for what it is: "a pattern of '[g]amesmanship,' which the Court previously warned [Plaintiffs] about." *Id.* Accordingly, the court ordered Defendant X

Corp. to submit supplemental briefing on whether Plaintiffs' motion to transfer was sanctionable because they waited to "learn[] 'which way the wind was blowing'" before requesting transfer. *Id.*

Plaintiffs' Complaint is improper for another reason: it violates the anti-SLAPP provisions in section 425.16 of the California Code of Civil Procedure because it seeks to stifle protected activity in petitioning for relief from Defendants' lies about the X Platform. The anti-SLAPP statute mitigates the chilling effect of suits attacking petitioning activities and establishes a procedure for prompt disposal of claims arising from acts "in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16. These protections apply not only in California state courts but in federal courts. *See United States ex rel. Newsham v. Lockheed*, 190 F.3d 963, 973 (9th Cir. 1999).

Here, the allegations in the Complaint for Plaintiffs' state-law breach of contract claims arise from activity expressly protected under the California anti-SLAPP statute. Plaintiffs' claims rest on the notion that Defendants are liable for "filing . . . lawsuit[s]." Compl. ¶¶ 127-29. Plaintiffs also maintain that Defendant X Corp. is liable for allegedly "directing" the filing of lawsuits as part of an alleged "litigation campaign" by Elon Musk to hold Plaintiffs accountable for statements about the X Platform. Compl. ¶ 137. The challenged conduct arose from protected activity because the law protects "any written or oral statement or writing made before a . . . judicial proceeding" and "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body," Cal. Civ. Proc. Code § 425.16(e)(1)-(2), as well as "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest," *id.* § 425.16(e)(4). Nor can there be any doubt that the activity touches on issues of public interest given the hundreds of millions of users on the X Platform and the advertisers who trust it.

Accordingly, because Plaintiffs' breach-of-contract claims arise from Defendants' alleged speech and petitioning the courts in connection with a matter of public interest, the burden shifts to Plaintiffs to show a reasonable probability of prevailing. *Id.* § 425.16(b)(1). Plaintiffs assert that Defendants breached the X terms of service (the "TOS"). But the parties agreed those terms could

be amended—and at the time Plaintiffs filed this litigation, the TOS required suit in Texas. *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 375-76 (S.D.N.Y. 2010) (enforcing, under California law, a modified FSC in the parties' superseding agreement). Moreover, Plaintiffs waived the right to enforce the contractual forum-selection rights at issue, further warranting dismissal. Not only that, but the Complaint fails for several additional independent reasons: first, the Complaint fails to meet 28 U.S.C. § 1332's amount-in-controversy requirement; second, the damage Plaintiffs allege from the purported breach is not cognizable; third, the Complaint inadequately pleads standing for all but one Plaintiff; and fourth, with respect to the claims against Defendants TIUC and TAP, this Court lacks personal jurisdiction and the claims fail on the merits because Plaintiffs have no right to enforce the TOS against them as third-party beneficiaries. On that final point, it is blackletter law that a third-party beneficiary cannot be sued for breach of a contract to which it is not a party, unless the alleged beneficiary first seeks to enforce a part of that same contract for its benefit. TIUC and TAP (and X Corp. for that matter) have not invoked the TOS affirmatively, thus no claim for breach of those terms can lie against TIUC and TAP. Plaintiffs cannot invoke the forum-selection clause ("FSC") offensively against TIUC and TAP, who never agreed to it in the first place, without eviscerating the distinction between an obligor, who is bound to a contract by virtue of its assent to be bound, and a third-party beneficiary, who can be bound only through estoppel and only when asserting rights under the contract.[1]

## STATEMENT OF THE ISSUES TO BE DECIDED

**1.** Does California's anti-SLAPP statute require this Court to strike Plaintiffs' Complaint?

**2.** Are Defendants entitled to attorneys' fees?

## BACKGROUND AND ALLEGATIONS

**I.    Defendants Sue Plaintiffs in Texas, Singapore, and Ireland for Harming X's Platform.**

Texas-headquartered X Corp. contracts with advertisers on the X platform in the US. One of

---

[1] Defendants incorporate their pending motion to dismiss, ECF 51, and reply in support, ECF 63. Defendants have therein also challenged venue as improper, which may be considered in the anti-SLAPP context "as a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3)." *Crittendon v. Muldrow*, 2023 WL 2743582, at *2 (N.D. Cal. Mar. 31, 2023).

its subsidiaries, TIUC, is an Irish company with an Ireland headquarters. TIUC contracts with advertisers in Europe and the UK. TAP, a Singaporean company with a Singapore headquarters, contracts with advertisers in the Asia Pacific region. Compl. ¶¶ 21-23. Plaintiffs reside in New York, Washington, D.C., and Maryland. *Id.* ¶¶ 18-20.

On November 20, 2023, Defendant X Corp. sued Media Matters and Hananoki (and later Carusone) in the Northern District of Texas, alleging business disparagement and tortious interference claims. *Id.* ¶ 58. The primary basis was a November 16 article written by Hananoki, and published by Carusone and Media Matters, stating that "X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content." *Id.* ¶¶ 50, 60. X Corp.'s Amended Complaint alleges that Hananoki's article was false and defamatory, as it was based on intentional manipulation of the X platform. *Id.* ¶¶ 62, 68. X alleged that Plaintiffs pushed the article to pressure advertisers into leaving the platform. *Id.* ¶ 61. The foreign Defendants, TIUC and TAP, filed suits against Plaintiff Media Matters in December 2023 in Ireland and July 2024 in Singapore, respectively. *Id.* ¶¶ 72, 79. The foreign Defendants, which each contract with advertisers in their respective jurisdictions, asserted defamation claims based on the same article; the parties have litigated in their respective countries ever since. *See id.* ¶¶ 71, 77, 79, 85, 130, 138.

## II.    After Plaintiffs Improperly Sought Injunctive Relief in This Court, Defendants Moved to Dismiss Under Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs moved this Court for a preliminary injunction the day after they improperly filed suit here. ECF 16. In response, ECF 40, Defendants argued that the applicable, current FSC requires litigation in Texas, that the Court lacks personal jurisdiction over TIUC and TAP, that the Court lacks subject-matter jurisdiction, and that the now-superseded FSC does not support a preliminary injunction. ECF 40. Defendants moved to dismiss or to transfer per the current, applicable FSC and on forum non conveniens grounds. ECF 51. In the interim, the Court stated it was for "the Northern District of Texas to decide how [the FSC] relates to the case pending before it" and "whether Media Matters forfeited its right to assert the forum selection clause." ECF 28 at 1-2.

In April 2025, the Court held a hearing on Plaintiffs' preliminary injunction motion. ECF 55.

Despite Plaintiffs' concession that their delay in raising the FSC against Defendants TIUC and TAP was a "considered decision," ECF 58 at 10:15-20, the Court granted Plaintiffs' requested injunction in part. ECF 56. The Court enjoined prosecution of TIUC's Irish litigation against Media Matters and enjoined Defendants from instituting any litigation against Plaintiffs outside the US. *Id.* The Court declined, however, to enjoin prosecution of TAP's Singaporean action and stated it would "under no circumstances" enjoin or restrain the Texas litigation. *Id.* After noticing an appeal, ECF 59, Defendants moved to stay this Court's preliminary injunction pending resolution by the Ninth Circuit, ECF 65. Both the appeal and the stay motion remain pending.

III.    **The U.S. District Court for the Northern District of Texas Subsequently Ruled That Plaintiffs Had Waived the Contractual Forum-Selection Rights on Which They Rely.**

Along with filing this suit, Plaintiffs also sought to transfer X Corp.'s existing Texas litigation to this forum. ECF 153-1, *X Corp.* (Mar. 6, 2025). In May 2025, however, the Northern District of Texas denied Plaintiffs' transfer motion, finding Plaintiffs had waived the same contractual forum-selection rights on which Plaintiffs now rely. ECF 190 at 9, *X Corp.* That court also noted Plaintiffs' conduct—waiting over fifteen months to raise the issue while extensively engaging the judicial process—appeared to suggest "gamesmanship" and ordered further briefing on whether Plaintiffs should be sanctioned. *Id.* That requested briefing is currently pending.

ARGUMENT

I.    **The Court Should Strike Plaintiffs' Complaint Under California's Anti-SLAPP Law.**

California's anti-SLAPP statute protects, among other things, any conduct "in furtherance of a person's right of free speech," including "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Civ. Proc. Code § 425.16(e). "Under California's anti-SLAPP statute, a defendant may bring a special motion to strike a cause of action arising from constitutionally protected speech or petitioning activity." *Barry v. State Bar*, 2 Cal. 5th 318, 320 (2017); Cal. Civ. Proc. Code § 425.16. Federal courts apply California's anti-SLAPP statute in diversity actions. *CoreCivic, Inc. v. Candide Grp.*, 46 F.4th 1136, 1143 (9th Cir. 2022). The anti-SLAPP law "appl[ies] to diversity jurisdiction proceedings

5

in federal court," and courts may "consider and grant special motions to strike brought under that law." *Fennell v. Becerra*, 2020 WL 9422373, at *3 (N.D. Cal. June 3, 2020).[2]

Courts apply a two-step analysis. *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010). First, the movant "bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). Second, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Id.* at 396; *see also Hilton*, 599 F.3d at 903.

### A.    Defendants satisfy prong one because Plaintiffs attack protected activity.

"The first prong of the anti-SLAPP analysis involves two related inquiries: (1) whether the Complaint alleges activity protected by section 425.16 and (2) whether the cause or causes of action alleged arise from those activities." *Gunn v. Drage*, 65 F.4th 1109, 1120-21 (9th Cir. 2023) (cleaned up). A defendant clears the threshold by showing "that the challenged cause of action is one arising from protected activity." *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002).

Protected acts include "any written or oral statement or writing made before a . . . judicial proceeding" and "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." Cal. Civ. Proc. Code § 425.16(e)(1)-(2). Courts routinely find that the filing of lawsuits, like here, is petitioning activity protected by California's anti-SLAPP law. *E.g.*, *Travelers Com. Ins. Co. v. Hall*, 2023 WL 4291843, at *2 (C.D. Cal. Mar. 15, 2023) ("Travelers filed its Complaint because the Halls pursued their state court action against Travelers' insured."); *Alvarez v. XPO Logistics Cartage, LLC*, 2021 WL 5238582, at *2-3 (C.D. Cal. July 14, 2021) ("XPO's breach of contract counterclaim arises from Plaintiffs' filing of this lawsuit."); *Toyrrific, LLC v. Karapetian*, 2012 WL 5306229, at *3 (C.D. Cal. Oct. 26, 2012) (similar); *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999) (element satisfied where defamation claims arose from proceedings before "HUD or the civil courts").

---

[2] Defendants dispute diversity jurisdiction because the Complaint fails the amount-in-controversy requirement. ECF 51 at 4-6. Courts may grant anti-SLAPP motions for such "non-merits-based reasons." *U.S. News & World Rep., L.P. v. Chiu*, 2024 WL 2031635, at *17 (N.D. Cal. May 7, 2024).

Protected acts also include "'any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest,' and 'any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003) (quoting Cal. Civ. Proc. Code § 425.16(e)(3)-(4)). "California Code of Civil Procedure sections 425.16(e)(3) and 425.16(e)(4) both require that the free speech and/or conduct be in connection with an issue of public interest." *Id.* (striking complaint that challenged advocacy activities against the use of ADHD drugs).

Here, Plaintiffs squarely challenge protected conduct. Plaintiffs attack Defendants for filing "lawsuit[s]" in Texas, Ireland, and Singapore courts. Compl. ¶¶ 127-29, 135-37. Plaintiffs allege X Corp. "direct[ed]" TAP and TIUC to file "lawsuits" in Singapore and Ireland, respectively. *Id.* ¶ 137. They state that the "X Entities' campaign against Plaintiffs is part of an ongoing attempt to shift blame for X's lost advertising review and stifle critics," *id.* ¶ 30, and allege that "the subsequent international legal campaign initiated and directed by [Elon Musk's] company X Corp., are part of Musk's broader effort to blame anyone other than himself for X's sharp decline in advertising revenue since his takeover—and to stifle any criticism," *id.* ¶ 105. And they repeatedly allege Mr. Musk's statements show a plan to "scapegoat" groups via litigation. *Id.* ¶ 105.[3]

All of the above conduct and speech is protected activity. The filing of a lawsuit is an axiomatic protected petitioning activity. *See supra*. The "lawsuits" that Plaintiffs attack all involve statements "before" or "in connection with" ongoing judicial proceedings and are thus covered by Sections 425.16(e)(1) and (2): a lawsuit reflects an "act in furtherance of a plaintiff's constitutional right to engage in petition and free speech." *Toyrrific*, 2012 WL 5306229, at *3. And Plaintiffs directly attribute their alleged damages to the aforementioned litigation. Compl. ¶¶ 130, 138.

Moreover, insofar as Plaintiffs attack Elon Musk's public statements, those were also oral or

---

[3] Plaintiffs' current suit thus seeks to "shift blame" from their own behavior, which the Northern District of Texas already found plausibly states claims of business disparagement and tortious interference. ECF 82 at 13-16, *X Corp.* (Aug. 29, 2024). Plaintiffs cannot recast as frivolous and harassing claims another federal court sustained as legally plausible.

written statements made in a public forum and thus also protected by section 425.16(e)(3). For similar reasons, under section 425.16(e)(4), Plaintiffs' allegations also involve "conduct in furtherance of the exercise of the constitutional right of petition" or "free speech in connection with a public issue or an issue of public interest." Nor can Plaintiffs dispute the manifest public interest in a "person or entity in the public eye," conduct that "could directly affect a large number of people beyond the direct participants," and "a topic of widespread, public interest." *Rivero v. Am. Fed'n of State, Cnty. & Mun. Emps., AFL–CIO*, 105 Cal. App. 4th 913, 924 (2003). Plaintiffs concede this case involves "matters of significant public concern" in alleging that concerns about safety on the X Platform arose from Mr. Musk's statements that "the platform should serve as a digital town square." Compl. ¶ 37. Moreover, the underlying pleadings reflect that the X Platform has over 500 million active users. ECF 1-2 at 2, 5; ECF 1-5 at 6-7, 15. Therefore, protection is warranted under the anti-SLAPP statute. *Du Charme v. IBEW*, 110 Cal. App. 4th 107, 119 (2003).

**B.    The breach of contract claims lack a reasonable probability of prevailing.**

Plaintiffs' claims also require dismissal under prong two of California's anti-SLAPP law. At this second step, the burden shifts to the plaintiff to show a "reasonable probability of prevailing in its claims." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001). Plaintiffs bear the burden to demonstrate that each challenged claim based on protected activity is "legally sufficient and factually substantiated." *Makaeff v. Trump Univ. LLC*, 715 F.3d 254, 261 (9th Cir. 2013). If an anti-SLAPP motion is "based on alleged deficiencies in the plaintiff's complaint," the motion is "treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) (cleaned up). Here, Plaintiffs lack a reasonable probability of prevailing against X Corp. or the foreign Defendants.

**1.    Plaintiffs have no reasonable probability of prevailing against X Corp.**

Plaintiffs have no reasonable probability of prevailing against X Corp. This Court lacks subject-matter jurisdiction because Plaintiffs' damages are capped at $100, far below the diversity

threshold, and neither Media Matters nor Carusone have standing to assert Hananoki's alleged contractual rights. ECF 51 at 4-7. On the merits, contrary to Plaintiffs' assertions, Texas law, not California law, controls this lawsuit.[4] But Plaintiffs' claims fail under California law as well. Under California law, Plaintiffs must plead (1) the existence of a contract (the TOS); (2) their performance or excuse for nonperformance under the contract; (3) breach of the contract; and (4) that the breach caused Plaintiffs damages. *Hamilton v. Greenwich Investors XXVI, LLC*, 195 Cal. App. 4th 1602, 1614 (2011); *see also Smith Int'l, Inc. v. Egle Grp.*, 490 F.3d 380, 387 (5th Cir. 2007) (similar Texas law). Although Plaintiffs alleged the existence of a contract, Plaintiffs' allegations yield no reasonable probability of prevailing on the second, third, and fourth elements of their claims that Defendants breached X Corp.'s TOS by filing lawsuits in Texas and abroad.

**Performance**. Plaintiffs have not plausibly alleged they have "performed under the contract" that they claim Defendants breached: the TOS. Compl. ¶¶ 124, 132. For X Corp., the right forum per the FSC is Texas. *See* ECF 40 at 8-9; ECF 51 at 13-14. Each Plaintiff affirmed and agreed to that term before filing this suit. ECF 40-10 ¶¶ 5-7. Because that clause governs, *TradeComet.com*, 693 F. Supp. 2d at 375-76, Plaintiffs were required to file suit in Texas. They did not, so Plaintiffs have no reasonable probability of prevailing. *See, e.g., Martinez v. Welk Grp.*, 907 F. Supp. 2d 1123, 1131 (S.D. Cal. 2012) (claim failed because it was unclear "how [plaintiff] has performed all obligations under the contract or [was] otherwise excused from performing such obligations").

Plaintiffs have thus far attempted to avoid this result by arguing that "the Terms in place at the time of the alleged conduct" control and thus require suit in California, not Texas. ECF 60 at 13 (emphasis omitted). Plaintiffs are wrong, and multiple courts have recognized that the Terms in place at the time of suit control. *See Muhammad v. YouTube, LLC*, 2019 WL 2338503, at *1 (M.D. La. June 3, 2019) (finding version *at time of suit* controlling where, as here, YouTube reserved the

---

[4] Texas law governs the TOS, and this case should have been brought in Texas, which Plaintiffs knew when they filed suit. *See infra* and https://x.com/en/tos (effective Nov. 15, 2024) ("The laws of the State of Texas . . . will govern . . . . All disputes related to these Terms or the Services . . . will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas . . . .").

right to update its terms); *see also Dodson Int'l Parts, Inc. v. Williams Int'l Co. LLC*, 12 F.4th 1212, 1223-24 (10th Cir. 2021) (enforcing later arbitration clause because it had "no temporal element"); *Kahnert v. Kotick*, 2022 WL 2167798, at *4 (C.D. Cal. Mar. 4, 2022) (noting theory similar to Plaintiffs' regarding corporate bylaws has been "widely disapproved and rejected"). Defendants are not applying the TOS "retroactively," as Plaintiffs have argued. ECF 60 at 14. Rather, the FSC *already in effect* at the time Plaintiffs filed their Complaint specified that Plaintiffs needed to file suit in Texas.

The Complaint's claim fails for two additional reasons. *First*, Plaintiffs ignore TOS language that the "most current version of the Terms . . . will govern our relationship with you," ECF 16-2 at 55, and that any updated TOS language applies "notwithstanding any other agreement between you and us to the contrary," ECF 40-3 at 10. Plaintiffs have also cited *Boose v. Musk*, 1:24-cv-05650 (N.D. Ga. originally filed Oct. 3, 2024, removed Dec. 10, 2024), where X sought to enforce the TOS effective when Boose originally filed suit, *see id.*, ECF 1-1 at 3. That tracks Defendants' position here: because the TOS effective when Plaintiffs sued was the "most current version of the Terms," ECF 16-2 at 55, Plaintiffs had to comply with those terms rather than prior, superseded ones. This is thus not a case like Boose where the TOS is amended *after* Plaintiffs sued. Here, the amendment took effect months *before* Plaintiffs filed. At base, Plaintiffs cannot improperly seek millions in relief under a contract clause while complaining that the effective version of that clause, which they consented to by maintaining X platform accounts, is unreasonable, *id.*

*Second*, Plaintiffs have not alleged any plausible basis to avoid the conclusion that Plaintiffs waived or forfeited their right to rely on the prior California FSC. *S&J Rentals, Inc. v. Hilti, Inc.*, 294 F. Supp. 3d 978, 984 (E.D. Cal. 2018). The district court in Texas recently concluded as much. ECF 190 at 4-6, *X Corp.* At a minimum, by filing two dispositive motions, multiple discovery motions, and seeking interlocutory review in the Texas action—without arguing the FSC applied despite citing it—Plaintiffs made the affirmative choice to forgo that defense and to waive or forfeit the FSC. *Se. Power Grp. v. Vision 33, Inc.*, 855 F. App'x 531, 536 (11th Cir. 2021). A party shows clear intent to waive an FSC when it "substantially participate[s] in the litigation to a point

inconsistent with an intent" to enforce the clause. *Baton v. Ledger SAS*, 2025 WL 416360, at *6 (N.D. Cal. Feb. 6, 2025). Plaintiffs evinced an intent to relinquish any right to enforce the clause.

And as to TIUC and TAP, Plaintiffs' counsel specifically confirmed that affirmative choice at argument. In seeking a preliminary injunction as to the Irish and Singaporean litigation, counsel described the "considered decision . . . in those particular courts" in challenging venue. ECF 58 at 10:15-20. Plaintiffs cannot now contend that their actions reflect an intent to do otherwise.

Indeed, Plaintiffs' acts extend beyond waiver to laches, "an equitable defense that prevents a plaintiff, who 'with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights.'" *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001). "To establish laches a defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself." *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1084 (9th Cir. 2000). Both are present here. Not once before it filed this lawsuit in March of 2025 did Plaintiffs even hint that it thought a contractual provision in the X Corp. TOS required litigating in California. And merely filing this lawsuit led the Irish court to push off a scheduled court date indefinitely, stalling the litigation. ECF 40-9 ¶¶ 23-28.

**Breach**. Nor are Plaintiffs likely to prevail in showing that Defendants breached the TOS. FSCs do not cover all litigation between parties, only claims requiring interpreting agreements or deciding whether parties complied therewith. *See In re Orange, S.A.*, 818 F.3d 956, 962-63 (9th Cir. 2016). No such interpretation or determination is necessary for the "lawsuit[s]" that Plaintiffs challenge, Compl. ¶¶ 127-29, 135-37, which do not depend on whether Plaintiffs breached any term through X platform use. Neither X's terms nor its services—let alone any relationship with Plaintiffs generally—are intertwined with defamation and tortious interference. *See CZ Servs., Inc. v. Express Scripts Hldg. Co.*, 2018 WL 3972030, at *2-3 (N.D. Cal. Aug. 20, 2018); *BeautiControl, Inc. v. Burditt*, 2001 WL 1149360, at *2 (N.D. Tex. Sept. 26, 2001). Hananoki took steps on X's platform to generate his desired result, but these actions are neither disputed nor alleged to be TOS breaches. As Plaintiffs acknowledged in the Texas case, "X alleges in support of each of its three causes of action that Defendants' *reporting was false*." ECF 13-1 at 10, *X Corp.* (emphasis added).

**Damages**. Plaintiffs cannot show the alleged breach caused damages. Plaintiffs allege the

forum-selection breach caused damages by forcing them "to expend millions of dollars in attorneys' fees and costs defending" X entities' suits." Compl. ¶¶ 130, 138. But under California law—which Plaintiffs contend applies to their claims, *see* ECF 1-1 at 11—attorneys' fees are generally non-recoverable for contract claims "unless a statute or the agreement of the parties provides otherwise." *Gray v. Don Miller & Assocs.*, 35 Cal. 3d 498, 504 (1984) (citing Cal. Civ. Proc. Code § 1021). No statute or agreement provides otherwise. Plaintiffs' claimed attorneys' fees damages thus cannot be awarded. *See Boles v. Merscorp, Inc.*, 2009 WL 734135, at *4 (C.D. Cal. Mar. 18, 2009). So, too, under Texas law. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 (Tex. 2009) ("[S]uits cannot be maintained solely for the attorney's fees[.]"). Thus, Plaintiffs' claims fail because damages are non-cognizable. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Brady v. Mercedes-Benz USA*, *Inc.*, 243 F. Supp. 2d 1004, 1010 (N.D. Cal. 2002).

Fees as consequential damages for breach are awarded only in highly limited instances, when such relief supports a strong public interest or is authorized by statute. *See Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1058 (N.D. Cal. 2004); *Microsoft Corp. v. Motorola Inc.*, 795 F.3d 1024, 1051-52 (9th Cir. 2015) (affirming award in cases analogous to malicious prosecution). Plaintiffs cite no such grounds, nor can they, given that the Northern District of Texas already denied a motion to dismiss and Defendants thus are not engaged in such conduct. *See supra* n.3.

Even if attorneys' fees were arguably cognizable, Plaintiffs challenge the fora of litigation, not Defendants' ability to sue. Plaintiffs never allege how a purported forum-selection breach caused "millions of dollars" in damages. Compl. ¶¶ 130, 138. Under Plaintiffs' theory, the X entities can bring their claims in this District, where Plaintiffs would be required to defend and be subject to the same damages exposure in Texas, Ireland, and Singapore. The Court should thus strike the Complaint. *See, e.g.*, *Toyrrific*, 2012 WL 5306229, at *4-5 (granting an anti-SLAPP motion where the performance and damages elements failed).

Nor have Plaintiffs sought any proper relief, whether through damages, declaratory relief, or an injunction against foreign proceedings. *Contra* Compl. at 38. "Damages are not recoverable

which are not causally connected with the breach of a contract." *Rudgayzer v. Yahoo! Inc.*, 2012 WL 5471149, at *6 (N.D. Cal. Nov. 9, 2012) (quoting *Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal. App. 2d 506, 511 (1967)). The requested declaratory relief is duplicative of Plaintiffs' defective breach-of-contract claim and must be dismissed. ECF 51 at 11. An injunction against foreign litigation cannot establish damages because there is "no quantifiable benefit" in having the parties' "dispute adjudicated by" a court in Plaintiffs' preferred forum instead of elsewhere. *Westlake Vinyls, Inc. v. Goodrich Corp.*, 2014 WL 2816070, at *4 (W.D. Ky. June 23, 2014). Plaintiffs' stated purpose for an injunction is "to ensure that any litigation arising from the same conduct proceeds in the proper forum." ECF 16 at 5. The "pecuniary result" is negligible, *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 405 (9th Cir. 1996), because it would simply require TIUC and TAP to drop their foreign suits and re-file in this District, exposing Plaintiffs to the same liability and litigation costs. And because the jurisdictional defects described herein further bar this Court from granting relief, Plaintiffs have no reasonable probability of prevailing.

### 2.    Plaintiffs are also unlikely to prevail against the foreign Defendants.

The claims against the foreign Defendants also fail for the additional reason that they are not parties to the TOS. As Defendants have argued in moving to dismiss, TIUC and TAP lack California connections and are "at home" abroad. ECF 51 at 7. TIUC and TAP have no contacts with X Corp. that would render them closely related to X Corp.'s TOS, are not "third party beneficiaries" thereof, and are not X Corp.'s alter egos. *Id.* at 7-11. Thus, the Court lacks personal jurisdiction over the foreign Defendants, against whom Plaintiffs are thus unlikely to prevail.

These arguments also support an anti-SLAPP strike. A "contract cannot bind a nonparty." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Plaintiffs argue TAP and TIUC "are bound by" an FSC "providing for litigation in this district" "because they are third party beneficiaries of the TOS." Compl. ¶¶ 26, 102, 126. That's wrong and irrelevant. Plaintiffs cannot bring a breach of contract claim against third-party beneficiaries: it is blackletter law that a third-party beneficiary is "not held to have agreed in absentia to all of the contract's provisions," 20 WILLISTON ON CONTRACTS § 55:19 (4th ed.), and thus "***cannot breach the contract***," WOLTERS KLUWER

BOUVIER LAW DICTIONARY DESK ED., *Third-Party Beneficiary* (2012) (emphasis added).

Regardless, TIUC and TAP do not satisfy the third-party beneficiary test for the TOS. ECF 1-1 at 3 (providing that the TOS is an agreement between user and X Corp. only without any party intended as third-party beneficiary); *Ruderman v. Rolls Royce Motor Cars, LLC*, 511 F. Supp. 3d 1055, 1059 (C.D. Cal. 2021) (a "sophisticated signatory" could have named the third party as a beneficiary and did not). Just because "a contract results in benefits to a third party does not render that party a 'third-party beneficiary.'" *Hicks v. Utiliquest, LLC*, 736 F. Supp. 3d 849, 859 (E.D. Cal. 2024). Absent some "expressed" contract provision on which one can sue to recover the intended benefit, it is not a third-party beneficiary at all. *MacGregor v. Rutberg*, 478 F.3d 790, 794 (7th Cir. 2007); *see also Helfand v. Gerson*, 105 F.3d 530, 538 (9th Cir. 1997) (defendant's duty to plaintiff derived from contract with plaintiff's spouse; plaintiff was intended to receive a benefit from the contract). Plaintiffs cannot cite any such provision, let alone one the foreign Defendants invoked. *See* ECF 16 at 24-25 (failing to identify any provision invoked); ECF 50 at 10-11 (same).

Even if TIUC and TAP were third-party beneficiaries (and they are not), the theory underlying their claims—that a party (Hananoki) to a two-person contract (between Hananoki and X Corp.) suing third-party beneficiaries (allegedly TIUC and TAP) who have not invoked the same contract affirmatively—is impermissible. Claims brought by parties to the contract against its third-party beneficiaries fail. *Ismart Int'l Ltd. v. I-Docsecure, LLC*, 2005 WL 588607, at *8 n.5 (N.D. Cal. Feb. 14, 2005) ("Although California law permits third party beneficiaries to sue under contracts . . . the parties have cited no law . . . that third party beneficiaries can similarly be sued by parties."); *Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1068 (C.D. Cal. 2003) ("[A] third party beneficiary . . . cannot be sued for breach").

There is a narrow but inapplicable "estoppel" exception to this rule: "a forum selection clause may be enforced against non-signatories who *affirmatively* bring suit to assert a right under the contract." *Wescott v. Reisner*, 2018 WL 2463614, at *3 (N.D. Cal. June 1, 2018) (emphasis added) (citation omitted). A plaintiff who "seeks to secure benefits under a contract as to which he is a third-party beneficiary," "must take the contract as he finds it" and "cannot select the parts

favorable to him and reject those unfavorable to him." *Souza v. Westlands Water Dist.*, 135 Cal. App. 4th 879, 895 (2006) (cleaned up); *accord Ray v. NPRTO Fla. LLC*, 322 F. Supp. 3d 1261, 1263 (M.D. Fla. 2017). Here, TIUC and TAP (or X Corp. for that matter) never invoked the TOS against Plaintiffs. TIUC and TAP's claims in Ireland and Singapore, respectively, are tort claims that are not based on any TOS breach and make no reference to the TOS. Whether Plaintiffs breached the TOS is simply immaterial to those claims; those claims are based on the inaccuracy of Plaintiffs' reporting about X's platform. Accordingly, TIUC and TAP, which have never affirmatively invoked the TOS, cannot be bound as third-party beneficiaries to the FSC therein.

A limitation of liability in the TOS—invoked purely as a defense—does not change that result. Defendants have explained the Court lacks *subject-matter jurisdiction* because Plaintiffs' damages are contractually capped below the diversity amount. ECF 51 at 4. TIUC and TAP did not affirmatively invoke the damages cap in the first instance and only asserted it *as a defense after* suit was filed. *Cf. Bacon v. Fed. Rsrv. Bank of S.F.*, 289 F. 513, 515-16 (E.D. Wash. 1923) (analogous context of a special appearance). Nor is the cap a benefit TIUC or TAP could sue to enforce. *See Wescott*, 2018 WL 2463614, at *3.

Plaintiffs also allege TIUC and TAP are X Corp.'s alter egos or closely related parties. But those arguments can be quickly rejected. First, Plaintiffs never allege the requisite alter-ego "unity of interest." ECF 63 at 7-8. Second, as with third-party beneficiaries, the "closely related" doctrine is only properly applied to a non-signatory who already invoked the contract. *Id.* at 8.

## II.    Defendants Are Entitled to Attorneys' Fees.

A "prevailing defendant on a special motion to strike shall be entitled to recover . . . attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c); *see also Chiu*, 2024 WL 2031635, at *17 (federal court has discretion to award fees if granting anti-SLAPP motion on jurisdictional grounds). Because the Complaint arises out of protected activity under California law and Plaintiffs have no reasonable probability of prevailing, the Court should strike the Complaint and award fees.

## CONCLUSION

The Court should grant the Special Motion to Strike and award Defendants attorneys' fees.

Dated: May 12, 2025.                    Respectfully submitted.

                                        /s/ Christopher D. Hilton
                                        Judd E. Stone II *
                                        Christopher D. Hilton *
                                        Ari Cuenin *
                                        Michael R. Abrams *
                                        Elizabeth Brown Fore
                                          SBN 200471
                                        Alex M. Dvorscak *
                                        Cody C. Coll *
                                        **STONE HILTON PLLC**
                                        600 Congress Ave., Suite 2350
                                        Austin, TX 78701
                                        Telephone: (737) 465-7248
                                        judd@stonehilton.com
                                        chris@stonehilton.com
                                        ari@stonehilton.com
                                        michael@stonehilton.com
                                        elizabeth@stonehilton.com
                                        alex@stonehilton.com
                                        cody@stonehilton.com
                                        * Admitted *pro hac vice*


                                        /s/ Bradley A. Benbrook
                                        Bradley A. Benbrook
                                          SBN 177786
                                        Stephen M. Duvernay
                                          SBN 250957
                                        **BENBROOK LAW GROUP, PC**
                                        701 University Avenue, Suite 106
                                        Sacramento, CA 95825
                                        Telephone: (916) 447-4900
                                        brad@benbrooklawgroup.com

                                        *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel for record on May 12, 2025, via the Court's CM/ECF system.

                                        /s/ Christopher D. Hilton
                                        Christopher D. Hilton

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Defendants communicated via email with counsel for Plaintiffs on May 12, 2025, and that counsel stated this motion is opposed.

/s/ Christopher D. Hilton
Christopher D. Hilton