**BENBROOK LAW GROUP, PC**
Bradley A. Benbrook (SBN 177786)
Stephen M. Duvernay (SBN 250957)
701 University Avenue, Suite 106
Sacramento, CA 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

**STONE HILTON PLLC**
Judd E. Stone II *
Christopher D. Hilton *
Ari Cuenin *
Michael R. Abrams *
Elizabeth Brown Fore (SBN 200471)
Alexander M. Dvorscak *
Cody C. Coll *
600 Congress Ave., Suite 2350
Austin, TX 78701
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
elizabeth@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com
* Admitted *pro hac vice*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MEDIA MATTERS FOR AMERICA, ANGELO CARUSONE, and ERIC HANANOKI,<br><br>*Plaintiffs*,<br><br>v.<br><br>X CORP., TWITTER INTERNATIONAL UNLIMITED CO., and TWITTER ASIA PACIFIC PTE. LTD.,<br><br>*Defendants*. | Case No.: 3:25-cv-02397-VC<br><br>**DEFENDANTS X CORP., TWITTER INTERNATIONAL UNLIMITED CO., and TWITTER ASIA PACIFIC PTE. LTD.'s REPLY IN SUPPORT OF MOTION TO STAY** |

Plaintiffs "waited to learn which way the wind was blowing before requesting transfer" as part of their "pattern of gamesmanship." ECF 190 at 9, *X Corp. v. Media Matters*, No. 4:23-cv-01175-O (N.D. Tex. filed May 2, 2025) ("Waiver Order"). This Court's anti-suit injunction rewards that gamesmanship. It should be stayed for that reason alone. The Court should stay its injunction for other reasons, too. The order enjoining the Irish case rests upon a misunderstanding of the status of that litigation. Plaintiffs are unlikely to prevail in suing Twitter International Unlimited Co. ("TIUC") and Twitter Asia Pacific Pte. Ltd. ("TAP") for breaching a contract those entities never signed. Plaintiffs also failed to satisfy the equitable and public-interest factors necessary for an injunction. And nothing raised in Plaintiffs' response, ECF 67, changes these conclusions.

## I.  Avoiding the Irreparable Harm Caused by Interference with Foreign Proceedings Warrants a Stay Pending Appeal.

This Court's injunction "rest[s] upon an erroneous view of the law" and "a clearly erroneous view of the facts." *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 889 (9th Cir. 2012). If any court should consider Plaintiffs' belated invocation of X Corp.'s forum-selection clause ("FSC") as to TIUC as a basis for halting the 18-month-old proceedings in Ireland, it should be the High Court of Ireland. A stay prevents irreparable harm to TIUC from interference with that process.

This Court recognized "Media Matters's delay" in suing and "invoking the forum selection clause is relevant to" all aspects of its request for a foreign anti-suit injunction. ECF 56 at 1. The Court excused Plaintiffs' delay as a mere oversight, *id.* at 1-2, but that was wrong. Plaintiffs admitted they made "a considered decision" not to invoke the FSC in the foreign cases and instead to rely solely on "forum non conveniens" in those proceedings. ECF 58 at 10:15-20. Indeed, Plaintiffs did the same thing in Ireland as in Texas where, as Judge O'Connor recently held, Plaintiffs waived the FSC by litigating other issues for 18 months while citing (but never invoking) the clause.

In December 2023, and about a week after X Corp. sued in Texas, TIUC brought Irish-law defamation and malicious-falsehood claims against Media Matters in the High Court of Ireland. ECF 40-9 ¶¶ 3-6; *see also* ECF 1-6; ECF 16-26. In January 2024, Media Matters entered a

1

conditional appearance and expressed an intent to challenge the court's jurisdiction on forum non conveniens grounds. ECF 40-9 ¶¶ 5, 7-11. As Plaintiffs' counsel has stated, Media Matters intentionally chose to emphasize forum non conveniens instead of pressing an argument based on the FSC in X Corp.'s (but not TIUC's) TOS because of "a considered decision to make the best arguments . . . geared to th[at] particular jurisdiction[]." ECF 58 at 10:16-18. And, if anything, that candid admission undersold things. Media Matters was plainly aware of the FSC, as—just as in the Texas case—it adverted to the TOS multiple times in the Irish litigation. *See* ECF 40-9 ¶¶ 29-35. Yet, just as is in the Texas litigation, Media Matters chose not to press the clause as a basis for dismissal or transfer in the Irish case.

Even now Plaintiffs (at 1) do not dispute they strategically avoided the FSC argument "[i]n the foreign actions." ECF 58 at 10:15. That admission eliminates the factual basis for the anti-suit injunction. It also confirms the need for a second look. After all, it would be "an abuse of discretion" to "override" the resulting waiver. *Wood v. Milyard*, 566 U.S. 463, 472-73 (2012). And since parties are charged with, at a minimum, constructive knowledge of documents they sign, *see Consol. Edison Co. v. United States*, 221 F.3d 364, 371 (2d Cir. 2000) (collecting cases), a party waives a contractual right even when counsel "simply misse[s]" it, ECF 56 at 2. Regardless of the reason that Plaintiffs sat on their supposed rights under the FSC, they have relinquished them.

Plaintiffs also misled the Court into distinguishing the Irish and Singaporean litigation based on the view that "the parties" in Ireland "haven't filed their briefs on Media Matters's jurisdictional challenge" there, but "in the Singapore case, the parties have filed their briefs." *Id.*[1] Briefing in Ireland proceeds in two stages: parties first submit extensive briefing on the facts (and, here, exchange multiple expert-witness reports), before moving to a second round of briefing on the law. Here, the parties were almost done with factual briefing after multiple, detailed submissions on Media Matters' forum non conveniens motion and were ready to proceed to legal briefing. *See* ECF 40-9. Indeed, the High Court of Ireland had initially resolved to list the jurisdictional motion

---

[1] Although the Court correctly declined to enjoin the Singaporean proceedings, Plaintiffs (at 3) do not disclaim an intent to cite this Court's antisuit injunction to influence those proceedings.

2

before the court well in advance of when Plaintiffs filed this lawsuit, *id.* ¶¶ 12-14, but Media Matters repeatedly kicked the can down the road with extensions, *see id.* ¶¶ 15-23. And while there was no court date by the time this Court granted Plaintiffs' PI motion, that is because the mere filing of the PI motion here was enough to cause the Irish court to scuttle a hearing scheduled for the next day. *See id.* ¶¶ 24-28.

That the Irish judiciary delayed its hearing out of comity should not redound to Plaintiffs' benefit. Nor should the fact that those proceedings follow a different course than under the familiar Federal Rules of Civil Procedure. The Irish court is in the best position to evaluate whether the eleventh-hour invocation of the FSC is consistent with Plaintiffs' litigation conduct to date. The Supreme Court has described "conflict[s]" between equal judicial sovereigns as "unseemly," *e.g.*, *Kline v. Burke Const. Co.*, 260 U.S. 226, 231 (1922), and the Ninth Circuit loathes "the friction created by the appearance that [a] second court is interfering with the first," *Weiner v. Shearson, Hammill & Co.*, 521 F.2d 817, 820 (9th Cir. 1975). Federal courts do not take lightly to efforts by foreign tribunals "specifically intended to interfere with and terminate" judicial proceedings in US courts. *Laker Airways Ltd. v. Sabena*, 731 F.2d 909, 938 (D.C. Cir. 1984). But federal courts can reasonably expect foreign courts to respect our judicial process only if the respect is mutual. The Court's truncated, two-page order on expedited briefing interrupts a year's worth of ongoing jurisdictional litigation in Ireland—that disruption alone merits pause. Plaintiffs never explain how Defendants could possibly counteract resulting harms absent a stay.

**II.   Defendants Are Likely to Prevail in Appealing the Preliminary Injunction.**

Defendants are highly likely to succeed on appeal. First, no grounds exist to enjoin TIUC because it is not bound by X Corp.'s TOS. Second, Plaintiffs' claims fail on several jurisdictional and venue grounds. Third, neither equity nor the public interest support an injunction.

**A.**   Neither foreign Defendant was bound by the X Corp. TOS on which Plaintiffs rely. The Court's analysis under *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984 (9th Cir. 2006), was thus flawed. On the threshold factor—whether Plaintiffs' bid to invoke the FSC in X Corp.'s previously effective TOS "is dispositive of the action to be enjoined," *id.* at 991—the answer is

3

no. The Court ruled otherwise in deeming TIUC a "third-party beneficiar[y] of [X Corp.'s] Terms of Service." ECF 56 at 1. But that is wrong factually, and it is wrong legally, as a third-party beneficiary "certainly cannot be *bound* to a contract it did not sign or otherwise assent to," *Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006), and "cannot be sued for breach," *Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1068 (C.D. Cal. 2003).

As an initial matter, the FSC does not control because the Irish suit is not "related to [X Corp.'s TOS] or the Services." ECF 1, ¶ 94. Hananoki's actions on X are neither at issue nor alleged to be TOS breaches. As Plaintiffs acknowledged in Texas, "X alleges in support of each of its three causes of action that Defendants' *reporting was false*." ECF 13-1 at 10, *X Corp.* (emphasis added). Plaintiffs' duties not to defame Defendants or interfere with business relationships are not "related to" their use of the platform. *See Croix v. Provident Tr. Grp.*, 2019 WL 6716066, at *3 (W.D. Tex. Dec. 9, 2019), *R&R adopted*, 2019 WL 11506139 (Dec. 27, 2019) (applying Texas law) ("[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit.").

Plaintiffs (at 4) also misperceive the inquiry as: (1) whether TIUC and TAP are beneficiaries of the TOS; and (2) whether their foreign tort claims fall within the TOS. Each question should be answered in the negative, for reasons Defendants already explained. *See* ECF 65 at 9-10, 14-15. But Plaintiffs ignore the most essential obstacle: A "third party beneficiary will *only* be bound by the terms of the underlying contract where the claims asserted by that beneficiary arise from its third party beneficiary status." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 197 (3d Cir. 2001); *see also* ECF 63 at 5-6; ECF 65 at 10-11.

At the time of Plaintiffs' filing, it is indisputable that TIUC and TAP had not invoked the TOS. *First*, they had sued for defamation and related torts—not for contract claims. *Second*, TIUC and TAP did not, and could not, enforce the TOS against Plaintiffs in their foreign tort cases. That should be the end of it. Under California law and contract-interpretation principles, a third-party beneficiary "can only enforce those promises made directly for his benefit." *Clark v. Cal. Ins. Guar. Assn.*, 200 Cal. App. 4th 391, 398 (2011). Here, Plaintiffs suggest only one possible

4

contractual right: a disclaimer of liability. *See* ECF 67 at 4 (describing disclaimer language and identifying it as sole benefit). But even assuming the TOS's disclaimer is a sufficient benefit to confer third-party-beneficiary status to TIUC and TAP (it is not, *see* ECF 65 at 9-10), that would be the *only* provision TIUC and TAP are allowed to enforce. And there is no way TIUC and TAP can be considered to have invoked *that* provision when bringing their tort claims (*contra* ECF 67 at 6). Moreover, a disclaimer provides no affirmative relief—and since Plaintiffs have not countersued TIUC or TAP abroad, TIUC and TAP had no occasion to invoke it defensively. Accordingly, the Court incorrectly held that TIUC and TAP are liable for suit on the TOS.

**B. 1.** The Court also lacks personal jurisdiction over TIUC and TAP because neither entity has contacts with California, let alone any from which Plaintiffs' claims arise. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). Plaintiffs themselves make clear those entities brought cases in their respective countries for injuries sustained abroad. ECF 16-24 ¶ 43; ECF 16-26 ¶ 24. There is no "relationship" between this forum and the foreign defendants, who neither "direct[ed their] activities" to California, nor conducted activities here. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 758 (9th Cir. 2025) (en banc). Even Plaintiffs admit that TIUC and TAP are "at home" abroad, without California connections of their own. ECF 1 ¶¶ 22-23.

Defendants' conduct in this litigation cannot provide a basis for personal jurisdiction in California, which is evaluated at the time of filing. *E.g.*, 4 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1051 at 161-62. Basing jurisdiction on post-filing actions would strip individuals of "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987) (cleaned up). Plaintiffs are therefore wrong to suggest (at 4) that TIUC and TAP's invocation of the limitation on liability in this California litigation provides the needed hook, because it necessarily occurred *after* filing as an alternative argument for why Plaintiffs' suit fails. That Defendants have raised the $100 damages cap as one of many reasons for dismissing Plaintiffs' meritless suit changes nothing and waives nothing; it provides no basis for Plaintiffs to haul TIUC and TAP into this Court in the first place. *See* Fed. R. Civ. P. 12(b) ("No defense or objection is waived by joining it with one or more

other defenses or objections in a responsive pleading or in a motion."); *see also Mundinger v. Wells Fargo Bank*, 2011 WL 1559423, at *3 (D. Ariz. Apr. 25, 2011) (holding alternative arguments not waived).

Plaintiffs' other personal-jurisdiction arguments fail. They are wrong (at 4) that TIUC and TAP made a representation in the contract; only signatories make contractual representations, and Plaintiffs have no contrary authority. Plaintiffs are wrong (at 7) that jurisdiction is proper because "it was TIUC and TAP that first sued Media Matters" and that the FSC is broad, as they ignore the ample caselaw requiring a beneficiary's *actual invocation* of a contract, not just any lawsuit. *See Dupont*, 269 F.3d at 197; ECF 63 at 5-6. And they are wrong (at 7) that merely because X Corp. officers can enforce X Corp.'s TOS, affiliated entities like TIUC or TAP may do so.

In tacit acknowledgment of the weakness of their position, Plaintiffs have concocted new, equally meritless theories. They now (at 7) raise an agency argument that is unbriefed and absent from their Complaint and preliminary injunction briefing. *See* ECF 1, 16, 50. It also does no apparent work apart from their alter-ego "argument" (at 8), which is similarly unbriefed and unavailing. *See* ECF 51 at 10-11; ECF 63 at 6-7. Nor do Plaintiffs overcome Defendants' explanation of why the alternative "closely related" argument fails: whether or not they are closely related to X Corp., TIUC and TAP are not "closely related" to X Corp.'s *TOS*.[2]

**2.** Plaintiffs fail to establish the amount-in-controversy requirement for diversity jurisdiction. Plaintiffs base the amount in controversy on the total damages sought abroad. But Plaintiffs seek only to move litigation to California—not avoid foreign damages. ECF 16 at ¶ 5. Plaintiffs' suit concerns a contract capping damages at $100, which is $74,900 below 28 U.S.C. § 1332's threshold. Because Plaintiffs seek to wield the TOS's FSC, equitable estoppel "precludes" them from "simultaneously attempting to avoid" the clause limiting damages to $100. *Comer*, 436 F.3d

---

[2] Plaintiffs attack *Firexo, Inc. v. Firexo Group*, 99 F.4th 304 (6th Cir. 2024), for focusing on the due-process problems in applying "closely related" doctrine. But courts cannot ignore due process, and Plaintiffs cannot escape cases like *Wescott v. Reisner*, 2018 WL 2463614 (N.D. Cal. June 1, 2018); *Mewawalla v. Middleman*, 601 F. Supp. 3d 574 (N.D. Cal. 2022), and *Pestmaster Franchise Network, Inc. v. Mata*, 2017 WL 1956927 (N.D. Cal. May 11, 2017), which reflect that TIUC and TAP never consented to a California forum. *See* ECF 51 at 7-9; ECF 63 at 7-8.

at 1101. Plaintiffs claim they satisfy § 1332 by (1) broad calculations of the value of the injunction, (2) considering attorneys' fees Plaintiffs spent on the foreign actions, and (3) disclaiming application of X's limitation of liability as unconscionable. ECF 67 at 14-17. They are wrong.

*First*, Plaintiffs' inclusion of foreign damages in the amount in controversy calculation (ECF 37 at 15) rests solely on *Cisco Sys., Inc. v. GTEC.*, 2011 WL 13253336, at *2 (N.D. Cal. Sept. 27, 2011). But there, *Cisco* pleaded that a contract action pending abroad sought more than $13 million in damages, far exceeding what could be claimed under California law. *Id.*; *see* Complaint (ECF 1 at ¶ 20), *Cisco Sys., Inc. v. GTEC*, No. 5:10-CV-04960-EJD (N.D. Cal. filed Nov. 2, 2010). The amount in controversy sufficed because the injunction would have *prevented* the foreign defendant from recovering the $13 million sought abroad, which was *unavailable* in California. *Cisco Sys.*, 2011 WL 13253336, at *2. Here, Plaintiffs falsely claim "an injunction barring prosecution of [foreign suits] eliminates X's ability to pursue those amounts." ECF 67 at 14. But Plaintiffs have not argued, as in *Cisco*, that the damages claimed in Ireland (for lost revenue) are *unavailable* in California. Indeed, by invoking the doctrine of forum non conveniens as a basis to avoid the jurisdiction of the Irish courts, Plaintiffs take the position in the Irish litigation that TIUC's damages may be claimed elsewhere. *See* ECF 40-9 ¶ 10-11. At another juncture, Plaintiffs characterize "the value of the specific object of this litigation" as ensuring "any litigation arising from the same conduct proceeds in the proper forum." ECF 16 at 5. As in *Westlake Vinyls, Inc. v. Goodrich Corp.*, enforcement of a FSC, unlike a covenant not to sue, does not seek to avoid litigation costs and liability; it merely "plac[es] the litigation in an agreed-upon forum." 2014 WL 2816070, at *4 (W.D. Ky. June 23, 2014). So whether TIUC or TAP actually refiles is beside the point. *Contra* ECF 67 at 15.

Plaintiffs are not helped (at 15) by *Griggs v. Credit Solutions of America, Inc.*, 2009 WL 911420, at *3 (E.D. Mo. Mar. 31, 2009). *Griggs* rejected the inclusion of an arbitration award in the amount-in-controversy because the object of litigation, a declaratory judgment permitting class arbitration, did not involve the damages at issue in the underlying suit. *Id.* Enforcing the FSC here at most effects a transfer of the foreign suits—it would not bar liability.

7

*Second*, Plaintiffs cannot repackage attorneys' fees as consequential damages. *Contra* ECF 67 at 15. As Plaintiffs' authority shows, consequential damages for breach of contract are awarded only in limited cases, when relief is authorized by statute. *See Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1058 (N.D. Cal. 2004) (citing Cal. Civ. Proc. Code § 1021.6). Plaintiffs (at 16 n.3) cite dicta in *Prakash Jones v. Morris+D'Angelo* as permitting recovery of fees incurred in another action. 2024 WL 4428980 (N.D. Cal. Oct. 4, 2024). But *Prakash Jones* relied on *Microsoft*, 795 F.3d at 1051-52, which is inapposite because it rests on distinguishable public-interest considerations. Plaintiffs can claim no public-interest grounds, as a federal court has already found the underlying claims legally plausible and allowed them to proceed to discovery. *See X Corp. v. Media Matters*, 2024 WL 4001803, at *6-8 (N.D. Tex. Aug. 29, 2024). That the fees were incurred in connection with other cases is unavailing for Plaintiffs. ECF 67 at 16. Plaintiffs cannot claim consequential damages because Media Matters is unprotected by the FSC, because TIUC and TAP were not bound by it, and because neither Carusone nor Hananoki were parties in the foreign litigation. *Cf.* ECF 1-3; ECF 16-26. And even if consequential damages *were* available, that adequate remedy precludes injunctive relief.

*Third*, X's limitation of liability is not unconscionable and bars any award over $100 for breach of the TOS, therefore depriving this court of jurisdiction. *See* ECF 61 at 11-12; ECF 63 at 3-4. Caps for breach of contract claims are regularly held conscionable under California law. *See Adkins v. Facebook, Inc.*, 2019 WL 3767455, at *2 (N.D. Cal. Aug. 9, 2019) (upholding Facebook's limitation); *see also Darnaa, LLC v. Google, Inc.*, 2015 WL 7753406, at *2 (N.D. Cal. Dec. 2, 2015); *Price v. Apple*, *Inc.*, 2023 WL 2671378, at *4 (N.D. Cal. Mar. 28, 2023). Plaintiffs' cases (at 16) change nothing because they address limitations on types of liability other than breach of contract, *see Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) (negligence); *Leo India Films Ltd*. *v. GoDaddy.com LLC*, 2022 WL 836812, at *1 (D. Ariz. Mar. 21, 2022) (fraud and bad faith), or address a special business relationship absent here, *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) (franchisee-franchisor). Plaintiffs' chief complaint (at 17) is that the limitation is one-sided because X sued

8

them for over $100 yet capped Plaintiffs' recovery at $100 for breach of contract. But, again, Defendants' claims *do not invoke the TOS*. The TOS's FSC and cap don't apply to claims for Plaintiffs' deliberate interference with advertiser relationships. ECF 40 at 21-24.

**3.** Venue is also improper in this District. If this case is heard, it should be transferred to the Northern District of Texas—where the parties have been litigating the same underlying issues for almost two years now—pursuant to 28 U.S.C. §1404(a). That is also the forum selected in the TOS on the date Plaintiffs filed this suit, and thus controls. ECF 63 at 9-10; ECF 65 at 2, 14. Defendants are not applying the TOS "retroactive[ly]," ECF 67 at 12, because the FSC pointing to Texas was already effective before Plaintiffs filed suit, so that is no basis to distinguish cases like *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 375 (S.D.N.Y. 2010). Plus, a central question here—"whether Media Matters forfeited its right to assert the forum selection clause" by "waiting so long" to raise it—was squarely presented in the Texas case. ECF 28 at 5-6. And it has now been squarely resolved by that court. *See* Waiver Order at 5-9. Letting Plaintiffs relitigate the issue they just lost in Texas would waste resources and risk inconsistent judgments.

**C.** Plaintiffs failed to satisfy the requirements for an antisuit injunction. *Contra* ECF 67 at 12-15. Their failure to show irreparable harm, or that equities and the public interest favor an extraordinary foreign anti-suit injunction, supplies an independent reason to stay the order. The Court gave two reasons for enjoining "the Ireland case," which TIUC has been litigating against Media Matters for 18 months: (1) Plaintiffs allegedly "simply missed th[e] issue"; and (2) "the parties" in Ireland "haven't filed their briefs on Media Matters's jurisdictional challenge" there. ECF 56 at 1-2. It is doubtful that a failure to issue-spot ever warrants extraordinary equitable relief that implicates serious comity concerns. But as discussed above, neither ground is correct.

Plaintiffs thus did not just fail to timely assert a right. *Contra* ECF 67 at 3. They made "a considered decision" to pursue other arguments instead. And while courts may excuse *forfeiture* if justice demands (and justice does not demand it here), they may not excuse *waiver*. It is "'an abuse of discretion' for a court 'to override'" a "deliberate waiver." *Wood*, 566 U.S. at 472-73. Resurrecting an argument a party has affirmatively relinquished would "depart from the principle

9

of party presentation basic to our adversary system." *Id.* at 472. Indeed, Plaintiffs' acts also extend to laches, "an equitable defense that prevents a plaintiff, who 'with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights.'" *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001). Both "unreasonable delay" and "prejudice" are consequently present here. *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1084 (9th Cir. 2000). Not once before it filed this lawsuit in March of 2025 did Plaintiffs even hint in the Irish case that they thought a contractual provision in the X Corp. TOS required litigating in California. For good reason: it does not. And merely filing this lawsuit led the Irish court to push off a scheduled court date indefinitely, stalling the litigation. ECF 40-9 ¶¶ 23-28.

Judge O'Connor also found waiver and that Plaintiffs' actions suggestive of "gamesmanship" severely prejudiced X Corp. Waiver Order at 9. Neither equity nor the public interest favor rewarding such conduct. *Contra* ECF 67 at 13-14. The same analysis applies to the foreign litigation. Indeed, given that Irish proceedings have been ongoing since 2023, the place to assert the FSC (even belatedly) was Ireland. Yet Plaintiffs obtained a windfall from their chicanery.

**III.    The Equities and Public Interest Favor a Stay, Which Will Not Harm Plaintiffs.**

The equities and public interest favor Defendants for the reasons herein and in the pending Special Motion to Strike, ECF 68, which Defendants incorporate fully by reference. As noted above, waiver and laches indicate Plaintiffs are unlikely to prevail in asserting the contractual rights they now invoke against Defendants, particularly because holding a party to an FSC typically presupposes an opponent timely invoked it. Moreover, interference with the Irish judicial system undermines the mutual respect for coordinate sovereigns that disserves the public interest, *see supra* Part I, so Plaintiffs cannot dispute that a stay pending appeal serves the public interest. Nor can Plaintiffs show harm from a stay because Irish courts provide an avenue for Media Matters to seek fee-shifting. *Veolia Water UK PLC v. Fingal Cnty. Council* [2006] IEHC 240 ¶2.5 (Ir.), https://perma.cc/4UR5-TR3K.

Dated: May 16, 2025.                    Respectfully submitted.

/s/ Christopher D. Hilton
Judd E. Stone II *
Christopher D. Hilton *
Ari Cuenin *
Michael R. Abrams *
Elizabeth Brown Fore
  SBN 200471
Alex M. Dvorscak *
Cody C. Coll *
**STONE HILTON PLLC**
600 Congress Ave., Suite 2350
Austin, TX 78701
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
elizabeth@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com
* Admitted *pro hac vice*

/s/ Bradley A. Benbrook
Bradley A. Benbrook
  SBN 177786
Stephen M. Duvernay
  SBN 250957
**BENBROOK LAW GROUP, PC**
701 University Avenue, Suite 106
Sacramento, CA 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel of record on May 16, 2025, via the Court's CM/ECF system.

/s/ Christopher D. Hilton
Christopher D. Hilton