JUSTIN A. NELSON (TX SBN 24034766)
jnelson@susmangodfrey.com
MATTHEW BEHNCKE (TX SBN 24069355)
mbehncke@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

KATHERINE M. PEASLEE (CA SBN 310298)
kpeaslee@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883

AMANDA BONN (CA SBN 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiff Media Matters for America*
*(Additional parties and counsel listed with signature)*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MEDIA MATTERS FOR AMERICA, ANGELO CARUSONE, and ERIC HANANOKI<br><br>Plaintiff,<br><br>vs.<br><br>X CORP., TWITTER INTERNATIONAL UNLIMITED CO., and TWITTER ASIA PACIFIC PTE. LTD.<br><br>Defendant. | Case No. 3:25-cv-02397-VC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CODE OF CIVIL PRODECURE 425.16 (ANTI-SLAPP)** |

# TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................................1

II.   STATEMENT OF THE ISSUES TO BE DECIDED.............................................................2

III.  LEGAL STANDARD.......................................................................................................2

IV.   ARGUMENT .................................................................................................................2

      A.    Foreign-filed litigation is not protected by California's anti-SLAPP
          statute. ..............................................................................................................2

      B.    Plaintiffs have a reasonable probability of success on their claims. ........................4

      C.    X is not entitled to attorneys' fees and costs...........................................................15

V.    CONCLUSION...............................................................................................................15

PLAINTIFFS' OPP. TO DEFENDANTS' ANTI-SLAPP MOT. TO STRIKE
Case No.: 3:25-cv-02397-VC

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baton v. Ledger SAS*,
   2025 WL 416360 (N.D. Cal. Feb. 6, 2025) ........................................................................6

*Boles v. Merscorp, Inc.*,
   2009 WL 734135 (C.D. Cal. Mar. 18, 2009) .....................................................................11

*Brady v. Mercedes-Benz USA, Inc.*,
   243 F. Supp. 2d 1004 (N.D. Cal. 2002) ............................................................................10

*Cal-State Bus. Prods. & Servs., Inc. v. Ricoh*,
   12 Cal. App. 4th 1666 (1993), *as modified* (Feb. 4, 1993) ..............................................10

*Cognex Corp. v. Air Hydro Power, LLC*,
   651 F. Supp. 3d 322 (D. Mass. 2023) ..................................................................................5

*Couveau v. Am. Airlines, Inc.*,
   218 F.3d 1078 (9th Cir. 2000) ..............................................................................................8

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) ..............................................................................................5

*Danjaq LLC v. Sony Corp.*,
   263 F.3d 942 (9th Cir. 2001) ................................................................................................8

*Digimarc Corp. v. Verance Corp.*,
   2011 WL 7077315 (D. Or. Sept. 19, 2011) .........................................................................5

*E & J. Gallo Winery v. Andina Licores S.A.*,
   446 F.3d 984 (9th Cir. 2006) .....................................................................................7, 8, 10

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279 (2002)............................................................................................................13

*Facebook Inc. v. Namecheap Inc.*,
   2020 WL 6585534 (D. Ariz. Nov. 10, 2020)......................................................................15

*Galt G/S v. JSS Scandinavia*,
   142 F.3d 1150 (9th Cir. 1998) ......................................................................................10, 11

*Guessous v. Chrome Hearts, LLC*,
   179 Cal. App. 4th 1177 (2009) ....................................................................................1, 2, 3

PLAINTIFFS' OPP. TO DEFENDANTS' ANTI-SLAPP MOT. TO STRIKE
Case No.: 3:25-cv-02397-VC

*Helfand v. Gerson*,
  105 F.3d 530 (9th Cir. 1997) ...................................................................................14

*Hicks v. Utiliquest, LLC*,
  736 F. Supp. 3d 849 (E.D. Cal. 2024).....................................................................14

*Ismart Int'l Ltd. v. I-Docsecure, LLC*,
  2005 WL 588607 (N.D. Cal. Feb. 14, 2005) ...........................................................14

*Klocke v. Watson*,
  936 F.3d 240 (5th Cir. 2019) .....................................................................................1

*MacGregor v. Rutberg*,
  478 F.3d 790 (7th Cir. 2007) ...................................................................................14

*MBM Fin. Corp. v. Woodlands Operating Co.*,
  292 S.W.3d 660 (Tex. 2009).....................................................................................11

*Media Matters for Am. v. Bailey*,
  2024 WL 3924573 (D.D.C. Aug. 23, 2024) ...............................................................1

*Microsoft Corp. v. Motorola Inc.*,
  795 F.3d 1024 (9th Cir. 2015) .................................................................................10

*Mireskandari v. Gallagher*,
  59 Cal. App. 5th 346, 273 Cal. Rptr. 3d 371 (2020)..................................................2

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*,
  319 F. Supp. 2d 1059 (C.D. Cal. 2003) ...................................................................14

*New England Mortgage Sec. Co. v. Gay*,
  145 U.S. 123 (1892)..................................................................................................11

*Park v. Bd. of Trustees of Cal. State Univ.*,
  2 Cal. 5th 1057, 393 P.3d 905 (2017) ........................................................................3

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018) .....................................................................................2

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
  352 F. Supp. 2d 1048 (N.D. Cal. 2004) ...................................................................10

*Prods. & Ventures Int'l v. Axus Stationary Ltd.*,
  2017 WL 201703 (N.D. Cal. Jan. 18, 2017)............................................................15

*Robles v. Schneider Na'l Carriers, Inc.*,
  2017 WL 8232083 (C.D. Cal. Dec. 11, 2017) ...........................................................9

*Ruderman v. Rolls Royce Motor Cars, LLC*,
    511 F. Supp. 3d 1055 (C.D. Cal. 2021) ...................................................................14

*S&J Rentals, Inc. v. Hilti, Inc.*,
    294 F. Supp. 3d 978 (E.D. Cal. 2018).......................................................................6

*Southeast Power Group v. Vision 33, Inc.*,
    855 F. App'x 531 (11th Cir. 2021) ...........................................................................6

*Sun v. Adv. China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ..................................................................................9

*Trans-Tec Asia v. M/V HARMONY CONTAINER*,
    435 F. Supp. 2d 1015 (C.D. Cal. 2005), *aff'd*, 518 F.3d 1120 (9th Cir. 2008).......13

*Velaro, Inc. v. Nat'l Flood Servs., LLC*,
    2021 WL 8779924 (C.D. Cal. July 7, 2021)............................................................15

*Vianet Group PLC v. Tap Acquisition, Inc.*,
    2016 WL 4368302 (N.D. Tex. Aug. 16, 2016).........................................................11

*Wareka v. Trusper Inc.*,
    No. 21-CV-02682-VC, 2022 WL 2980429 (N.D. Cal. July 28, 2022).....................10

*Wescott v. Reisner*,
    No. 17-cv-06271-EMC, 2018 WL 2463614 (N.D. Cal. June 1, 2018).....................13

*X Corp. v. Ctr. for Countering Digital Hate, Inc.*,
    724 F. Supp. 3d 948 (N.D. Cal. 2024) ......................................................................1

**Statutes**

28 U.S.C. § 1404...........................................................................................................5

Cal. Code Civ. Proc. § 425.16 .......................................................................................2

Cal. Code Civ. Proc. § 425.16(c)(1) ...........................................................................15

**Rules**

Fed. R. Civ. P. 8............................................................................................................2

Fed. R. Civ. P. 12..........................................................................................................2

Fed. R. Civ. P. 12(b)(6).................................................................................................2

**Constitional Provisions**

U.S. Const. amend. I .....................................................................................................1

**Other Authorities**

32A Am. Jur. 2d Federal Courts § 948 ............................................................................11

21 WILLISTON ON CONTRACTS § 57:19 (4th ed.) ..........................................................13

PLAINTIFFS' OPP. TO DEFENDANTS' ANTI-SLAPP MOT. TO STRIKE
Case No.: 3:25-cv-02397-VC

## I.    INTRODUCTION

It is hard not to remark on the irony of X's motion to strike under California's anti-SLAPP statute: Defendants X Corp., Twitter Unlimited International Co. ("TIUC"), and Twitter Asia Pacific ("TAP") (together, "Defendants" or "X") have sued Plaintiffs for exercising their First Amendment rights in a November 16, 2023 article about brand safety failures on the X platform. A federal court in Washington, D.C. quashed investigations by State Attorneys General into Media Matters for the very same November 16 article on the grounds that such use of legal process was retaliatory and effectively reduced the First Amendment "to a parchment promise." *Media Matters for Am. v. Bailey*, 2024 WL 3924573, at *18 (D.D.C. Aug. 23, 2024) (citation omitted). X's "thermonuclear" litigation campaign against Plaintiffs consists of quintessential Strategic Lawsuits Against Public Participation—in other words, precisely the sort of SLAPP suits that California's statute seeks to prevent. ECF 1, ¶55. Had X filed in this District, as it was required to do under its own forum selection clause, its suits could have been properly stricken—just as Judge Breyer struck its similar lawsuit against the Center for Countering Digital Hate. *See X Corp. v. Ctr. for Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948, 955 (N.D. Cal. 2024) (granting anti-SLAPP motion and stating that X's case was "about punishing the Defendants for their speech").

Perhaps learning from that experience, X chose to breach its own Terms of Service and file in forums where state anti-SLAPP statutes do not apply. *See, e.g., Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019) (holding Texas anti-SLAPP statute does not apply in federal court). And now, in a perversion of the intent behind California's law, X seeks to use the anti-SLAPP statute to cut off Plaintiffs' ability to enforce the forum selection clause that X itself drafted. It cannot do so.

X's Motion fails as to Plaintiffs' claims regarding X's lawsuits in Ireland and Singapore for the straightforward reason that filing foreign lawsuits is not protected conduct within the scope of the California anti-SLAPP statute. *Guessous v. Chrome Hearts, LLC*, 179 Cal. App. 4th 1177, 1186 (2009). And Defendants' motion otherwise simply restates the same arguments made in their

motion to dismiss and other prior briefing. The Court should deny X's motion.[1]

## II.    STATEMENT OF THE ISSUES TO BE DECIDED

1.    Is petitioning foreign courts "protected activity" under the anti-SLAPP statute?

2.    Has X shown that Plaintiffs' claims have no reasonable probability of success?

3.    Is X entitled to recover attorneys' fees and costs for its duplicative motion?

## III.    LEGAL STANDARD

California Code of Civil Procedure § 425.16 requires a movant to show that (1) claims arise from an act "in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue," and (2) that the claimant lacks a reasonable probability of succeeding on their claims. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 832–33 (9th Cir. 2018) (citation omitted). Where, as here, "a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is made under Fed. R. Civ. P. 8 and 12 standards." *Id.* at 833. In other words, "the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies." *Id.* at 834 (citation omitted).

## IV.    ARGUMENT

### A.    Foreign-filed litigation is not protected by California's anti-SLAPP statute.

Filing lawsuits in Ireland and Singapore does not fall within the category of conduct protected by California's anti-SLAPP statute. Indeed, the California courts have unequivocally held that "petitioning activity undertaken in a foreign country is not protected by the anti-SLAPP statute." *Guessous v. Chrome Hearts, LLC*, 179 Cal. App. 4th 1177, 1186 (2009); *Mireskandari v. Gallagher*, 59 Cal. App. 5th 346, 365, 273 Cal. Rptr. 3d 371, 385 (2020) (citing *Guessous* as "California authority that 'petitioning activity undertaken in a foreign country is not protected by the anti-SLAPP statute.'"). Federal courts sitting in diversity jurisdiction look to state courts'

---

[1] To the extent X asserts arguments in its motion to dismiss briefing not raised here, X cannot end-run the page limitations imposed by this Court's rules by claiming to "incorporate" prior briefs—including a reply to which Plaintiffs did not get a written response—wholesale. Mot. at 3, n.1. The Court should disregard Arguments not raised in X's motion.

interpretation of their own state's laws. *Sram Corp. v. Shimano*, Inc., 25 Fed. Appx. 626, 628 (9th Cir. 2002) ("In assessing how a state's highest court would resolve a state law question—absent controlling state authority—federal courts look to existing state law without predicting potential changes in that law.").

Here, Plaintiffs have sued each of Defendants for breach of a forum selection clause. The acts of filing lawsuits in Texas, Singapore, and Ireland each constituted a breach, and it is from X's prosecution of those lawsuits in improper forums that Plaintiffs' claims arise. Two of those three lawsuits were filed in foreign countries and their prosecution is thus not "protected activity" under the California anti-SLAPP statute. *Guessous*, 179 Cal. App. 4th at 1186.

X lists various other conduct that it claims is "protected activity," but none bring its foreign suits within the ambit of the anti-SLAPP statute. As the California Supreme Court has explained,

> a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.

*Park v. Bd. of Trustees of Cal. State Univ.*, 2 Cal. 5th 1057, 1060, 393 P.3d 905, 907 (2017) (emphasis in original). X's motion is vague as to which of "Elon Musk's public statements" it believes might bring Plaintiffs' claims within the scope of the anti-SLAPP statute, but none do: No public statement by Musk is the "activity *itself*" that Plaintiffs complain of. Plaintiffs are not, for instance, pursuing a defamation claim. Rather, Musk's public statements—for instance, that X Corp.'s lawsuit against Media Matters was "the first of many" or that Media Matters is an "evil propaganda machine"—are "evidence of liability" for X Corp. *Park,* 2 Cal. 5th at 1060. Musk's comments are not themselves the actions giving rise to Plaintiffs' breach of contract claims.

Plaintiffs' claims against Defendants arise out of Defendants' filing of lawsuits in improper forums. Because filing lawsuits in foreign courts is not protected activity within the meaning of the California anti-SLAPP statute, Plaintiffs' breach of contract claims regarding the Ireland and Singapore lawsuit are not subject to the statute.

**B.     Plaintiffs have a reasonable probability of success on their claims.**

X's motion rehashes the same arguments X made in its prior briefing, albeit restructured as performance, breach, and damages.[2] As in its past briefing, none of X's arguments succeeds.

1.     <u>"Performance" – The terms in place at the time of X's filings govern</u>. X claims that Plaintiffs have failed to perform under the parties' contract because it argues that its amended terms govern, and those terms designate venue in the Northern District of Texas or Tarrant County state court. Mot. at 9. X cites the same cases it has previously cited—*TradeComet.com v. Google*, *Muhammad v. YouTube*, *Dodson International Parts, Inc. v. Williams International Co.*, and *Kahnert v. Kotick*—and all fail to support X's point. Plaintiffs do not disagree that a company can, in theory, update its Terms of Service and require that all actions between the parties henceforth occur in a given location. But whether an agreement *in fact does this* requires looking to its specific language. Here, the forum selection clause ("FSC") specifically states that "All disputes related to these Terms" shall be brought in California. ECF 1, ¶ 94. The Terms' specification of disputes related to "these Terms," paired with the Agreement's statement that any change "will not be retroactive," ECF 1-1 at 11, necessarily means that because Plaintiffs are bringing a dispute about the specific version of the Terms in place when X breached, they must do so in this District.

Contrary to X's motion, X's own arguments in *Boose v. Musk* supports applying the prior version of the Terms. *See* Mot. at 10. As X there explained in its motion seeking to transfer to this District, the "Governing Terms" were those in place when Boose "created and used his X account"—that is, during the relevant conduct. ECF 9-1 (*Boose* Mot. to Transfer) at 1. X's motion in *Boose* does not discuss which Terms were in place at the time Boose filed, and for good reason: the Terms containing the forum selection clause that X was alleging Boose violated, the "Governing Terms," were those operative when the relevant conduct took place. *Id*. That some

_____

[2] X makes a cursory reference to this Court's supposed lack of subject matter jurisdiction and Plaintiffs Media Matters' and Angelo Carusone's purported lack of standing but presents no argument, instead referencing its motion to dismiss. *See* Mot. at 8–9 (citing ECF 51 at 4–7). To the extent the Court considers these unrenewed arguments, Plaintiffs likewise refer to their prior briefing in response. ECF 60 at 3–7.

PLAINTIFFS' OPP. TO DEFENDANTS' ANTI-SLAPP MOT. TO STRIKE
Case No.: 3:25-cv-02397-VC

differently-worded contract could update the FSC, notwithstanding the location of the relevant conduct, is beside the point. The Court must look to the specific contract language at issue here.

X points to the new language in its updated Terms stating that "[t]he laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us, notwithstanding any other agreement between you and us to the contrary"; but X omits the first two clauses of this quote in order to suggest that the "notwithstanding" language erases the previously-in-place forum selection clause. *See* Mot. at 10 (citing ECF 40-3 at 10). On its face, it does not. Furthermore, to the extent X claims that this language can retroactively modify the parties' agreement, it is directly at odds with the pre-existing language stating that changes will not be retroactive. Interpreting the language to conflict in this manner makes the agreement at best ambiguous; and the rule that ambiguous contract terms are construed against the drafter applies "with peculiar force" to form contracts like the one at issue here. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1224 (9th Cir. 2015).

2.    <u>"Performance" – Waiver does not bar Plaintiffs' claims</u>. X next claims that Plaintiffs waived their breach of contract claims, but X confuses Plaintiffs' ability to pursue their *claims* with the availability of certain *remedies*. The fact that the Texas court found Plaintiffs had waived the ability to seek transfer under 28 U.S.C. § 1404 has no bearing on whether Plaintiffs may nevertheless pursue their breach of contract claims here. *See, e.g., Cognex Corp. v. Air Hydro Power, LLC*, 651 F. Supp. 3d 322, 329 (D. Mass. 2023) ("[I]t is entirely possible to distinguish the outcome of a case filed in the allegedly incorrect forum from a party's claim that a forum selection clause was breached."); *Digimarc Corp. v. Verance Corp.*, 2011 WL 7077315, at *12 (D. Or. Sept. 19, 2011), *report and recommendation adopted*, 2012 WL 183425 (D. Or. Jan. 23, 2012) (upholding breach of contract claim for costs incurred litigating a case Delaware that had been filed in breach of a forum selection clause, despite the fact that no § 1404 transfer motion had ever been filed). Judge O'Connor premised his transfer decision in large part on potential prejudice to X and expenditure of court resources, *see generally* ECF 69-1; but those considerations do not preclude a damages claim in this Court. And, as Plaintiffs explained at the May 15 hearing, Judge

O'Connor's order does not speak at all to the foreign litigations. *See* ECF 73.

X's cited cases do not change the analysis. In *S&J Rentals, Inc. v. Hilti, Inc.*, 294 F. Supp. 3d 978 (E.D. Cal. 2018), having referenced a forum selection clause but having asserted a wrong interpretation did *not* preclude a party "from asserting the correct interpretation of the clause now." *Id*. at 984. To the extent this case is relevant, it simply demonstrates that where venue has been challenged in some fashion, the opposing party is not prejudiced by a continued—albeit differently framed—challenge. In *Southeast Power Group v. Vision 33, Inc*., 855 F. App'x 531 (11th Cir. 2021), the party seeking to enforce a forum selection clause proposed an overly narrow, brightline rule for waiver, which the court rejected for a "totality of the circumstances" approach. *Id*. at 536. The totality of the circumstances here—particularly Plaintiffs' repeated, consistent venue challenges in Texas and the fact that neither of the foreign courts have even adjudicated threshold jurisdictional questions (indeed, the Court in Ireland had not even set a briefing schedule for the legal submissions or a hearing on the merits at the time Plaintiffs filed for a preliminary injunction, and it was not expected to set a hearing date before December 2025, *see* ECF 67-3, ¶6)— demonstrates the lack of waiver. And X cannot claim that Plaintiffs "substantially participate[s] in the litigation to a point inconsistent with an intent" to enforce their rights under the FSC when they have vigorously contested venue and jurisdiction in each of X's filed suits. *Baton v. Ledger SAS*, 2025 WL 416360, at *6 (N.D. Cal. Feb. 6, 2025). Indeed, as X's own counsel noted in Ireland, the Ireland case has been "unable to progress" due to Media Matters' threshold jurisdictional challenge. ECF 67-4 at 4. And in Texas, Plaintiffs moved to transfer just over 60 days after the Texas court denied their request to certify an interlocutory appeal of the court's venue and jurisdiction rulings. *See* ECF 40-4 at p.22.

X points, yet again, to Media Matters' counsel's statement that it was a "considered decision" for Media Matters to assert the arguments against TIUC and TAP most appropriate to their respective foreign jurisdictions, Mot. at 11, but X takes this comment out of context: as counsel had just explained to the Court immediately prior, it is *not* the case that some conversation occurred in which Media Matters and its counsel considered asserting the FSC and opted not to.

ECF 58 at 10:2–7. As this Court is aware, Susman Godfrey ("new counsel") appeared as counsel for Media Matters very shortly before filing in this Court. *See* ECF 67 at 13. In preparation for the hearing, new counsel consulted with Media Matters' counsel advising on the foreign litigation regarding the FSC and inquired as to why Media Matters had not raised the forum selection clause previously in the Texas litigation. New counsel told this Court: "Your Honor, I do not have an explanation for you as to the why." ECF 58 at 7:18–19. The Court then inquired why Media Matters "wait[ed] until March of 2025 to enjoin the Ireland litigation," and new counsel responded similarly: "Your Honor, I do not have an answer as to why. I think the correct question is whether it's too late and whether we have waived." *Id*. at 8:6–10. This Court then pressed again, and new counsel stated that "there is no good explanation that I can give you as to why it wasn't filed in the Texas case." *Id*. at 10:14–15. New counsel then stated that the "considered decision" in the foreign cases was "to make the best arguments in those particular courts geared to those particular jurisdictions" for the purpose of *forum non conveniens*. *Id*. at 10:16–19.

New counsel understood from Media Matters' remaining counsel advising on the foreign litigations that foreign counsel focused their efforts on arguments most appropriate to the Ireland and Singapore courts. *See id*. at 10:7–9 (referencing conversations between new counsel and remaining counsel). In other words, the "considered decision" was *not* a decision to wait to make a forum selection clause argument, in this or any court. It was, as counsel explained, a decision to "make the best arguments in those particular courts geared to those particular jurisdictions." Such a decision in the foreign litigations is not a waiver or forfeiture of a forum selection clause argument: a party is not obligated to first ask a foreign jurisdiction to enforce a forum selection clause specifying jurisdiction in a United States forum. *See E & J. Gallo Winery v. Andina Licores S.A*., 446 F.3d 984 (9th Cir. 2006) (rejecting argument that Gallo should have petitioned the foreign court for a change of venue rather than seeking injunctive relief).

Rather, the proper course of action is to seek relief in the specified forum. At the end of the colloquy, new counsel emphasized again that with respect to filing the suit in this jurisdiction, "there is no answer that I can give you to your satisfaction as to why we waited 15 months to do

it." *Id*. at 11:1–3; 14:21–25 ("And so I hear you in terms of the fact that why are we here 15 months. And I wish I had a better answer for you as to why it was not 12 months ago or 6 months ago, but the answer is it is not too late to seek an injunction from this court even under grounds of comity, especially under *Gallo* and *Applied*.").[3] As the Court properly recognized, that delay, while relevant, is not dispositive. New counsel answered this Court's questions to the full extent it could and based on the information in its possession. New counsel acknowledged this point in rebuttal as well, stating that Media Matters "could have" filed suit here immediately but "did not." *Id*. at 52:1–2. The question, however, was whether Media Matters was "trying to play games, if we were trying to have a second bite at the apple." *Id*. at 52:5–6. And the answer there is emphatically no, as this Court recognized. This Court properly weighed delay as one factor among many.

Finally, X's claim of laches falls flat. As X itself notes, laches requires knowing relinquishment of a right and prejudice to the opposing party. X has not established that Plaintiffs made any such knowing concession, nor has it identified any prejudice to itself. X's cases underscore the difference between genuine laches and the circumstances here: in *Danjaq LLC v. Sony Corp*., 263 F.3d 942 (9th Cir. 2001), a copyright plaintiff failed to enforce his rights despite knowing of the complained-of infringement for "at least *twenty-one years*—and more likely, *thirty-six years*"—and then repeatedly failed to even show up for the hearing on laches. *Id*. at 950 (emphasis added). Unsurprisingly, the district court found these extreme circumstances prejudicial to the defendant, and the Ninth Circuit agreed. In *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1084 (9th Cir. 2000), by contrast, the court reversed a grant of summary judgment that had found laches, noting that "laches requires prejudice"—something X has not shown here.

3.    <u>"Breach" – X's claims against Plaintiffs fall within the scope of the FSC</u>. X briefly reiterates its assertion that its claims against Plaintiffs do not fall within the scope of the FSC,

---

[3] *See also id*. 11:19–21("[T]he answer is the best time to plant an oak tree was 15 months ago, and the second best time is today."); *id*. at 18:20–19:2 ("[I]f the analysis is -- okay? -- I waited 15 months. My client waited 15 months to sue, and their lawyers waited 15 months to sue and that you should take it out on the client, I have no response to that. Okay? The question is is it too late -- should my client be punished for waiting until 15 months when it is still only in its jurisdictional infancy phases in those particular lawsuits?").

citing three cases that it cited in its prior briefing. *See* Mot. at 11 (citing *In re Orange, S.A.*, 818 F.3d 956, 962-63 (9th Cir. 2016); *CZ Servs., Inc. v. Express Scripts Hldg. Co*., 2018 WL 3972030, at *2-3 (N.D. Cal. Aug. 20, 2018); *BeautiControl, Inc. v. Burditt*, 2001 WL 1149360, at *2 (N.D. Tex. Sept. 26, 2001)). The Court has previously treated X's claims as within the scope of the FSC and it should do so again. The clause at issue here broadly covers "All disputes related to these Terms *or* the Services," ECF 1, ¶24 (emphasis added), making clear on its face that it encompasses more than just "claims requiring interpreting agreements or deciding whether parties complied therewith," Mot. at 11; *see Robles v. Schneider Na'l Carriers, Inc*., 2017 WL 8232083, at *3 (C.D. Cal. Dec. 11, 2017) ("[B]road 'relating hereto' language, [ ] requires applying the forum-selection clause to claims beyond those just requiring the interpretation and performance of the contract."). Indeed, the Ninth Circuit has rejected X's "requiring interpretation of the agreement" formulation for the scope of forum selection clauses—and X has itself relied on the Ninth Circuit's broader view to successfully seek transfer of other matters into this District. *See Sun v. Adv. China Healthcare, Inc*., 901 F.3d 1081, 1086 (9th Cir. 2018) (a dispute "need not grow out of the contract or require interpretation of the contract in order to relate to the contract"); ECF 50 (Plfs.' Reply ISO Prelim. Injunction) at 5 (discussing X arguing same in successful transfer motion).

X's claims unquestionably "relate to" X's Services: they entirely depend upon Plaintiffs' allegedly "manipulative" use of the platform, which X claims tricked its algorithm into displaying advertisements next to Nazi-related content. ECF 1, ¶¶62–67. X quotes Plaintiffs as saying that X alleges their "*reporting was false*," Mot. at 11 (emphasis by X) but ignores that the article's supposed falsity is entirely dependent on X's particular version of how Plaintiffs allegedly used X's Services. X does *not* claim that the actual results depicted in the November 16 article are somehow "false." Rather, it argues that Plaintiffs' specific *use* of the Platform was so abnormal and so "manipulated" the algorithm that simply printing the real results of that use was defamatory. ECF 1-5, ¶73–79. X's allegations turn on Plaintiffs' particular use of "the Services," placing them squarely within the FSC. *See, e.g.,* ECF 16 at 13–16; ECF 67 at 5.

4.    "Damages" – Attorneys' fees are recoverable as consequential damages. As this

Court noted at the May 15 hearing, X is simply wrong that attorneys' fees cannot be recovered as consequential damages under California law. ECF 75 at 35:15–19. Rather, "in California, a party may recover attorney fees not only on a statutory/contractual fee-shifting basis, but also as consequential damages in breach of contract actions when those fees are foreseeable and proximately caused by the breach." *Platte Anchor Bolt, Inc. v. IHI, Inc*., 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citation omitted). And as this Court has explained, where a party seeks "consequential damages that foreseeably flowed from [a party's] breach of contract," "the existence of the American Rule is irrelevant." *Wareka v. Trusper Inc*., No. 21-cv-02682-VC, 2022 WL 2980429, at *1 (N.D. Cal. July 28, 2022).

In an effort to avoid the caselaw plainly supporting these damages, X characterizes the law as allowing fees as consequential damages for breach "only in highly limited instances, when such relief supports a strong public interest or is authorized by statute," Mot. at 12; but neither case it cites contains any such limitation. On the contrary, *Microsoft Corp. v. Motorola Inc*., 795 F.3d 1024 (9th Cir. 2015), broadly explains how "losses independent of the current litigation and triggered by the contract-breaching conduct" are "best characterized as recoverable consequential contract damages—the kind of damages ordinarily recoverable in breach of contract suits"—and are "distinct from the same-suit fees generally banned by the American rule." *Id*. at 1049. And, in any event, the Ninth Circuit and California have expressed a strong policy in support of enforcing forum selection clauses. *Gallo*, 446 F.3d at 992; *Cal-State Bus. Prods. & Servs., Inc. v. Ricoh*, 12 Cal. App. 4th 1666, 1678 (1993), *as modified* (Feb. 4, 1993) (California law accords with "modern trend which favors enforcement of such forum selection clauses" (citation omitted)).

None of X's cases preclude attorneys' fees as damages here. In *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998), the court included statutory fees in the amount in controversy—the case it cites for the proposition that "attorneys' fees are excludable in determining the amount in controversy" is in reference to attorneys' fees incurred in the same case as that in which the damages are sought, not attorneys' fees incurred in a different case and claimed as damages in a separate action. *Brady v. Mercedes-Benz USA, Inc*., 243 F. Supp. 2d 1004 (N.D.

Cal. 2002), cites *Galt* for the proposition that attorneys' fees are not considered part of the amount in controversy, again in reference to fees incurred *in that case*—not fees from a separate matter and proximately caused by a contract breach. *Boles v. Merscorp, Inc.*, 2009 WL 734135, (C.D. Cal. Mar. 18, 2009), likewise reiterates the basic proposition that attorneys' fees in a given action cannot be recovered as damages *in that same action* (absent a contractual provision or statute). *Id.* at *4. And while Texas law is irrelevant, it too recognizes attorneys' fees as damages for a party's breach of contract: As the court in *Vianet Group PLC v. Tap Acquisition, Inc.*, 2016 WL 4368302 (N.D. Tex. Aug. 16, 2016) explained, "the Supreme Court of Texas would characterize attorneys' fees as damages if they were incurred in prior litigation as a result of a breached forum selection clause," but would not allow a party to pursue their fees for prosecuting the breach. *Id.* at *9. Fees-as-damages is exactly what Plaintiffs pursue here: Plaintiffs seek to recover fees that Media Matters incurred defending against X's litigation filed in breach of the FSC, *not* any fees Plaintiffs incur in their present matter before this Court. X cites to *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 (Tex. 2009) to characterize Texas law differently, but X takes the *MBM* court's assertion that "suits cannot be maintained solely for the attorneys' fees" out of context. The court there referred to bringing suit solely to recover the attorneys' fees *generated by bringing that same suit*. Plaintiffs here seek fees incurred in different forums as a consequence of X's breach.

Plaintiffs' claims also properly seek declaratory and injunctive relief. X is wrong when it claims that an injunction has no value because X can simply refile elsewhere. <u>First</u>, whether or not TIUC and/or TAP would refile in the proper forum is entirely speculative—given how inconvenient X claims it would be for those foreign entities to do so (and Elon Musk's stated goal of forcing Media Matters to defend itself "in every country that they operate," ECF 1, ¶28) it is entirely possible they would choose not to refile. Their decision to do so in this District is a contingent future event that is not taken into account when assessing the value of the present suit. *New England Mortgage Sec. Co. v. Gay*, 145 U.S. 123, 130 (1892) (amount in controversy does not take future continent events into account); 32A Am. Jur. 2d Federal Courts § 948 (explaining that the rule against including future contingent events in the value of the current litigation "also

prevents *reduction* of the value of a present right by allowing consideration of some future, uncertain event" (emphasis added). *Second*, the cost to defending foreign lawsuits on multiple continents is necessarily higher than defending in a single, centralized forum—which adherence to the forum selection clause would have ensured. And with respect to declaratory relief, while Plaintiffs' contract claims address whether specific X entities breached the FSC, declaratory relief that the FSC governs the allegations in those suits speaks to the parties' respective rights with regard to any future international litigation X might seek to file based on the same conduct.

5.    <u>TIUC and TAP are bound by the FSC</u>. Plaintiffs' sole claims against TIUC and TAP arise from those entities' filing foreign litigation, and filing foreign lawsuits is not protected activity for the purpose of California's anti-SLAPP statute. *Supra*, p. 2–3. Regardless, Defendants' motion to strike fails to show that Plaintiffs are unlikely to prevail against TIUC and TAP.

5(a).    As explained in Plaintiffs' prior briefing, the Terms of Service expressly provide benefits to TIUC and TAP. ECF 1, ¶100 (granting benefits to the "X Entities," which includes "affiliates" and "related companies"). Furthermore, the Terms directly state that "THE X ENTITIES DISCLAIM" all warranties, such that either the X Entities are making the disclaimer representation themselves, or X Corp. is speaking directly on their behalf (which, in addition to supporting their third-party beneficiary status, supports either an alter ego or an agency analysis, *see* ECF 16 (Mot. for PI) at 18–21; ECF 50 (Reply ISO PI) at 7–8; ECF 60 (MTD Opp.) at 9–11). ECF 1, ¶101. Given this direct representation in the Terms, it is certainly foreseeable that both TIUC and TAP would be bound by the FSC contained therein when they chose to sue Media Matters on claims that relate to X's Services. TIUC and TAP's status as intended beneficiaries of the agreement is further supported by the fact that no other terms govern the conduct of a U.S.-based user of the X Services, such that if TIUC and TAP (both of whom have an interest in the use of the X Platform in their respective regions) want to pursue a U.S.-based user for misuse in the Europe or the Asia Pacific region, respectively, they can do so only by looking to the X Terms—as illustrated by the demand letter from another X subsidiary, Twitter UK, that accused Media Matters of violating the X Terms, *see* ECF 1-7, ¶13.

As intended beneficiaries that chose to affirmatively file claims against Plaintiffs that fall squarely within the forum selection clause contained in those same Terms of Service, TIUC and TAP are bound by that FSC. *See* ECF 67 at 4–7.

X makes the same contrary arguments, citing the same cases, that is has now repeatedly presented; those arguments are no more successful this time around. Its citation to *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) for the generic claim that a "contract cannot bind a nonparty" ignores the context of that case. There, a party tried to bind a third-party government agency to the forum selection clause in an agreement between private parties, which it plainly could not do. X's single quoted sentence did not eviscerate decades of blackletter law regarding the various ways non-parties may be bound to contracts. *See, e.g.*, 21 WILLISTON ON CONTRACTS § 57:19 (4th ed.) ("traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through," among other things, "third party beneficiary theories").

X's claim that a third-party beneficiary is "not held to have agreed in absentia to all of the contract's provisions" and thus "cannot breach the contract" ignores that Media Matters is not seeking to hold TIUC and TAP "to all of the contract's provisions" in the abstract. Mot. at 13–14. Rather, it seeks to enforce one specific provision—the FSC—which squarely applies to TIUC and TAP's affirmative claims against Media Matters. *Trans-Tec Asia v. M/V HARMONY CONTAINER*, 435 F. Supp. 2d 1015, 1028 n.17 (C.D. Cal. 2005), *aff'd*, 518 F.3d 1120 (9th Cir. 2008) (collecting cases). Had TIUC and TAP's actions been filed in the United States, Media Matters would have sought to transfer (in which case it would be seeking, as defendant, to enforce the FSC against the X entities as plaintiffs). Media Matters had to instead file an affirmative suit because X's subsidiaries sued abroad, making transfer impossible—but that does not negate Plaintiffs' ability to enforce the clause with respect to third-party beneficiaries' in-scope claims.

None of X's cited cases address the scenario here, where a third-party beneficiary has affirmatively brought claims subject to a forum selection clause, and the defendant seeks to enforce that clause against the plaintiff via a separate action. *See Wescott v. Reisner*, No. 17-cv-06271-EMC, 2018 WL 2463614, at *3 (N.D. Cal. June 1, 2018) (FSC could not be enforced against third-

party Ms. Condon because "Ms. Condon is the *defendant* being sued, not the plaintiff bringing suit" (emphasis in original)); *Ismart Int'l Ltd. v. I-Docsecure, LLC*, 2005 WL 588607, at *8 n.5 (N.D. Cal. Feb. 14, 2005) (non-signatory third-party beneficiary argued it could not be liable for recission of a contract and court did not reach the issue); *Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1068 (C.D. Cal. 2003) (a third-party beneficiary cannot be sued for failure to perform obligations it never had a duty to perform).

X's further case cites do not move the needle. X again cites *Ruderman v. Rolls Royce Motor Cars, LLC*, 511 F. Supp. 3d 1055 (C.D. Cal. 2021) for the proposition that a "sophisticated signatory" can name a third-party beneficiary, *id*. at 1059; but X ignores that there, by referring to "affiliates," the agreement did include non-signatory Rolls Royce (as the contract here includes benefits for "affiliates")—the clause Rolls Royce sought to enforce was just narrower than all named beneficiaries. *Id*. at 1058–59. Here, by contrast, the FSC applies to "[a]ll disputes related to . . . the Services." In *Hicks v. Utiliquest, LLC*, 736 F. Supp. 3d 849 (E.D. Cal. 2024), non-signatory Utiliquest was a third-party beneficiary of the agreement signed by its parent—so too here. *Id*. at 859. X again cites *Helfand v. Gerson*, 105 F.3d 530 (9th Cir. 1997), which simply states that "[c]ourts have extended the right to sue for breach of contract to intended third-party beneficiaries." *Id*. at 538. And it repeats its citation to *MacGregor v. Rutberg*, 478 F.3d 790 (7th Cir. 2007), which explains that third-party beneficiary analysis is "about the intentions of the parties concerning who should be able to enforce the contract or selected parts of it." *Id*. at 794. The FSC broadly applies to "[a]ll disputes" related to the Services, and TIUC and TAP directly benefit from the only agreement governing U.S. users of the platform they represent abroad.

5(b). X barely addresses Plaintiffs' extensively pleaded and supported alter ego theory other than to assert that "Plaintiffs never allege the requisite alter-ego 'unity of interest.'" Mot. at 15. This is plainly wrong: X's international claims against Media Matters are predicated on the notion that TIUC and TAP are "synonymous" with X Corp. such that an article that never even mentions either foreign entity nevertheless allegedly defamed them. ECF 1, ¶¶73, 80. Their interests, according to X, are *entirely* unified, at least with respect to the impact of Plaintiffs'

reporting. Further, Plaintiffs have pleaded that all three entities are acting at the direction of X Corp.'s chairman, Elon Musk, as part of his vendetta against Media Matters and his efforts to shift blame for X's drop in advertising revenue to anyone but himself. *Id*. at ¶¶105–117. Once again, X Corp.'s interest is entirely unified with that of its subsidiaries: their respective suits are all driven by the interest of the same controlling individual, Musk. *Id*. at ¶¶78, 86; *see also id*. at ¶¶27–29. And X likewise ignores Plaintiffs' allegation that profits and losses from the subsidiaries roll up to X Corp. such that X Corp. and its foreign subsidiaries all have a unified interest in the subsidiaries' advertising revenue. *Id*. at ¶27. As explained in detail in Plaintiffs' prior briefing and supported by the allegations in Plaintiffs' Complaint, TIUC and TAP are alter egos of X Corp., at least with respect to their litigation against Media Matters. *See, e.g.*, ECF 1, ¶¶27–29, 78, 86.

5(c). X's cursory claim that "the 'closely related' doctrine" only applies "to a non-signatory who already invoked the contract" is not supported by the case law. *See, e.g., Prods. & Ventures Int'l v. Axus Stationary Ltd*., 2017 WL 201703, at *7 (N.D. Cal. Jan. 18, 2017) (applying forum selection clause to non-signatory defendant without requiring that it have invoked the contract); *Velaro, Inc. v. Nat'l Flood Servs., LLC*, 2021 WL 8779924, at *5 (C.D. Cal. July 7, 2021) (same); *Facebook Inc. v. Namecheap Inc*., 2020 WL 6585534, at *3 (D. Ariz. Nov. 10, 2020) (same).

### C. X is not entitled to attorneys' fees and costs.

California's anti-SLAPP statute provides, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs," and that "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion." Cal. Code Civ. Proc. § 425.16(c)(1). For all of the reasons explained above, X cannot prevail on its motion. Accordingly, X is not entitled to its fees and costs.

## V.    CONCLUSION

The Court should deny X's motion, including its request for attorneys' fees and costs.

Dated: May 27, 2025

By:    */s/ Justin A. Nelson*
      _____

JUSTIN A. NELSON (TX SBN 24034766)
jnelson@susmangodfrey.com
MATTHEW BEHNCKE (TX SBN 24069355)
mbehncke@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

KATHERINE M. PEASLEE (CA SBN 310298)
kpeaslee@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883

AMANDA BONN (CA SBN 270891)
abonn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
*Facsimile: (310) 789-3150*

AMER S. AHMED (NY SBM 4382040)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Email: aahmed@gibsondunn.com

*pro hac vice*

*Attorneys for Plaintiffs Media Matters for
America, Angelo Carusone, and Eric Hananoki*

PLAINTIFFS' OPP. TO DEFENDANTS' ANTI-SLAPP MOT. TO STRIKE
Case No.: 3:25-cv-02397-VC

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing document has been served on all current counsel of record on May 27, 2025

*/s/ Justin A. Nelson*
Justin A. Nelson

PLAINTIFFS' OPP. TO DEFENDANTS' ANTI-SLAPP MOT. TO STRIKE
Case No.: 3:25-cv-02397-VC