**BENBROOK LAW GROUP, PC**
Bradley A. Benbrook (SBN 177786)
Stephen M. Duvernay (SBN 250957)
701 University Avenue, Suite 106
Sacramento, CA 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

**STONE HILTON PLLC**
Judd E. Stone II *
Christopher D. Hilton *
Ari Cuenin *
Michael R. Abrams *
Elizabeth Brown Fore (SBN 200471)
Alexander M. Dvorscak *
Cody C. Coll *
600 Congress Ave., Suite 2350
Austin, TX 78701
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
elizabeth@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com
*Admitted *pro hac vice*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| MEDIA MATTERS FOR AMERICA, ANGELO CARUSONE, and ERIC HANANOKI,<br><br>*Plaintiffs*,<br><br>v.<br><br>X CORP., TWITTER INTERNATIONAL UNLIMITED CO., and TWITTER ASIA PACIFIC PTE. LTD.,<br><br>*Defendants*. | Case No.: 3:25-cv-02397-VC<br><br>**DEFENDANTS X CORP., TWITTER INTERNATIONAL UNLIMITED CO., and TWITTER ASIA PACIFIC PTE. LTD.'s REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CODE OF CIVIL PROCEDURE 425.16 (ANTI-SLAPP)** |

The Complaint violates the anti-SLAPP provisions in section 425.16 of the California Code of Civil Procedure because it seeks to stifle protected activity in speaking out against Defendants' lies about the X Platform. The anti-SLAPP statute provides for prompt disposal of claims arising from acts "in furtherance of the person's right of petition or free speech under the United States . . . in connection with a public issue." Cal. Civ. Proc. Code § 425.16. Plaintiffs improperly sued Defendants in this forum as part of a "pattern of gamesmanship," ECF 190 at 9, *X Corp. v. Media Matters*, No. 4:23-cv-01175-O (N.D. Tex. filed May 2, 2025) ("Waiver Order"), that this Court should discourage by granting Defendants' anti-SLAPP Special Motion to Strike.

Plaintiffs contend that Defendants are liable for "filing . . . lawsuit[s]" at the direction of X Corp. and Elon Musk as part of an alleged "litigation campaign" to hold Plaintiffs accountable for their lies. ECF 1 ¶¶ 127-29, 137. In other words, Plaintiffs have sued not only because of the existence of litigation in foreign countries, but because of domestic litigation in Texas brought by a US company, which is named as a Defendant in this case. The anti-SLAPP law protects "*any* written or oral statement or writing made before a . . . judicial proceeding" and "*any* written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body," Cal. Civ. Proc. Code § 425.16(e)(1)-(2) (emphasis added), but it also covers "*any other conduct in furtherance of* the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest," *id.* § 425.16(e)(4) (emphasis added). The Complaint is within the anti-SLAPP statute's ambit, and Plaintiffs fail to show a reasonable probability of prevailing because the performance, breach, and damages elements of their breach-of-contract claims are deficient. *See id.* § 425.16(b)(1). The Court should thus strike the Complaint and award attorneys' fees to Defendants.

**I. Defendants Satisfy Prong One of the Anti-SLAPP Statute Because the Complaint Challenges Protected Petitioning and Speech Activity.**

Defendants satisfy the first condition necessary for relief under California's anti-SLAPP law: protected activity. Because both Count I and Count II of the Complaint undisputedly allege breach of contract claims against X Corp. for filing suit in Texas, Plaintiffs must meet their anti-SLAPP

1

burden on each count. Plaintiffs do not dispute that their claims against X Corp. meet prong one of the Anti-SLAPP statute and thus, concede it. Resp. at 2-3. The first prong of the anti-SLAPP statute is therefore satisfied at a minimum as to Plaintiffs' claims against X Corp. Moreover, Plaintiffs fail in their misguided attempts to exclude their claims against TIUC and TAP from the anti-SLAPP statute. *Contra* Resp. 2-4. They argue that the anti-SLAPP law cannot apply to foreign litigation (*id.* at 2-3) and that public statements of Elon Musk are evidence of the alleged breach but not actionable activity (*id.* at 3-4). Both arguments fail.

*First*, Plaintiffs have sued over a host of litigation-related activity, not merely the existence of foreign petitions. As Defendants have argued, Mot. 7, the anti-SLAPP protections extend well beyond "petitioning" activity under § 425.16(e)(1). For instance, in *Summerfield v. Randolph*, 201 Cal. App. 4th 127 (2011), the California Court of Appeal held that "statements to [a foreign] court to influence the determination of issues pending in [a domestic] case" constituted a "statement or writing made in connection with an issue under consideration . . . by a judicial body" protected by § 425.16(e)(2). *Id.* at 136-37 (cleaned up). Such conduct includes the ongoing "globetrotting litigation campaign" Plaintiffs blame the X entities and Elon Musk for carrying out an alleged violation of a forum-selection clause to add an "element of harassment" aimed at harming Media Matters in domestic litigation. *See* ECF 1 ¶¶ 12-13. Plaintiffs' reliance on *Guessous v. Chrome Hearts, LLC*, 179 Cal. App. 4th 1177, 1186 (2009), is misplaced because that case "did not have reason to consider whether a statement made in a foreign court could [otherwise] be protected under the anti-SLAPP law," *Summerfield*, 201 Cal. App. 4th at 134. And it involved no alleged "strategy" of multi-jurisdiction litigation, let alone an attempt to "enforce" a forum-selection clause by merging existing foreign and domestic suits. *Contra* Resp. 1. Plaintiffs are seeking to force the foreign Defendants to sue in the US, which undisputedly will be petitioning activity in itself. If anything, *Guessous* confirms that the "actual controversy" at the end result of Plaintiffs' litigation will concern protected activity. 179 Cal. App. 4th at 1186.

*Second*, Plaintiffs cannot divorce their alleged breach of contract claims from the other speech they have attacked in this case. The Complaint's central theme is that the X entities allegedly

2

breached the X Corp. forum-selection clause to carry out the purported directives of Elon Musk. *E.g.*, ECF 1 ¶¶ 12-13. Specifically, Plaintiffs attack the alleged US-based decision to direct TIUC and TAP to file lawsuits abroad in purported "violation of the X Terms" and at the direction of Mr. Musk in a so-called "globetrotting litigation campaign" to "harass[]" Media Matters. *Id.* Citing *Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal. 5th 1057 (2017), Plaintiffs argue (at 4) that the statements of Mr. Musk are not actionable anti-SLAPP covered conduct because Plaintiffs have not sued for defamation. However, *Park* makes clear that the plaintiffs' lawsuit need only "arise from" the speech activity to come within the purview of the anti-SLAPP statute. 2 Cal. 5th at 1067. That much is true here, where the "elements of" the breach-of-contract claims, *id.* at 1068, center on allegations that the X entities were directed by Mr. Musk to file lawsuits strategically in breach of a forum-selection clause, *see, e.g.*, ECF 1 ¶ 21 (alleging that X Corp. "took the actions giving rise to Plaintiffs' breach of contract claim" in California).

**II. Plaintiffs Fail Anti-SLAPP Prong Two Because They Are Unlikely to Prevail.**

Plaintiffs are also unlikely to prevail on their breach-of-contract claims. *See* Mot. 8-15. First, the forum-selection language on which Plaintiffs rely is inapplicable because the operative language points to Texas rather than California, involves rights that Plaintiffs have waived, and does not cover Defendants' claims in any event. Second, the necessary breach-of-contract damages are absent from the Complaint. Third, the X Corp. TOS do not extend to the foreign Defendants.

**A.1.** Plaintiffs do not dispute, and therefore concede, that "performance" is a necessary element of their breach-of-contract claims. *See* Resp. 4-5. If Plaintiffs' claims could be brought under a contract with X Corp., they should have been brought in the Northern District of Texas—where the parties have been litigating the same underlying issues for almost two years now. That is where the forum selected in the TOS on the date Plaintiffs filed this suit points, and thus controls. ECF 63 at 9-10; ECF 65 at 2, 14. Defendants are applying the X Corp. TOS neither inconsistently, *e.g.*, ECF 63 at 10 (discussing Plaintiffs' mistaken reliance on *Boose v. Musk*), nor "retroactive[ly]," Resp. at 4-5, because the FSC pointing to Texas was already effective before Plaintiffs filed suit, so that is no basis to distinguish cases like *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d

3

370, 375 (S.D.N.Y. 2010). Nor is there any purported "ambigu[ity]" to construe, *contra* Resp. 5 (citing *Daniel v. Ford*, 806 F.3d 1217, 1224 (9th Cir. 2015)), because the terms of service undisputedly provided notice that X Corp.'s TOS would change "from time to time" and that users were "bound by the revised Terms," ECF 16-2 at 55.

Plaintiffs (at 5-6) misconstrue the effect of transfer proceedings against X Corp. Neither this Court nor the Northern District of Texas have found merit in arguments that X Corp.'s suit against Plaintiffs belongs in this Court. Plaintiffs argue (at 5-6) that courts have allowed claims for breach of contract even when 28 U.S.C. §1404 motions were denied. But they ignore that a case filed for the express purpose of interrupting litigation filed elsewhere is just as burdensome under California's anti-SLAPP law, which must be "construed broadly" to protect speech and petitioning. *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1119 (1999).

**2.** Plaintiffs are wrong to distinguish their breach of contract claims from their unsuccessful transfer remedy in any case. Not only did Media Matters fail to advance its new arguments based on the FSC for over a year and a half in Texas, but Media Matters referenced the very same TOS in the Irish court and the Singapore court over the same length of time, ECF 40-8 ¶¶ 24-25; ECF 40-9 ¶ 34, without contending it governed. That Media Matters challenged venue in these courts on other grounds confirms Media Matters' waiver. It is "unfair in the extreme" for Plaintiffs "to now invoke the forum selection clause after so much . . . time and effort has been expended." *E. & J. Gallo Winery v. Encana Energy Servs., Inc.*, 388 F. Supp. 2d 1148, 1164 (E.D. Cal. 2005).

Plaintiffs dedicate much of their briefing to their "considered decision" not to invoke the X Corp. FSC to other courts and to pursue other arguments instead. ECF 58 at 10:15-20. Recognizing that this "considered decision" dooms their claims, Plaintiffs now attempt to walk it back. But all of their additional explanation is besides the point. What is and has always been true is that Plaintiffs never raised their current argument in 15 months of domestic and foreign legal proceedings. MMFA considered their forum-based legal arguments—which Plaintiffs do not dispute—and cited the FSC—which again Plaintiffs do not dispute—yet did not raise the FSC as a basis for transfer. Plaintiffs thus are not reasonably likely to avoid waiver from their "considered

4

decision." *Contra* Resp. 7 (citing *E&J Gallo Winery v. Andina Licores S.A.*, 446 F.3d 985 (9th Cir. 2006)). Plaintiffs did not just fail to timely assert a right. *Contra* Resp. 7-8. And as Defendants have argued in their stay motion, ECF 65 at 5-8; ECF 74 at 1-3, Plaintiffs are especially unlikely to succeed on that theory because it relies on factual errors about the course of the foreign litigation that confirm Plaintiffs indeed made a "considered decision" to deliberately forgo the FSC. While courts may excuse *forfeiture* if justice demands (and justice does not demand it here), it is "'an abuse of discretion' for a court 'to override'" a "deliberate waiver." *Wood v. Milyard*, 566 U.S. 463, 472-73 (2012).

Plaintiffs also run headlong into laches, "an equitable defense that prevents a plaintiff, who 'with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights.'" *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001). Both "unreasonable delay" and "prejudice" are present here. *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1084 (9th Cir. 2000). The focus is not on the "sheer amount of time" but on the "inequity of permitting the claim to be enforced." *Battelle Energy All., LLC v. Southfork Sec., Inc.*, 3 F. Supp. 3d 852, 863 (D. Idaho 2014) (cleaned up). Not once before it filed this lawsuit in March of 2025 did Plaintiffs even hint in foreign litigation that they thought an X Corp. TOS provision required litigating in California, and this Court's preliminary injunction has already temporarily stymied pursuing damages in the TIUC case. ECF 74 at 1-3. Judge O'Connor also found waiver and that Plaintiffs' actions suggestive of "gamesmanship" severely prejudiced X Corp. Waiver Order at 9. Indeed, given that Irish proceedings have been ongoing since 2023, the place to assert the FSC (even belatedly) was Ireland. Yet, instead of pursuing such relief, Plaintiffs obtained a windfall from their chicanery by obtaining a preliminary injunction from this Court. Equity never favors such conduct, *see* ECF 74 at 10, and resurrecting an affirmatively relinquished argument would "depart from the principle of party presentation basic to our adversary system," *Wood*, 566 U.S. at 472.

**3.** Lastly, the FSC does not control because the foreign (and domestic) suits are not "related to [X Corp.'s TOS] or the Services." ECF 1, ¶ 94. Plaintiffs' duties not to defame Defendants or interfere with business relationships are not "related to" their use of the platform. *See Croix v.*

5

*Provident Tr. Grp.*, 2019 WL 6716066, at *3 (W.D. Tex. Dec. 9, 2019), *R&R adopted*, 2019 WL 11506139 (Dec. 27, 2019) (applying Texas law) ("[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit."). Plaintiffs argue X's claims against Plaintiffs arise from their use of "the Services" and require no interpretation of the TOS itself. Resp. 9 (citing *Sun v. Adv. China Healthcare*, 901 F.3d 1081, 1086 (9th Cir. 2018)). However, that argument fails because Defendants have not argued that "simply printing the real results of [use of 'the Services'] was defamatory." *Id.* Even a cursory reading of Defendants' Amended Complaint reveals that X has challenged how Plaintiffs *lied* about their activities. As Plaintiffs acknowledged in the Texas litigation, "X alleges in support of each of its three causes of action that Defendants' *reporting was false.*" ECF 13-1 at 10, *X Corp.* (emphasis added).

**B.** Plaintiffs also fail to establish damages. Plaintiffs (at 10-11) rely on the attorneys' fees incurred in foreign litigation as consequential damages. But Plaintiffs seek only to move litigation to California—not avoid foreign damages. ECF 16 at ¶ 5. Plaintiffs' fee argument runs headlong into 28 U.S.C. § 1332 and the reasons why this Court should dismiss for lack of subject-matter jurisdiction. *E.g.*, ECF 74 at 6-7. But Plaintiffs' damages theories fail in any event.

Plaintiffs cannot repackage attorneys' fees as consequential damages. *Contra* ECF 67 at 15. As Plaintiffs' authority shows, consequential damages for breach of contract are awarded only in limited cases, when relief is authorized by statute. *See Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1058 (N.D. Cal. 2004) (citing Cal. Civ. Proc. Code § 1021.6). Plaintiffs (at 10) cite *Wareka v. Trusper Inc.*, 2022 WL 2980429, at *1 (N.D. Cal. July 28, 2022), as permitting recovery of fees as consequential damages. But that case relied on California intermediate-court dicta and a Ninth Circuit dissent and should not control here. *See id.* As the majority opinion in *Walker v. Ford Motor Co.* explained, federal courts should generally follow the intermediate California appellate courts, which "do not permit attorney's fees expended in the continuation of the underlying action as damages." 768 F. App'x 601, 602 (9th Cir. 2019) (cleaned up).

In any event, that authority is distinguishable because it involved litigation that should not have

6

been filed at all because it allegedly breached a settlement agreement, as opposed to damages from merely having to defend a legitimately filed lawsuit in one forum versus another. *See id.* Consistent with *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 889 (9th Cir. 2012), the Court should adhere to the background rule that fees are generally unrecoverable as damages unless supported by exceptional grounds like strong public interests—which favor Defendants in any event, as a federal court has already found the underlying claims legally plausible and allowed them to proceed to discovery. *See X Corp. v. Media Matters*, 2024 WL 4001803, at *6-8 (N.D. Tex. Aug. 29, 2024).

That the fees were incurred in connection with other cases is thus unavailing for Plaintiffs. *Contra* Resp. 10-11. Case law is clear that "Attorney's fees are not recoverable for breach of contract claims unless a statute or the agreement of the parties provides otherwise." *Boles v. Merscorp, Inc.*, 2009 WL 734135, at *4 (C.D. Cal. Mar. 18, 2009) (cleaned up), Moreover, Plaintiffs cannot claim consequential damages because the foreign lawsuits did not arise from the TOS or the "Services" and neither Carusone nor Hananoki were parties in the foreign litigation. *Cf.* ECF 1-3; ECF 16-26. Here, Plaintiffs falsely claim that "an injunction barring prosecution of [foreign suits] eliminates X's ability to pursue those amounts." ECF 67 at 14. Enforcement of a FSC, unlike a covenant not to sue, does not seek to avoid litigation costs and liability; it merely "plac[es] the litigation in an agreed-upon forum." *Westlake Vinyls, Inc. v. Goodrich Corp.*, 2014 WL 2816070, at *4 (W.D. Ky. June 23, 2014). Plaintiffs cannot argue that such relief prevents duplicative foreign filings and reduces future costs. *Contra* Resp. 11-12 (citing *New England Mortgage Sec. Co. v. Gay*, 145 U.S. 123, 130 (1892)). Enforcing the FSC here at most effects a transfer of foreign suits rather than barring liability. So Plaintiffs' purported "damages" are factually unsupported and purely speculative.

**C.** Moreover, the disputed forum-selection language can have no effect on TIUC or TAP because neither foreign Defendant was bound by the X Corp. TOS on which Plaintiffs rely. *First*, the foreign Defendants cannot be bound under a third-party-beneficiary theory. *Contra* Resp. 12-13. A third-party beneficiary "certainly cannot be *bound* to a contract it did not sign or otherwise assent to," *Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006), and "cannot be sued for

7

breach," *Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1068 (C.D. Cal. 2003). Plaintiffs (at 13) misperceive the inquiry as: (1) whether TIUC and TAP are beneficiaries of the TOS; and (2) whether their foreign tort claims fall within the TOS. Each question should be answered in the negative for reasons Defendants already explained. *See* ECF 65 at 9-10, 14-15. But Plaintiffs ignore the essential obstacle: A "third party beneficiary will *only* be bound by the terms of the underlying contract where the claims asserted by that beneficiary arise from its third party beneficiary status." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 197 (3d Cir. 2001); *see also* ECF 63 at 5-6; ECF 65 at 10-11.

At the time of Plaintiffs' filing, it is indisputable that TIUC and TAP had not invoked the TOS. They had sued for defamation and related torts—not for contract claims. Besides, TIUC and TAP did not, and could not, enforce the TOS against Plaintiffs in their foreign tort cases. That should be the end of it. Under California law and contract-interpretation principles, a third-party beneficiary "can only enforce those promises made directly for his benefit." *Clark v. Cal. Ins. Guar. Assn.*, 200 Cal. App. 4th 391, 398 (2011). Here, Plaintiffs suggest only one possible contractual right: a disclaimer of liability. *See* Resp. 12 (describing disclaimer language). But even assuming the disclaimer is sufficient to confer third-party-beneficiary status to TIUC and TAP (it is not, *see* ECF 65 at 9-10), that would be the *only* provision TIUC and TAP are allowed to enforce. And there is no way TIUC and TAP can be considered to have invoked *that* provision when bringing their tort claims (*contra* ECF 74 at 12-13). Moreover, a disclaimer provides no affirmative relief—and since Plaintiffs have not countersued TIUC or TAP abroad, TIUC and TAP had no occasion to invoke it defensively. So TIUC and TAP are not liable for suit on X Corp.'s TOS.[1]

---

[1] Plaintiffs have elsewhere suggested that TIUC and TAP's invocation of the limitation on liability in this California litigation provides the needed hook. *See* ECF 74 at 5. But that provision is inapposite. That Defendants have raised the $100 damages cap as one of many reasons for dismissing *Plaintiffs'* meritless suit for breach of contract changes nothing and waives nothing; it provides no basis for Plaintiffs to haul TIUC and TAP into this Court in the first place. *See* Fed. R. Civ. P. 12(b) ("No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion."); *see also Mundinger v. Wells Fargo Bank*, 2011 WL 1559423, at *3 (D. Ariz. Apr. 25, 2011) (holding alternative arguments not waived).

Plaintiffs have raised other arguments that likewise fail to tie TIUC and TAP to X Corp.'s contractual terms. They are wrong (at 4) that TIUC and TAP made a representation in the contract; only signatories make contractual representations. Plaintiffs lack contrary authority. Plaintiffs (at 13) contend that TIUC and TAP "affirmatively brought claims," but they ignore the ample caselaw requiring a beneficiary's *actual invocation* of a contract, not just any lawsuit—especially one independent of the TOS. *See Dupont*, 269 F.3d at 197; ECF 63 at 5-6.

*Second*, the foreign Defendants are not alter-egos of X Corp. Plaintiffs focus on allegations about the purported "synonymous" nature of the X entities and the presence of Elon Musk as a "controlling individual" of those entities. Resp. 14-15. But as Defendants have shown, even a mere unity in corporate interests or overlap in corporate control is no basis to disregard the corporate form. *E.g.*, ECF 63 at 7. Plaintiffs (at 12) now offhandedly raise an agency argument based on the same allegations that is unbriefed and absent from their Complaint. *See* ECF 1. It also does no apparent work apart from their alter-ego "argument" (at 14-15), which is no more availing here than Defendants have already shown unlikely to succeed. *See* ECF 51 at 10-11; ECF 63 at 6-7.

*Third*, Plaintiffs make no real effort to avoid the reasons why their alternative "closely related" argument fails. Plaintiffs instead suggest (at 15) that courts extend FSCs to non-signatories closely involved in the transaction or dispute. Regardless of whether they are closely related to X Corp., TIUC and TAP are not "closely related" to X Corp.'s *TOS*. That needed connection is wholly absent from Plaintiffs' allegations. Applying the doctrine raises serious due-process problems. *See Firexo, Inc. v. Firexo Grp.*, 99 F.4th 304 (6th Cir. 2024). And cases like *Wescott v. Reisner*, 2018 WL 2463614 (N.D. Cal. June 1, 2018); *Mewawalla v. Middleman*, 601 F. Supp. 3d 574 (N.D. Cal. 2022), and *Pestmaster Franchise Network, Inc. v. Mata*, 2017 WL 1956927 (N.D. Cal. May 11, 2017), reflect that TIUC and TAP never consented to a California forum. *See* ECF 51 at 7-9; ECF 63 at 7-8.[2] That reality defeats Plaintiffs' argument.

---

[2] The Court also lacks personal jurisdiction over TIUC and TAP because neither entity has California contacts, let alone any from which Plaintiffs' claims arise. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). Plaintiffs themselves make clear those entities are "at home" abroad and brought cases in their respective countries for injuries sustained abroad.

### III.  Defendants Are Entitled to Attorneys' Fees.

For the foregoing reasons, Plaintiffs are unlikely to prevail in asserting the contractual rights they now invoke. Awarding fees is fully consistent with deterring Plaintiffs' pattern of "gamesmanship." Waiver Order at 9. Plaintiffs argue (at 15) that Defendants are not entitled to fees or costs under § 425.16(c) because Plaintiffs contend that they will prevail and because the motion is purportedly duplicative of Defendants' pending motion to dismiss. Each argument fails.

*First*, Plaintiffs do not appear to dispute that California's anti-SLAPP statute provides that "a prevailing defendant on a special motion to strike shall be entitled to recover defendant's attorney's fees and costs." *See* Mot. 15; § 425.16(c)(1). Although Defendants plainly disagree with Plaintiffs about the substance of Plaintiffs' claims, that dispute speaks to the merits of the case rather than the authority for awarding fees.

*Second*, the anti-SLAPP motion is not duplicative of the motion to dismiss. Although precedent explains that federal courts apply a modified standard of review that is compatible with the Federal Rule of Civil Procedure, *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), the anti-SLAPP statute makes clear that a court must examine whether a plaintiff is reasonably likely to prevail and permits limited evidentiary development to make that determination. *See id.* (citing Fed. R. Civ. P. 56). Plaintiffs' response does not even grapple with this evidentiary standard, which is plainly beyond the scope of Defendants' pending motion to dismiss filed under Rule 12 of the Federal Rules of Civil Procedure. Moreover, Defendants have moved to strike on several grounds that do not overlap with the pending motion to dismiss, including that Plaintiffs' breach of contract claims are unlikely to prevail based on defects in the performance and breach elements. *See* Mot. 8-13. Accordingly, the Court should grant Defendants' Special Motion to Strike and award fees.

---

ECF1 ¶¶ 22-23; ECF 16-24 ¶ 43; ECF 16-26 ¶ 24. There is no "relationship" between this forum and the foreign Defendants, who neither "direct[ed their] activities" to California, nor conducted activities here. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 758 (9th Cir. 2025) (en banc).

10

Dated: June 3, 2025.                    Respectfully submitted.

                                                      */s/ Christopher D. Hilton*
Judd E. Stone II *
Christopher D. Hilton *
Ari Cuenin *
Michael R. Abrams *
Elizabeth Brown Fore
  SBN 200471
Alex M. Dvorscak *
Cody C. Coll *
**STONE HILTON PLLC**
600 Congress Ave., Suite 2350
Austin, TX 78701
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
elizabeth@stonehilton.com
alex@stonehilton.com
cody@stonehilton.com
* Admitted *pro hac vice*


*/s/ Bradley A. Benbrook*
Bradley A. Benbrook
  SBN 177786
Stephen M. Duvernay
  SBN 250957
**BENBROOK LAW GROUP, PC**
701 University Avenue, Suite 106
Sacramento, CA 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

*Counsel for Defendants*

11

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel of record on June 3, 2025, via the Court's CM/ECF system.

*/s/ Christopher D. Hilton*
Christopher D. Hilton
