**FILED**

Jul 28 2025

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

No. 25-2463

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

MEDIA MATTERS FOR AMERICA, ANGELO CARUSONE, and ERIC HANANOKI,

*Plaintiffs-Appellees*,

v.

X CORP., TWITTER INTERNATIONAL UNLIMITED CO., and
TWITTER ASIA PACIFIC PTE. LTD.,

*Defendants-Appellants*.

———————————

On Appeal from the United States District Court for the
Northern District of California (No. 3:25-cv-2397)

———————————

## DEFENDANTS-APPELLANTS' MOTION FOR STAY PENDING APPEAL
———————————

JUDD E. STONE, II
CODY C. COLL
ARI CUENIN
STONE HILTON, PLLC
600 Congress Avenue, Suite 2350
Austin, TX 78701

PAUL D. CLEMENT
MATTHEW D. ROWEN
KEVIN WYNOSKY
NICCOLO A. BELTRAMO
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Defendants-Appellants*
*X Corp., Twitter International Unlimited Co., and Twitter Asia Pacific Pte. Ltd.*

July 25, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ...................................................................................... 1

BACKGROUND ......................................................................................... 3

ARGUMENT .............................................................................................. 7

I.    Defendants Are Likely To Succeed On The Merits Of Their Appeal ............ 7

II.   The Remaining Factors All Favor Entry Of A Stay Pending Appeal ........... 21

CONCLUSION .......................................................................................... 24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020)...................................................................7

*Allen v. Ornoski*,
  435 F.3d 946 (9th Cir. 2006)..................................................................12

*Bannister v. Knox Cnty. Bd. of Educ.*,
  49 F.4th 1000 (6th Cir. 2022)................................................................10

*Bass v. Facebook, Inc.*,
  394 F.Supp.3d 1024 (N.D. Cal. 2019) ..................................................17

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)...............................................................................20

*Citigroup Inc. v. Villar*,
  830 F.App'x 240 (9th Cir. 2020)................................................... 5, 8, 9

*Comer v. Micor, Inc.*,
  436 F.3d 1098 (9th Cir. 2006)........................................................ 16, 20

*Danjaq LLC v. Sony Corp.*,
  263 F.3d 942 (9th Cir. 2001)..................................................................12

*E. & J. Gallo Winery v. Andina Licores S.A.*,
  446 F.3d 984 (9th Cir. 2006).......................................................... 8, 19

*Fisher v. Las Vegas Hilton Corp.*,
  47 F.App'x 824 (9th Cir. 2002)..............................................................18

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021)...............................................................................19

*Fritsch v. Swift Transp. Co.*,
  899 F.3d 785 (9th Cir. 2018)..................................................................16

*Google LLC v. NAO Tsargrad Media*,
  2025 WL 964692 (N.D. Cal. Mar. 31, 2025)........................................23

*In re Icenhower*,
    398 B.R. 902 (Bankr. S.D. Cal. 2008) ................................................................22

*Ins. Co. of N. Am. v. Moore*,
    783 F.2d 1326 (9th Cir. 1986) ............................................................................8

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) ............................................................................18

*JW Gaming Dev., LLC v. James*,
    544 F.Supp.3d 903 (N.D. Cal. 2021) ...............................................................22

*Karaha Bodas Co.
    v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    335 F.3d 357 (5th Cir. 2003) ..............................................................................9

*Karo v. San Diego Symphony Orchestra Ass'n*,
    762 F.2d 819 (9th Cir. 1985) ............................................................................19

*Kline v. Burke Constr. Co.*,
    260 U.S. 226 (1922) ..........................................................................................23

*Laker Airways Ltd. v. Sabena*,
    731 F.2d 909 (D.C. Cir. 1984) ..........................................................................23

*McArthur v. McArthur*,
    224 Cal. App. 4th 651 (2014) ...........................................................................20

*Microsoft Corp. v. Motorola, Inc.*,
    696 F.3d 872 (9th Cir. 2012) ................................................................. 5, 18, 20

*Morgan v. Sundance*,
    596 U.S. 411 (2022) ..........................................................................................10

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................................7

*Northbay Wellness Grp., Inc. v. Beyries*,
    789 F.3d 956 (9th Cir. 2015) ............................................................................21

*Obrien v. Bisignano*,
    2025 WL 1803035 (9th Cir. July 1, 2025) ........................................................11

*Pachinger v. MGM Grande Hotel-Las Vegas, Inc.*,
   802 F.2d 362 (9th Cir. 1986) ...................................................................17

*Ramirez v. Charter Comm'cns, Inc.*,
   551 P.3d 520 (Cal. 2024) ........................................................................18

*Sanchez v. Monumental Life Ins. Co.*,
   102 F.3d 398 (9th Cir. 1996) ...................................................................16

*SEC v. Ross*,
   504 F.3d 1130 (9th Cir. 2007) .................................................................20

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ..................................................................................17

*Tarpon Bay Partners LLC v. Zerez Holdings Corp.*,
   79 F.4th 206 (2d Cir. 2023) .....................................................................17

*United States v. Hinkson*,
   585 F.3d 1247 (9th Cir. 2009) ...........................................................11, 14

*United States v. Odessa Union Warehouse Co-op*,
   833 F.2d 172 (9th Cir. 1987) ...................................................................22

*United States v. Wheeler*,
   795 F.2d 839 (9th Cir. 1986) .....................................................................8

*Weiner v. Shearson, Hammill & Co., Inc.*,
   521 F.2d 817 (9th Cir. 1975) ...................................................................23

*Wood v. Milyard*,
   566 U.S. 463 (2012) ................................................................................10

**Statute and Rules**

28 U.S.C. §1332 ............................................................................................15

Fed. R. Civ. P. 52(a) .......................................................................................8

Fed. R. Civ. P. 65(d) ...................................................................................8, 9

**Other Authorities**

Complaint, *X Corp. v. MMFA*,
　　No. 4:23-cv-01175, 2023 WL 8091661 (N.D. Tex. Nov. 20, 2023)....................4

Order, *X Corp. v. MMFA*,
　　No. 4:23-cv-01175 (N.D. Tex. May 2, 2025) ....................................................10

# INTRODUCTION

This suit concerns an effort by Media Matters for America ("MMFA"), its president, and one of its employees to defame defendants here and abroad—and then obtain one of the most dramatic forms of equitable relief known to Article III:  an injunction from a U.S. district court shutting down ongoing efforts to obtain legal recourse in foreign courts.  Plaintiffs manipulated the X social-media platform, deliberately engineering an artificial set of conditions designed to force it to display unsavory content adjacent to advertisements from major corporations.  They then ran a bombastic article accusing X of placing such content next to major advertisers, concealing their own role in cooking up the highly artificial conditions necessary for such placement to occur.  Having first tampered with X's product and then publicly assailed it as unsafe, these attacks had their intended result, driving major advertisers away from X and harming defendants' business interests.

Long after the Irish, Asian, and U.S.-based defendants here sought legal recourse through defamation actions in their respective home venues, plaintiffs sought a truly extraordinary remedy.  They belatedly sued in the Northern District of California, demanding an anti-suit injunction that not only would bar defendants from filing *new* actions against them, but also would enjoin the progress of defendants' *existing* actions in courts both foreign and domestic.  Incredibly, the district court obliged in substantial part, entering an extraordinary anti-suit

injunction as to the Irish suit in a terse, two-page order, while declining to enjoin litigation in Singapore on grounds equally, if not more, applicable to the enjoined Irish litigation.  Defendants then asked the district court to stay its order while they appealed, but it declined, taking *more than two months* to issue yet another sparsely reasoned order (this time a single paragraph) denying their request and declining to provide the elaboration promised in the initial order.

This Court should do what the district court did not and enter a stay.  There is a strong likelihood that a panel of this Court will ultimately vacate or reverse the injunction.  The district court enjoined Irish litigation on the basis of an outdated forum-selection clause to which the plaintiff in the Irish case, Twitter International Unlimited Co. ("TIUC"), was never a party.  And that is not the worst of it:  Plaintiffs' counsel openly admitted that MMFA deliberately forwent invocation of the forum-selection clause in Ireland, instead choosing to "focus[] their efforts on" other "arguments" that they thought were better "suited to"—i.e., more likely to succeed in—"the foreign forum[]."  CA9.Resp.Br.2.  But the district court refused to hear it*, see, e.g.*, 1-FER-16 (Judge Chhabria: "there is just no way"), and has refused to provide even minimal reasoning to support one of the most extraordinary tools in the judicial arsenal, which raises serious comity concerns even when justified.  Here, there is no justification for stopping ongoing foreign proceedings in their tracks and no reason to leave in place such a misbegotten, under-reasoned, and profoundly

consequential anti-suit injunction.   But there is every reason to stay it, as the injunction threatens irreparable injury on defendants and harms the public interest. In short, each of the stay factors favors pressing pause on the district court's remarkable order until a merits panel of this Court can review it more fully.[1]

## BACKGROUND

This case grows out of plaintiffs' self-styled "guerilla war[]" against what they perceive as "conservative news sources."  *See, e.g.*, 2-ER-109-11, 120.   Eric Hananoki, an MMFA employee, created a fake account on X, selectively followed purveyors of the most odious fringe content he could find, and then furiously refreshed his feed until he cajoled the site into generating pages that placed controversial content next to imagery from major brand advertisers.  2-ER-111-12, 123-25.  Using this method, he was able to artificially generate six ad adjacencies placing controversial content next to advertisements from blue-chip companies.  2-ER-112-14.  Those six adjacencies were apparently only ever seen by Hananoki (and, for one pairing, one other user out of more than 500 million), 2-ER-112-14, but no matter—plaintiffs ran an article claiming that "X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content," 2-ER-123, and falsely asserting that the advertisement placement was the result of normal use of the platform, 2-ER-113, rather than deliberate manipulation.  Their plan worked:

---

[1] Plaintiffs do not consent to this motion.

The article drove several of X's biggest advertisers to abandon the platform.  2-ER-110, 127-28; 3-ER-336.

Soon thereafter, X Corp. sued MMFA, Carusone, and Hananoki in the Northern District of Texas, and TIUC sued MMFA in Ireland, its home forum.  2-ER-128-33; 4-ER-606.  Those suits were followed with an additional suit filed by Twitter Asia Pacific Pte. Ltd. ("TAP") in Singapore, where it is based, several months later.  2-ER-79.  Each suit alleged defamation and sought relief based on distinct injuries caused by plaintiffs' deliberate interference with defendants' respective business relations in the relevant jurisdictions.  2-ER-128-33; *see* Complaint, *X Corp. v. MMFA*, No. 4:23-cv-01175, 2023 WL 8091661 (N.D. Tex. Nov. 20, 2023), Dkt.1.

At the time each suit was filed, X Corp.—and only X Corp., not the foreign affiliates—included in its terms-of-service a provision requiring cases arising out of the use of its platform to be brought in California.  2-ER-58.  MMFA was unquestionably aware of that provision, 4-ER-610-11; it even highlighted the provision in its briefing in the Ireland, Texas, and Singapore cases.  But it did not immediately move to dismiss any of the three suits because of that provision.  3-ER-512, 515.  Instead, it pursued alternative arguments.  For example, in the Irish litigation—consistent with the fact that TIUC has its own terms-of-service that do not include a California forum-selection clause—MMFA principally argued that the

Irish court lacked jurisdiction on *forum non conveniens* grounds. 4-ER-606. It pursued the same strategy in the Singapore litigation. 4-ER-598-99. This was a deliberate choice, as MMFA's counsel explained to Judge Chhabria: It made "a considered decision to make the best arguments … geared to th[e] particular jurisdiction[]." 4-ER-709.

Sixteen months into the Texas and Ireland litigations, and eight months into the Singapore litigation, plaintiffs filed this suit. They filed in the Northern District of California despite having no connections to that venue, 2-ER-15-17, and even though, months before plaintiffs filed suit, X Corp. amended its terms-of-service to include a forum-selection clause directing suits be filed in Texas, not California, 4-ER-540. Plaintiffs alleged that Elon Musk had engaged in a "globetrotting litigation campaign" "as part of a global campaign of intimidation," of which the foreign lawsuits are a part. 2-ER-12-13. Plaintiffs then sought the extraordinary remedy of a foreign anti-suit injunction barring X Corp., TIUC, and TAP from prosecuting their respective litigations and from filing any additional litigation in any other fora. 2-ER-46; *see* 2-ER-167.

Despite this Court's admonition that "[f]oreign anti-suit injunctions should *not* be issued routinely," *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 889 (9th Cir. 2012) (emphasis added), and require careful consideration and explanation, *Citigroup Inc. v. Villar*, 830 F.App'x 240, 242 (9th Cir. 2020), the district court issued

the requested relief with virtually no explanation.  In a two-page order that did not address any of defendants' jurisdictional or textual arguments or explain how an injunction was warranted when plaintiffs never argued that they stood to suffer irreparable injury, the district court granted an anti-suit injunction blocking the coequal Irish court from ruling on MMFA's year-old *forum non conveniens* motion. 1-ER-3.  At the same time, the court refused to enjoin the more-recently-initiated Singapore proceedings, on the ground that the Singapore "parties have filed their briefs and the matter is set for hearing in just a few days."  1-ER-3.  (As explained further *infra*, that distinction was nearly backwards:  The Irish proceedings were at least as far along, and would have been even further had the Irish court not frozen proceedings once MMFA filed this suit out of respect for the district court's decisionmaking.  *See* pp.14-15.)

The district court ended its abridged order by promising a more complete explanation of its ruling at some indefinite point in the future.  1-ER-3.  But once briefing in this appeal concluded, the district court issued another order saying that, actually, no further explanation would ever come.  D.Ct.Dkt.90 at 1 n.1.  So the sum-total of the district court's reasoning on its international anti-suit injunction was the less-than-two pages initially offered in April.  And while defendants moved in the district court to stay the anti-suit injunction while this Court considered their appeal,

the court gave that request short shrift, denying the request in a one-paragraph order that took over two months to publish.  D.Ct.Dkt.91.

## ARGUMENT

An appellate court has the "inherent" power to stay district court orders while an appeal from those orders is pending.  *Nken v. Holder*, 556 U.S. 418, 426 (2009). In deciding whether to do so, the court must consider four factors: (1) "whether the stay applicant has made a strong showing that he is likely to succeed on the merits," (2) "whether the applicant will be irreparably injured absent a stay," (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding," and (4) "where the public interest lies."  *Id.* at 434.  This Court assesses those factors using a "sliding scale" approach, such that a weaker showing on any given factor may be balanced out by a stronger showing on the others.  *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020).  But here no sliding scale is necessary: All four factors favor staying the injunction until this appeal can be resolved.

## I.    Defendants Are Likely To Succeed On The Merits Of Their Appeal.

The district court's decision to enjoin the Ireland lawsuit was an abuse of discretion several times over.  The odds that it will be vacated or reversed are high.

**A.** First, the district court's failure to provide a reasoned explanation of the basis for its extraordinary foreign anti-suit injunction requires that the injunction be vacated.  The Federal Rules demand that every injunction contain an explanation of

the "reasons why it issued," Fed. R. Civ. P. 65(d); *see* Fed. R. Civ. P. 52(a) (similar), not least because meaningful appellate review is impossible when district courts fail to provide an explanation for the reasons behind their orders. *Ins. Co. of N. Am. v. Moore*, 783 F.2d 1326, 1328 (9th Cir. 1986). That is true of any injunction, and it is especially true of "anti-suit injunction[s]": Given the extraordinary nature of those injunctions specifically, this Court does not hesitate to "vacate and remand" when a district court fails to provide a "robust explanation" "of the reasons behind its ruling." *Citigroup*, 830 F.App'x at 242.

But the district court here devoted less than two pages to explaining its decision exercising one of the most extraordinary and consequential equitable powers in the federal courts' toolkit. 1-ER-2-3. Indeed, the court barely touched on the multi-factor analysis this Court requires for anti-suit injunctions at all. *See generally E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006). And to the extent it did, it provided only conclusory assertions about each *Gallo* factor, *see, e.g.*, 1-ER-2, precisely the kind of "mere parroting" of legal standards that this Court has explained does not satisfy Rule 65, *United States v. Wheeler*, 795 F.2d 839, 841 (9th Cir. 1986). Indeed, the district court essentially admitted as much, acknowledging that its order elided important aspects of the analysis (including defendants' threshold arguments) and simply promised to shore it up later. 1-ER-3.

All that was bad enough three months ago, when the district court promised that its spartan order was a mere placeholder for a more thorough analysis to come. 1-ER-3. It is worse now. Since briefing was completed for the merits appeal, the district court has explained that no further analysis will be forthcoming after all. The district court merely issued a decision on defendants' motion to dismiss and claimed it "obviate[d]" "the need to issue" a "detailed explanation" on its preliminary injunction order. But its poorly reasoned decision—issued after this appeal was fully briefed—remedies nothing: It says nothing more about comity or the other *Gallo* factors, and nothing more about the remaining preliminary-injunction factors either. D.Ct.Dkt.90 at 1 n.1. At this point, it is clear not only that the district court failed to fulfill its obligations under Rule 65, but that it has no intention of ever doing so.

On that ground alone, defendants are likely to prevail on appeal. A district court may not issue any injunctions by fiat, denying litigants an explanation for its exercise of equitable authority. *See* Fed. R. Civ. P. 65(d). And it definitely cannot do so for foreign anti-suit injunctions, an especially "extraordinary remedy" countenancing a remarkable intrusion on the judicial processes of a foreign sovereign and a concomitant injury to international comity. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363-64 (5th Cir. 2003); *see Citigroup*, 830 F.App'x at 242.

**B**. This Court is thus exceedingly likely to vacate, which is fully sufficient to give defendants the requisite likelihood of success to justify a stay. But there are also strong bases for the merits panel to go further and reverse outright: The order relied on misreadings of the record and irrational distinctions to justify enjoining TIUC's across-the-pond lawsuit.

1. The district court reversibly erred by overlooking plaintiffs' waiver of their right to invoke the forum-selection clause. *See Wood v. Milyard*, 566 U.S. 463, 472-73 (2012) (explaining that it is "'an abuse of discretion' for a court 'to override a [party's] deliberate waiver'"). As plaintiffs' counsel candidly explained to the court, MMFA's foreign counsel made the deliberate and "considered decision" not to press the forum-selection clause abroad, because they had determined that alternative arguments, such as those grounded in *forum non conveniens*, were more likely to succeed. 4-ER-709. That deliberate refusal to invoke the forum-selection clause waived plaintiffs' right to invoke the clause later. *See Morgan v. Sundance*, 596 U.S. 411, 417 (2022); *see also Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022) (collecting cases). And once plaintiffs waived that right, it was reversible error for the district court to overlook their waiver. *See Wood*, 566 U.S. at 472-73. That should have been the end of the matter, as the district court in X Corp.'s related Texas litigation correctly recognized. *See* Order, *X Corp. v. MMFA*, No. 4:23-cv-01175 (N.D. Tex. May 2, 2025), Dkt.190.

Instead, the district court here rejected plaintiffs' own candid explanation of why they declined to invoke the forum-selection clause earlier, and instead speculated that their attorneys had simply "missed this issue," which "new counsel" identified when they arrived. 1-ER-2-3; *see* D.Ct.Dkt.92 at 2 n.2. That speculation was accompanied by no record cite, because no evidence supports it. Quite the opposite: MMFA cited the clause in the Texas, Ireland, and Singapore cases, but deliberately chose not to invoke it in any of them. *E.g.*, 4-ER-602, 4-ER-610-11.

Overlooking that and ignoring a clear waiver was error. A district court abuses its discretion when its application of the law is without "support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). And there is no more obvious example than when the court rejects plaintiffs' own in-court admissions and substitutes its own imagined facts in their stead.

But it gets worse—the district court's choice to recharacterize plaintiffs' waiver does not even help them. At best, plaintiffs' failure to invoke the forum-selection clause sooner was a forfeiture due to oversight, rather than a waiver due to a tactical choice. *See Obrien v. Bisignano*, 2025 WL 1803035, at *5 (9th Cir. July 1, 2025) ("A forfeiture occurs when a party fails 'to make the timely assertion of a right' in accordance with the governing procedural requirements that are set forth in the applicable statutes, rules, orders, or case authority."). The district court's

transmogrification of a tactical waiver into a negligent forfeiture cannot justify its extraordinary order to stop the Irish litigation in its tracks. While a forfeiture may sometimes be forgiven, such forgiveness is appropriate only in the face of "exceptional circumstances." *Allen v. Ornoski*, 435 F.3d 946, 960 (9th Cir. 2006). And there is nothing exceptional about (on the district court's telling) MMFA's attorneys simply failing to invoke a highly relevant provision of a contract that they contend they are a party to (and that they actually cited in other briefs). So call it waiver, forfeiture, or anything else—there was no justification for the district court to allow MMFA to arrive at the party 18 months late with their new forum-selection clause theory and then order the extraordinary relief it imposed here.

For essentially the same reasons, plaintiffs' attempted invocation of the forum-selection clause was likewise barred by laches. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001). There can be no serious argument that plaintiffs slept on their rights by failing to invoke the forum-selection clause for a year and a half. And that delay plainly prejudiced defendants.

2. Furthermore, the district court rested its injunction on wholly erroneous assumptions about the state of the foreign litigation. The court asserted that "the parties" in the Ireland litigation "haven't filed their briefs on Media Matters's jurisdictional challenge" and that "the matter hasn't been set for hearing." 1-ER-3. This, it contended, reduced the burden of enjoining the Ireland litigation.

But those claims were wrong.  TIUC has been litigating its case against MMFA in Ireland since December 2023.  4-ER-606.  From the start, MMFA has argued that it should not have to litigate the case in Ireland, based on the doctrine of *forum non conveniens* (but not based on the forum-selection clause in a contract to which TIUC is not even a party).  So, for example, on June 17, 2024, MMFA sought "an Order … dismissing or staying the proceedings, in whole or in part, … on the grounds of forum non conveniens."  4-ER-607.  And that request triggered briefing and evidentiary submissions over MMFA's challenge to Irish jurisdiction.  4-ER-608.  The parties had nearly concluded factual briefing on MMFA's motion, and were prepared to begin legal briefing when the Irish court stayed the existing deadlines out of respect for the Northern District of California's ongoing preliminary-injunction hearing.  4-ER-608-10.  The upshot is that, contrary to the district court's apparent misunderstanding, TIUC and MMFA were actively litigating the question of Irish court jurisdiction in the Ireland litigation at the time it entered its preliminary injunction.[2]  That misunderstanding, which undergirded the decision to enter the anti-suit injunction, likewise warrants reversal.

---

[2]  To the extent that the district court's misunderstanding stems from the complexity of a foreign system of civil procedure, that only emphasizes the critical importance of international comity in this area.

13

And while the district court was correct not to enjoin the Singapore litigation, 1-ER-3, the distinction it drew between the Ireland and Singapore cases was arbitrary and irrational.  *See Hinkson*, 585 F.3d at 1262 (abuse of discretion to rely on "illogical" application of law).  The district court refused to enjoin the Singapore litigation because it believed that the parties had already "filed their briefs" in that case, "the matter [wa]s set for hearing in just a few days," and the parties and court had "presumably spent a lot of time and money" "and effort" on it.  1-ER-2-3.  But all that was equally, if not more, true of the Ireland litigation, which had been pending over half-a-year *longer* than the Singapore case, 4-ER-606, and on which TIUC had spent event more resources litigating, *see* CA9.Reply.Br.13-14 (compiling citations to the parties' extensive and detailed Irish briefing).  Underscoring the point, when plaintiffs sought an anti-suit injunction, the Irish and Singapore cases stood in the exact same place:  Both courts had ushered the factual briefing and expert discovery on MMFA's jurisdictional challenge to a close, with legal briefing (the final step under Irish and Singaporean civil procedure) right around the corner.

To be sure, the Singapore litigation was on the precipice of a hearing when the district court decided the preliminary-injunction motion.  4-ER-609-10.  But there was already supposed to have been a hearing in the Ireland litigation by then—and the only reason there was not was because, acting in the best traditions of international comity, the Irish court scuttled the hearing at the last minute after

14

MMFA filed its preliminary-injunction motion in the Northern District of California. Holding that last-minute postponement against the Irish court blatantly offends comity while rewarding MMFA for strategically seeking an injunction so late that disrupting the Ireland hearing was a *fait accompli*.

At bottom, the district court treated two pending foreign cases differently, even though the cases are materially identical.  Worse still, it reserved the worst treatment for the case which had been pending the longest and occupied the most of the parties' time and resources.  And the record directly contradicts the only reason given by the court for its distinction between the two.  This is precisely the kind of irrational application of the law that constitutes an abuse of discretion.

3. The district court's injunction was invalid for still more reasons.  The district court lacked subject-matter jurisdiction in the litigation below; the Northern District of California was the incorrect venue to hear this challenge; and the district court erroneously applied the *Gallo* factors.  Any or all of these reasons would likewise warrant reversal.

First, the district court lacked subject-matter jurisdiction over this suit. Plaintiffs brought this case under the district court's diversity jurisdiction, 2-ER-15, and thus were required to plead facts showing that the amount in controversy exceeded $75,000, 28 U.S.C. §1332.  But the X Corp. terms-of-service limit its "aggregate liability" for "consequential … damages" to "the greater of $100 USD

or the amount you paid us, if any, in the past six months," regardless of the "theory of liability." 2-ER-50, 57-58. And as the parties invoking the terms-of-service as the basis for suit (by way of the forum-selection clause), plaintiffs are precluded from "attempting to avoid" the application of the limitation-of-liability clause in the same contract. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). This case should thus end there, as Plaintiffs do not allege that they paid X Corp. at least $75,000 in the six months before filing suit (or anywhere close). They thus cannot reach the threshold necessary to satisfy the amount-in-controversy requirement.

Plaintiffs seem to think that the prospect of recovering attorneys' fees and costs gets them over the line. That is wrong; such sums cannot generally be considered as a part of the amount in controversy. *Fritsch v. Swift Transp. Co.*, 899 F.3d 785, 793 (9th Cir. 2018) (fees and costs are part of the "amount in controversy" only if a plaintiff would be entitled to recover them "under fee-shifting statutes or contract"). Nor does the requested equitable relief help, as the "pecuniary result" of that relief—i.e., TIUC and TAP dropping their foreign litigation and re-filing in the Northern District of California—is negligible at best (and negative at worst, given the need to relitigate multiple issues and higher costs for US legal services). *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 405 (9th Cir. 1996). Indeed, the district court's acknowledgement that "[i]t is not clear" whether MMFA would or "would not save $75,000 by defending against those claims in one suit in California,"

16

D.Ct.Dkt.90 at 2, effectively gives up the game.  After all, "[t]he party invoking federal jurisdiction bears the burden of establishing its existence."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).

The district court seemed to think that "the fact that the limitation of liability clause may be enforceable and thus cap damages at $100 does not defeat subject matter jurisdiction because 'the existence of a valid defense to [a] claim does not eliminate federal jurisdiction.'"  D.Ct.Dkt.90 at 1-2 (alteration original).  Yet this Court has repeatedly said the opposite, holding that "when the terms of a contract" include a "limitation of damages … mak[ing] it virtually impossible for a plaintiff to meet the amount-in-controversy requirement, courts must dismiss for lack of subject-matter jurisdiction."  CA9.Opening.Br.42 (quoting *Pachinger v. MGM Grande Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986), and collecting cases).  That is especially true here, where MMFA's only hope to evade the limitation-of-liability clause is to argue that it is unconscionable—an argument that "is generally difficult, and for good reason."  *Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 79 F.4th 206, 224 (2d Cir. 2023).  Here, the argument is impossible, as Judge Alsup recognized when rejecting an unconscionability challenge to an analogous clause limiting "aggregate liability" to $100 in Facebook's terms-of-service.  *Bass v. Facebook, Inc.*, 394 F.Supp.3d 1024, 1037-38 (N.D. Cal. 2019).  In short, no one needs to sign up for X, a highly desirable social-media service provided

to the public at no cost.  So limiting a user's recovery to a nominal sum does not "reallocate risks in an objectively unreasonable or unexpected manner." *Ramirez v. Charter Comm'cns, Inc.*, 551 P.3d 520, 530 (Cal. 2024).

Second, this case should have been transferred to the Northern District of Texas, where defendants' separate suit against MMFA was already pending, under 28 U.S.C. §1404.  Each of the factors under *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000), supported transfer.  Because the cases dovetailed those in the Northern District of Texas case, 1-ER-5-6—and that court was substantially further along—judicial economy favored consolidating the two cases before a single judge by transferring the case to Texas.  *See Fisher v. Las Vegas Hilton Corp.*, 47 F.App'x 824, 826 (9th Cir. 2002).  That is particularly so because the alternative requires counsel for both parties to potentially commute between northern California and northern Texas on a regular basis.  Similarly, transfer would be appropriate because no party, lawyer, or anticipated witness has a close connection to California.  And when one adds in the equities and public interest, *see* pp.21-23, *infra*, the case for transferring this case to the Northern District of Texas is overwhelming.

Finally, the district court's application of the *Gallo* factors was demonstrably erroneous.  A "foreign anti-suit injunction" is appropriate only if the issuing court would actually be able to "dispos[e] of the action to be enjoined" itself.  *Microsoft*,

696 F.3d at 882 (quoting *Gallo*, 446 F.3d at 991). But, here, the district court could not do so. After all, it lacked personal jurisdiction over at least one of the defendants—TIUC—and thus could not enjoin it to stop litigating in the Irish courts. TIUC is based in Ireland, 2-ER-15, meaning it is not subject to general jurisdiction in California. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358-60 (2021). And it is not subject to specific jurisdiction either, as plaintiffs never alleged that TIUC had "purposeful[ly] avail[ed]" itself of anything in California, *id.* at 359, or—for that matter—the United States as a whole. Nor can the forum-selection clause itself be considered a form of purposeful availment, because it was *X Corp.*, not TIUC, whose terms-of-service contained that clause. TIUC is a distinct entity, with its own terms-of-service that do not contain a forum-selection clause pointing to California. 2-ER-59-66. That is because it operates in a distinct territory, and under a distinct legal regime. It cannot be haled into California court based on the conduct of X Corp.

The district court evaded this conclusion by declaring that TIUC was a third-party beneficiary of X Corp.'s terms-of-service. 1-ER-2; *see* D.Ct.Dkt.90 at 4. But that is wrong twice over. For a party to be a protected third-party beneficiary, "the terms of the contract" must "make that intent evident." *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821-22 (9th Cir. 1985). And in all events, even if TIUC *were* a third-party beneficiary, that would only entitle it to invoke the

provisions of the terms-of-service to its own benefit; it would not—and could not—bind TIUC to adhere to the terms of "a contract that it did not sign or otherwise assent to," and which it has not invoked. *Comer*, 436 F.3d at 1102.

For the same reason, third-party-beneficiary status cannot alone confer personal jurisdiction. To be sure, a plaintiff who "seek[s] affirmative relief" on a contract as a third-party beneficiary consents to personal jurisdiction. *SEC v. Ross*, 504 F.3d 1130, 1148 (9th Cir. 2007). But despite what the district court seemed to think, D.Ct.Dkt.90 at 3 (citing *McArthur v. McArthur*, 224 Cal. App. 4th 651, 662 (2014)), TIUC has never invoked X Corp.'s terms-of-service for its own benefit. Again, TIUC has its own terms-of-service, and all it wants to do is continue litigating its tort claims in its home jurisdiction. And the mere existence of a third-party-beneficiary relationship "clearly … cannot" itself "automatically establish sufficient minimum contacts" to hale "an out-of-state" defendant into a forum that it lacks any other connection to. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). So, since the district court lacks personal jurisdiction over TIUC, it likewise lacks the power to actually dispose of TIUC's suit in the Irish courts, and an anti-suit injunction was inappropriate. *Microsoft*, 696 F.3d at 882.

*      *      *

Any of these reasons independently warrants vacatur or reversal of the district court's injunction.  Together, they illustrate defendants' substantial likelihood of prevailing on the merits of their appeal.

## II.     The Remaining Factors All Favor Entry Of A Stay Pending Appeal.

Without a stay, the injunction will irreparably injure defendants and the public interest.  Defendants have diligently pursued their legal rights in the international fora, only to be stymied by plaintiffs' eleventh-hour request for an injunction. D.Ct.Dkt.58 at 62 (Plaintiffs' counsel stating jurisdictional affidavits have been exchanged in the Irish litigation and "a roll call" was set for early May); *see* D.Ct.Dkt.40-9 ¶¶6, 24-28.  Forcing defendants to abandon their ongoing litigation and the significant time and resources that have been invested in that litigation so far would significantly impair their interests in a manner that could not be remedied through monetary relief.

By contrast, a stay pending appeal would not prejudice plaintiffs.  Plaintiffs deliberately chose not to invoke the forum-selection clause in their international lawsuits, so they have consequently waived any argument that following the course they charted would injure them.  *See* pp.10-11, *supra*.  And to the extent that they have now switched their position, that sort of gamesmanship cannot serve as the basis for finding that the equities tip in their favor.  *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 959 (9th Cir. 2015) ("A plaintiff asking a court for equitable

relief 'must come with clean hands.'"); *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 177 (9th Cir. 1987) (traditional equitable requirements apply to requests for anti-suit injunctions). Accordingly, the balance of the equities tips sharply in defendants' favor, as plaintiffs have no cognizable interest in the interim enforcement of an injunction that was (at best) obtained in spite of their sleeping on their rights and (at worst) obtained through deliberate gamesmanship. Moreover, as plaintiffs themselves contended, the foreign proceedings have not progressed to "any substantive hearing," D.Ct.Dkt.58 at 62:13-18, so permitting further proceedings to allow the foreign courts to determine their own jurisdiction while this appeal proceeds will not inflict any meaningful injury on plaintiffs. *Id.* at 17:13-18:7.

The public interest in international comity also strongly supports a stay here. The injunction represents a remarkable intrusion on the legal processes of a foreign sovereign, precluding the Irish courts from even considering their own jurisdiction in response to MMFA's fully briefed *forum non conveniens* motion. That intrusion pays little respect to the "great public interest in … comity," *JW Gaming Dev., LLC v. James*, 544 F.Supp.3d 903, 922 (N.D. Cal. 2021), and instead *undermines* that public interest by cutting off the Irish courts' ability to resolve questions surrounding their jurisdiction, *In re Icenhower*, 398 B.R. 902, 911 (Bankr. S.D. Cal. 2008). The Supreme Court has described precisely this kind of conflict between equal sovereigns' judicial systems as "unseemly," *Kline v. Burke Constr. Co.*, 260 U.S.

226, 231 (1922), and this Court has recognized that such conflicts generate "friction" by interfering in a foreign sovereign's judicial processes, *Weiner v. Shearson, Hammill & Co., Inc.*, 521 F.2d 817, 820 (9th Cir. 1975); *cf. Laker Airways Ltd. v. Sabena*, 731 F.2d 909, 938 (D.C. Cir. 1984). And those comity interests are multiplied here, as the district court did not merely enjoin the proceedings in Ireland, but also enjoined defendants from filing any new lawsuits "across the entire globe." *Google LLC v. NAO Tsargrad Media*, 2025 WL 964692, at *13 (N.D. Cal. Mar. 31, 2025). Even the district court appeared to recognize the harm its injunction would inflict on international comity; it just did not care. D.Ct.Dkt.58 at 23:9-12 (noting that "shutting down foreign litigation when the foreign judge is in the middle of adjudicating it" harms comity).

*  *  *

To summarize, each *Nken* factor supports granting a stay of the anti-suit injunction while this appeal proceeds. Defendants are exceptionally likely to secure vacatur, if not outright reversal given the injunction's procedural and substantive defects. And they will be irreparably injured without a stay, as the injunction will continue to preclude them from vindicating their legal rights in the international proceedings, all the while harming the public interest in international comity.

## CONCLUSION

The Court should stay the district court's injunction pending its resolution of this appeal.

Respectfully submitted,

s/Paul D. Clement

| | |
|---|---|
| JUDD E. STONE, II | PAUL D. CLEMENT |
| CODY C. COLL | MATTHEW D. ROWEN |
| ARI CUENIN | KEVIN WYNOSKY |
| STONE HILTON, PLLC | NICCOLO A. BELTRAMO |
| 600 Congress Avenue, Suite 2350 | CLEMENT & MURPHY, PLLC |
| Austin, TX 78701 | 706 Duke Street |
| | Alexandria, VA 22314 |
| | (202) 742-8900 |
| | paul.clement@clementmurphy.com |

*Counsel for Defendants-Appellants*
*X Corp., Twitter International Unlimited Co., and Twitter Asia Pacific Pte. Ltd.*

July 25, 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This motion complies with the type-volume limitations of Circuit Rules 27-1 and 32-3 because it has been prepared in a proportionally spaced font and the total number of words—excluding the parts of the motion exempted by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f)—is 5,577.  That word count, "divided by 280" equals 19.91, which "does not exceed" the number of pages prescribed by Circuit Rule 27-1.  *See* Cir. R. 32-3.

2. This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in 14-point Times New Roman type.

July 25, 2025

s/Paul D. Clement
Paul D. Clement

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system.  I certify that all participants in this case are registered users and that service will be accomplished by the ACMS system.

s/Paul D. Clement
Paul D. Clement